property placed in service when the transfer occurs. Consequently, any applicable recovery period and method may be used to determine the recovery allowance with respect to the increased portion of the basis. However, no change is made for purposes of determining the recovery allowance under section 168 for the portion of the basis for which there is no increase.

(2) *Remedial allocation method.* If a partnership elects to use the remedial allocation method described in § 1.704–3(d) with respect to an item of the partnership's recovery property, then the portion of any increase in the basis of the item of the partnership's recovery property under section 743(b) that is attributable to section 704(c) built-in gain is recovered over the remaining recovery period for the partnership's excess book basis in the property as determined in the final sentence of § 1.704–3(d)(2). Any remaining portion of the basis increase is recovered under paragraph (j)(4)(i)(B)(*1*) of this section.

(C) *Examples.* The provisions of this paragraph (j)(4)(i) are illustrated by the following examples:

*Example 1.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 1, an item of depreciable property that has a fair market value in excess of its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, increases the basis of Asset 1 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 1 is $1,000. Also assume that, under paragraph (j)(4)(i)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation deductions from Asset 1 reported by T is equal to $1,500.

*Example 2.* (i) A and B form equal partnership PRS. A contributes property with an adjusted basis of $100,000 and a fair market value of $500,000. B contributes $500,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, therefore, be recovered over the five years remaining in the property's recovery period. PRS elects to use the remedial allocation method under § 1.704–3(d) with respect to the property. If PRS had purchased the property at the time of the partnership's formation, the basis of the property would have been recovered over a 10-year period. The $400,000 of section 704(c) built-in gain will, therefore, be amortized under § 1.704–3(d) over a 10-year period beginning at the time of the partnership's formation.

(ii)(A) Except for the depreciation deductions, PRS's expenses equal its income in each year of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $120,000, while B's is $440,000:

|  | Capital accounts | | | |
|---|---|---|---|---|
|  | A | | B | |
|  | Book | Tax | Book | Tax |
| Initial Contribution | $500,000 | $100,000 | $500,000 | $500,000 |
| Depreciation Year 1 | (30,000) | | (30,000) | (20,000) |
| Remedial | | 10,000 | | (10,000) |
|  | 470,000 | 110,000 | 470,000 | 470,000 |
| Depreciation Year 2 | (30,000) | | (30,000) | (20,000) |
| Remedial | | 10,000 | | (10,000) |
|  | 440,000 | 120,000 | 440,000 | 440,000 |

(B) A sells its interest in PRS to T for its fair market value of $440,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment, pursuant to section 743(b), to increase the basis of partnership property. Under section 743(b), the amount of the basis adjustment is equal to $320,000. Under section 755, the entire basis adjustment is allocated to the property.

(iii) At the time of the transfer, $320,000 of section 704(c) built-in gain from the property was still reflected on the partnership's books, and all of the basis adjustment is attributable to section 704(c) built-in gain. Therefore, the basis adjustment will be recovered over the remaining recovery period for the section 704(c) built-in gain under § 1.704–3(d).

(ii) *Decreases*—(A) *Reduced deduction.* The amount of any negative basis adjustment allocated to an item of depreciable or amortizable property that is recovered in any year first decreases the transferee's distributive share of the partnership's depreciation or amortization deductions from that item of property for the year. If the amount of the basis adjustment recovered in any year exceeds the transferee's distributive share of the partnership's depreciation or amortization deductions from the item of property, then the transferee's distributive share of the partnership's depreciation or amortization deductions from other items of partnership property is decreased. The transferee then recognizes ordinary income to the extent of the excess, if any, of the amount of the basis adjustment recovered in any year over the transferee's distributive share of the partnership's depreciation or amortization deductions from all items of property.

(B) *Recovery period.* For purposes of section 168, if the basis of an item of a partnership's recovery property is decreased as the result of the transfer of an interest in the partnership, then the decrease is recovered over the remaining useful life of the item of the partnership's recovery property. The portion of the decrease that is recovered in any year during the recovery period is equal to the product of—

(*1*) The amount of the decrease to the item's adjusted basis (determined as of the date of the transfer); multiplied by

(*2*) A fraction, the numerator of which is the portion of the adjusted basis of the item recovered by the partnership in that year, and the denominator of which is the adjusted basis of the item on the date of the transfer (determined prior to any basis adjustments).

(C) *Examples.* The provisions of this paragraph (j)(4)(ii) are illustrated by the following examples:

*Example 1.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value that is less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 2 is $1,000. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation

deductions from Asset 2 reported by T is equal to $500.

*Example 2.* (i) A and B form equal partnership PRS. A contributes property with an adjusted basis of $100,000 and a fair market value of $50,000. B contributes $50,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, therefore, be recovered over the five years remaining in the property's recovery period. PRS uses the traditional allocation method under § 1.704-3(b) with respect to the property. As a result, B will receive $5,000 of depreciation deductions from the property in each of years 1–5, and A, as the contributing partner, will receive $15,000 of depreciation deductions in each of these years.

(ii) Except for the depreciation deductions, PRS's expenses equal its income in each of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $70,000, while B's is $40,000. A sells its interest in PRS to T for its fair market value of $40,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment, pursuant to section 743(b), to decrease the basis of partnership property. Under section 743(b), the amount of the adjustment is equal to ($30,000). Under section 755, the entire adjustment is allocated to the property.

(iii) The basis of the property at the time of the transfer of the partnership interest was $60,000. In each of years 3 through 5, the partnership will realize depreciation deductions of $20,000 from the property. Thus, one third of the negative basis adjustment ($10,000) will be recovered in each of years 3 through 5. Consequently, T will be allocated, for tax purposes, depreciation of $15,000 each year from the partnership and will recover $10,000 of its negative basis adjustment. Thus, T's net depreciation deduction from the partnership in each year is $5,000.

*Example 3.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value that is less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 2 is $500. PRS allocates no other depreciation to T. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the negative basis adjustment that T recovers during the year is $1,000. T will report $500 of ordinary income because the amount of the negative basis adjustment recovered during the year exceeds T's distributive share of the partnership's common basis depreciation deductions from Asset 2.

(5) *Depletion.* Where an adjustment is made under section 743(b) to the basis of partnership property subject to depletion, any depletion allowance is determined separately for each partner, including the transferee partner, based on the partner's interest in such property. See § 1.702-1(a)(8). For partnerships that hold oil and gas properties that are depleted at the partner level under section 613A(c)(7)(D), the transferee partner (and not the partnership) must make the basis adjustments, if any, required under section 743(b) with respect to such properties. See § 1.613A-3(e)(6)(iv).

(6) *Example.* The provisions of paragraph (j)(5) of this section are illustrated by the following example:

*Example.* A, B, and C each contributes $5,000 cash to form partnership PRS, which purchases a coal property for $15,000. A, B, and C have equal interests in capital and profits. C subsequently sells its partnership interest to T for $100,000 when the election under section 754 is in effect. T has a basis adjustment under section 743(b) for the coal property of $95,000 (the difference between T's basis, $100,000, and its share of the basis of partnership property, $5,000). Assume that the depletion allowance computed under the percentage method would be $21,000 for the taxable year so that each partner would be entitled to $7,000 as its share of the deduction for depletion. However, under the cost depletion method, at an assumed rate of 10 percent, the allowance with respect to T's one-third interest which has a basis to him of $100,000 ($5,000, plus its basis adjustment of $95,000) is $10,000, although the cost depletion allowance with respect to the one-third interest of A and B in the coal property, each of which has a basis of $5,000, is only $500. For partners A and B, the percentage depletion is greater than cost depletion and each will deduct $7,000 based on the percentage depletion method. However, as to T, the transferee partner, the cost depletion method results in a greater allowance and T will, therefore, deduct $10,000 based on cost depletion. See section 613(a).

(k) *Returns*—(1) *Statement of adjustments*—(i) *In general.* A partnership that must adjust the bases of partnership properties under section 743(b) must attach a statement to the partnership return for the year of the transfer setting forth the name and taxpayer identification number of the transferee as well as the computation of the adjustment and the partnership properties to which the adjustment has been allocated.

(ii) *Special rule.* Where an interest is transferred in a partnership which holds oil and gas properties that are depleted at the partner level under section 613A(c)(7)(D), the transferee must attach a statement to the transferee's return for the year of the transfer, setting forth the computation of the basis adjustment under section 743(b) which is allocable to such properties and the specific properties to which the adjustment has been allocated.

(iii) *Example.* The provisions of paragraph (k)(1)(ii) of this section are illustrated by the following example:

*Example.* (i) Partnership XYZ owns a single section 613A(c)(7)(D) domestic oil and gas property (Property) and other non-depletable assets. A, a partner in XYZ with an adjusted tax basis in Property of $100 (excluding any prior adjustments under section 743(b)), sells its partnership interest to B for $800 cash. Under § 1.613A-3(e)(6)(iv), A's adjusted basis of $100 in Property carries over to B.

(ii) Under section 755, XYZ determines that Property accounts for 50% of the fair market value of all partnership assets. The remaining 50% of B's purchase price ($400) is attributable to non-depletable property. XYZ must provide a statement to B containing the portion of B's adjusted basis attributable to non-depletable property ($400). Under this paragraph (k)(1), XYZ must report basis adjustments under section 743(b) to non-depletable property. B must report basis adjustments under section 743(b) to Property.

(2) *Requirement that transferee notify partnership*—(i) *Sale or exchange.* A transferee that acquires, by sale or exchange, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within 30 days of the sale or exchange. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the transferee and (if ascertainable) of the transferor, the taxpayer identification numbers of the transferee and (if ascertainable) of the transferor, the relationship (if any) between the transferee and the transferor, the date of the transfer, the amount of any liabilities assumed or taken subject to by the transferee, and the amount of any money, the fair market value of any other property delivered or to be delivered for the transferred interest in the partnership, and any other information necessary for the partnership to compute the transferee's basis.

(ii) *Transfer on death.* A transferee that acquires, on the death of a partner, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within one year of the death of the deceased partner. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the deceased partner and the transferee, the taxpayer identification numbers of the deceased partner and the transferee, the relationship (if any) between the

transferee and the transferor, the deceased partner's date of death, the date on which the transferee became the owner of the partnership interest, the fair market value of the partnership interest on the applicable date of valuation set forth in section 1014, and the manner in which the fair market value of the partnership interest was determined.

(iii) *Nominee reporting.* If a partnership interest is transferred to a nominee which is required to furnish the statement under section 6031(c)(1) to the partnership, the nominee may satisfy the notice requirement contained in this paragraph (k)(2) by providing the statement required under § 1.6031(c)–1T, provided that the statement satisfies all requirements of § 1.6031(c)–1T and this paragraph (k)(2).

(3) *Reliance.* In making the adjustments under section 743(b) and any statement or return relating to such adjustments under this section, a partnership may rely on the written notice provided by a transferee pursuant to paragraph (k)(2) of this section to determine the transferee's basis in a partnership interest. The previous sentence shall not apply if any partner who has responsibility for federal income tax reporting by the partnership has knowledge of facts indicating that the statement is clearly erroneous.

(4) *Partnership not required to make or report adjustments under section 743(b) until it has notice of the transfer.* A partnership is not required to make the adjustments under section 743(b) (or any statement or return relating to those adjustments) with respect to any transfer until it has been notified of the transfer. For purposes of this section, a partnership is notified of a transfer when either—

(i) The partnership receives the written notice from the transferee required under paragraph (k)(2) of this section; or

(ii) Any partner who has responsibility for federal income tax reporting by the partnership has knowledge that there has been a transfer of a partnership interest.

(5) *Effect on partnership of the failure of the transferee to comply.* If the transferee fails to provide the partnership with the written notice required by paragraph (k)(2) of this section, the partnership must attach a statement to its return in the year that the partnership is otherwise notified of the transfer. This statement must set forth the name and taxpayer identification number (if ascertainable) of the transferee. In addition, the following statement must be prominently displayed in capital letters on the first page of the partnership's return for such year, and on the first page of any schedule or information statement relating to such transferee's share of income, credits, deductions, etc.: "RETURN FILED PURSUANT TO § 1.743–1(k)(5)." The partnership will then be entitled to report the transferee's share of partnership items without adjustment to reflect the transferee's basis adjustment in partnership property. If, following the filing of a return pursuant to this paragraph (k)(5), the transferee provides the applicable written notice to the partnership, the partnership must make such adjustments as are necessary to adjust the basis of partnership property (as of the date of the transfer) in any amended return otherwise to be filed by the partnership or in the next annual partnership return of income to be regularly filed by the partnership. At such time, the partnership must also provide the transferee with such information as is necessary for the transferee to amend its prior returns to properly reflect the adjustment under section 743(b).

(l) *Effective date.* This section applies to transfers of partnership interests that occur on or after December 15, 1999.

Par. 6. Section 1.751–1 is amended by:

1. Revising paragraphs (a)(2) and (a)(3).
2. Revising paragraph (c)(3).
3. Removing paragraph (c)(4)(x).
4. Adding a sentence at the end of paragraph (f).
5. Revising *Example 1* of paragraph (g).

The addition and revisions read as follows:

### § 1.751–1 Unrealized receivables and inventory items.

\* \* \* \* \*

(a) \* \* \*

(2) *Determination of gain or loss.* The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property (including any remedial allocations under § 1.704–3(d)) that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had sold all of its property in a fully taxable transaction for cash in an amount equal to the fair market value of such property (taking into account section 7701(g)) immediately prior to the partner's transfer of the interest in the partnership. Any gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 and the amount of ordinary income or loss determined under this paragraph (a)(2) is the transferor's capital gain or loss on the sale of its partnership interest.

(3) *Statement required.* A partner selling or exchanging any part of an interest in a partnership that has any section 751 property at the time of sale or exchange must submit with its income tax return for the taxable year in which the sale or exchange occurs a statement setting forth separately the following information—

(i) The date of the sale or exchange;

(ii) The amount of any gain or loss attributable to the section 751 property; and

(iii) The amount of any gain or loss attributable to capital gain or loss on the sale of the partnership interest.

\* \* \* \* \*

(c) *Unrealized receivables.* \* \* \*

(3) In determining the amount of the sale price attributable to such unrealized receivables, or their value in a distribution treated as a sale or exchange, full account shall be taken not only of the estimated cost of completing performance of the contract or agreement, but also of the time between the sale or distribution and the time of payment.

\* \* \* \* \*

(f) \* \* \* The rules contained in paragraphs (a)(2) and (a)(3) of this section apply to transfers of partnership interests that occur on or after December 15, 1999.

(g) \* \* \*

*Example 1.* (i)(A) A and B are equal partners in personal service partnership PRS. B transfers its interest in PRS to T for $15,000 when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets | |
| --- | --- | --- |
|  | Adjusted basis | Fair market value |
| Cash | $3,000 | $3,000 |
| Loans Receivable | 10,000 | 10,000 |
| Capital Assets | 7,000 | 5,000 |
| Unrealized Receivables | 0 | 14,000 |
| Total | 20,000 | 32,000 |

|  | Liabilities and Capital | |
| --- | --- | --- |
|  | Adjusted per books | Fair market value |
| Liabilities | $2,000 | $2,000 |
| Capital: |  |  |
| A | 9,000 | 15,000 |
| B | 9,000 | 15,000 |
| Total | 20,000 | 32,000 |

(B) None of the assets owned by PRS is section 704(c) property, and the capital assets are nondepreciable. The total amount realized by B is $16,000, consisting of the cash received, $15,000, plus $1,000, B's share of the partnership liabilities assumed by T. See section 752. B's undivided half-interest in the partnership property includes a half-interest in the partnership's unrealized receivables items. B's basis for its partnership interest is $10,000 ($9,000, plus $1,000, B's share of partnership liabilities). If section 751(a) did not apply to the sale, B would recognize $6,000 of capital gain from the sale of the interest in PRS. However, section 751(a) does apply to the sale.

(ii) If PRS sold all of its section 751 property in a fully taxable transaction immediately prior to the transfer of B's partnership interest to T, B would have been allocated $7,000 of ordinary income from the sale of PRS's unrealized receivables. Therefore, B will recognize $7,000 of ordinary income with respect to the unrealized receivables. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 ($6,000) and the amount of ordinary income or loss determined under paragraph (a)(2) of this section ($7,000) is the transferor's capital gain or loss on the sale of its partnership interest. In this case, B will recognize a $1,000 capital loss.

\* \* \* \* \*

Par. 7. Section 1.754–1 is amended as follows:

1. Designate the text following the heading of paragraph (c) as paragraph (c)(1).

2. Add a heading to newly designated paragraph (c)(1).

3. Add paragraph (c)(2).

The additions read as follows:

**§ 1.754–1  Time and manner of making election to adjust basis of partnership property.**

\* \* \* \* \*

(c) *Revocation of election*—(1) *In general.* \* \* \*

(2) *Revocations made for first taxable year ending after December 15, 1999.* Notwithstanding paragraph (c)(1) of this section, any partnership having an election in effect under this section for its taxable year that includes December 15, 1999 may revoke such election by attaching a statement to the partnership's return for such year. For the revocation to be valid, the statement must be filed not later than the time prescribed by § 1.6031(a)-1(e) (including extensions thereof) for filing the return for such taxable year, and must set forth the name and address of the partnership revoking the election, be signed by any one of the partners who is authorized to sign the partnership's federal income tax return, and contain a declaration that the partnership revokes its election under section 754 to apply the provisions of section 734(b) and 743(b). In addition, the following statement must be prominently displayed in capital letters on the first page of the partnership's return for such year: "RETURN FILED PURSUANT TO 1.754–1(c)(2)."

Par. 8. Section 1.755–1 is revised to read as follows:

**§ 1.755–1  Rules for allocation of basis.**

(a) *Generally.* A partnership that has an election in effect under section 754 must adjust the basis of partnership property under the provisions of section 734(b) and section 743(b) pursuant to the provisions of this section. The basis adjustment is first allocated between the two classes of property described in section 755(b). These classes of property consist of capital assets and section 1231(b) property (capital gain property), and any other property of the partnership (ordinary income property). For purposes of this section, properties and potential gain treated as unrealized receivables under section 751(c) and the regulations thereunder shall be treated as separate assets that are ordinary income property. The portion of the basis adjustment allocated to each class is then allocated among the items within the class. Adjustments under section 743(b) are allocated under paragraph (b) of this section. Adjustments under section 734(b) are allocated under paragraph (c) of this section.

(b) *Adjustments under section 743(b)*—(1) *Generally.* (i) For exchanges in which the transferee's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest, paragraph (b)(5) of this section shall apply. For all other transfers which result in a basis adjustment under section 743(b), paragraphs (b)(2) through (b)(4) of this section shall apply. Except as provided in paragraph (b)(5) of this section, the portion of the basis adjustment allocated to one class of property may be an increase while the portion allocated to the other class is a decrease. This would be the case even though the total amount of the basis adjustment is zero. Except as provided in paragraph (b)(5) of this section, the portion of the basis adjustment allocated to one item of property within a class may be an increase while the portion allocated to another is a decrease. This would be the case even though the basis adjustment allocated to the class is zero.

(ii) *Hypothetical transaction.* For purposes of paragraphs (b)(2) through (b)(4) of this section, the allocation of

the basis adjustment under section 743(b) between the classes of property and among the items of property within each class are made based on the allocations of income, gain, or loss (including remedial allocations under § 1.704–3(d)) that the transferee partner would receive (to the extent attributable to the acquired partnership interest) if, immediately after the transfer of the partnership interest, all of the partnership's property were disposed of in a fully taxable transaction for cash in an amount equal to the fair market value of such property (the hypothetical transaction).

(2) *Allocations between classes of property*—(i) *In general.* The amount of the basis adjustment allocated to the class of ordinary income property is equal to the total amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the sale of all ordinary income property in the hypothetical transaction. The amount of the basis adjustment to capital gain property is equal to—

(A) The total amount of the basis adjustment under section 743(b); less

(B) The amount of the basis adjustment allocated to ordinary income property under the preceding sentence; provided, however, that in no event may the amount of any decrease in basis allocated to capital gain property exceed the partnership's basis (or in the case of property subject to the remedial allocation method, the transferee's share of any remedial loss under § 1.704–3(d) from the hypothetical transaction) in capital gain property. In the event that a decrease in basis allocated to capital gain property would otherwise exceed the partnership's basis in capital gain property, the excess must be applied to reduce the basis of ordinary income property.

(ii) *Examples.* The provisions of this paragraph (b)(2) are illustrated by the following examples:

*Example 1.* (i) A and B form equal partnership PRS. A contributes $50,000 and Asset 1, a nondepreciable capital asset with a fair market value of $50,000 and an adjusted tax basis of $25,000. B contributes $100,000. PRS uses the cash to purchase Assets 2, 3, and 4. After a year, A sells its interest in PRS to T for $120,000. At the time of the transfer, A's share of the partnership's basis in partnership assets is $75,000. Therefore, T receives a $45,000 basis adjustment.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $25,000 | $75,000 |
| Asset 2 | 100,000 | 117,500 |
| Ordinary Income Property: |  |  |
| Asset 3 | 40,000 | 45,000 |
| Asset 4 | 10,000 | 2,500 |
| Total | 175,000 | 240,000 |

(iii) If PRS sold all of its assets in a fully taxable transaction at fair market value immediately after the transfer of the partnership interest to T, the total amount of capital gain that would be allocated to T is equal to $46,250 ($25,000 section 704(c) built-in gain from Asset 1, plus fifty percent of the $42,500 appreciation in capital gain property). T would also be allocated a $1,250 ordinary loss from the sale of the ordinary income property.

(iv) The amount of the basis adjustment that is allocated to ordinary income property is equal to ($1,250) (the amount of the loss allocated to T from the hypothetical sale of the ordinary income property).

(v) The amount of the basis adjustment that is allocated to capital gain property is equal to $46,250 (the amount of the basis adjustment, $45,000, less ($1,250), the amount of loss allocated to T from the hypothetical sale of the ordinary income property).

*Example 2.* (i) A and B form equal partnership PRS. A and B each contribute $1,000 cash which the partnership uses to purchase Assets 1, 2, 3, and 4. After a year, A sells its partnership interest to T for $1,000. T's basis adjustment under section 743(b) is zero.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $500 | $750 |
| Asset 2 | 500 | 500 |
| Ordinary Income Property: |  |  |
| Asset 3 | 500 | 250 |
| Asset 4 | 500 | 500 |
| Total | 2,000 | 2,000 |

(iii) If, immediately after the transfer of the partnership interest to T, PRS sold all of its assets in a fully taxable transaction at fair market value, T would be allocated a loss of $125 from the sale of the ordinary income property. Thus, the amount of the basis adjustment to ordinary income property is ($125). The amount of the basis adjustment to capital gain property is $125 (zero, the amount of the basis adjustment under section 743(b), less ($125), amount of the basis adjustment allocated to ordinary income property).

(3) *Allocation within the class*—(i) *Ordinary income property.* The amount of the basis adjustment to each item of property within the class of ordinary income property is equal to—

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; reduced by

(B) The product of—

(*1*) Any decrease to the amount of the basis adjustment to ordinary income property required pursuant to the last sentence of paragraph (b)(2)(i) of this section; multiplied by

(*2*) A fraction, the numerator of which is the fair market value of the item of property to the partnership and the denominator of which is the total fair market value of all of the partnership's items of ordinary income property.

(ii) *Capital gain property.* The amount of the basis adjustment to each item of property within the class of capital gain property is equal to—

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; minus

(B) The product of—

(*1*) The total amount of gain or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all items of capital gain property, minus the amount of the positive basis adjustment to all items of capital gain property or plus the amount of the negative basis adjustment to capital gain property; multiplied by

(*2*) A fraction, the numerator of which is the fair market value of the item of property to the partnership, and the denominator of which is the fair market value of all of the partnership's items of capital gain property.

(iii) *Examples.* The provisions of this paragraph (b)(3) are illustrated by the following examples:

*Example 1.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section. Of the $45,000 basis adjustment, $46,250 was allocated to capital gain property. The amount allocated to ordinary income property was ($1,250).

(ii) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 1 is $37,500.

(iii) Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 2 is $8,750.

(iv) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(v) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

*Example 2.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section, except that A sold its interest in PRS to T for $110,000 rather than $120,000. T, therefore, receives a basis adjustment under section 743(b) of $35,000. Of the $35,000 basis adjustment, ($1,250) is allocated to ordinary income property, and $36,250 is allocated to capital gain property.

(ii) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(iii) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

(iv) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. The total amount of gain that would be allocated to T from the sale of the capital gain assets in the hypothetical transaction is $46,250, which exceeds the amount of the basis adjustment allocated to capital gain property by $10,000. The amount of the adjustment to Asset 1 is $33,604 ($37,500 minus $3,896 ($10,000 × $75,000/192,500)). The amount of the basis adjustment to Asset 2 is $2,646 ($8,750 minus $6,104 ($10,000 × $117,500/192,500)).

(4) *Income in respect of a decedent*—(i) *In general.* Where a partnership interest is transferred as a result of the death of a partner, under section 1014(c) the transferee's basis in its partnership interest is not adjusted for that portion of the interest, if any, which is attributable to items representing income in respect of a decedent under section 691. See § 1.742-1. Accordingly, if a partnership interest is transferred as a result of the death of a partner, and the partnership holds assets representing income in respect of a decedent, no part of the basis adjustment under section 743(b) is allocated to these assets. See § 1.743-1(b).

(ii) The provisions of this paragraph (b)(4) are illustrated by the following example:

*Example.* (i) A and B are equal partners in personal service partnership PRS. As a result of B's death, B's partnership interest is transferred to T when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Asset | $2,000 | $5,000 |
| Unrealized Receivables | 0 | 15,000 |
| Total | 2,000 | 20,000 |

|  | Liabilities and Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Capital: | | |
| A | 1,000 | 10,000 |
| B | 1,000 | 10,000 |
| Total | 2,000 | 20,000 |

(ii) None of the assets owned by PRS is section 704(c) property, and the capital asset is nondepreciable. The fair market value of T's partnership interest on the applicable date of valuation set forth in section 1014 is $10,000. Of this amount, $2,500 is

attributable to T's share of the partnership's capital asset, and $7,500 is attributable to T's 50% share of the partnership's unrealized receivables. The partnership's unrealized receivables represent income in respect of a decedent. Accordingly, under section 1014(c), T's basis in its partnership interest is not adjusted for that portion of the interest which is attributable to the unrealized receivables. Therefore, T's basis in its partnership interest is $2,500.

(iii) At the time of the transfer, B's share of the partnership's basis in partnership assets is $1,000. Accordingly, T receives a $1,500 basis adjustment under section 743(b). Under this paragraph (b)(4), the entire basis adjustment is allocated to the partnership's capital asset.

(5) *Transferred basis exchanges*—(i) *In general.* This paragraph (b)(5) applies to basis adjustments under section 743(b) which result from exchanges in which the transferee's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest. For example, this paragraph applies if a partnership interest is contributed to a corporation in a transaction to which section 351 applies or to a partnership in a transaction to which section 721(a) applies.

(ii) *Allocations between classes of property.* If the total amount of the basis adjustment under section 743(b) is zero, then no adjustment to the basis of partnership property will be made under this paragraph (b)(5). If there is an increase in basis to be allocated to partnership assets, such increase must be allocated to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net gain or net income, as the case may be, to the transferee. Where, under the preceding sentence, an increase in basis may be allocated to both capital gain assets and ordinary income assets, the increase shall be allocated to each class in proportion to the net gain or net income, respectively, which would be allocated to the transferee from the sale of all assets in each class. If there is a decrease in basis to be allocated to partnership assets, such decrease must be allocated to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704-3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net loss to the transferee. Where, under the preceding sentence, a decrease in basis may be allocated to both capital gain assets and ordinary income assets, the decrease shall be allocated to each class in proportion to the net loss which would be allocated to the transferee from the sale of all assets in each class.

(iii) *Allocations within the classes*—(A) *Increases.* If there is an increase in basis to be allocated within a class, the increase must be allocated first to properties with unrealized appreciation in proportion to the transferee's share of the respective amounts of unrealized appreciation before such increase (but only to the extent of the transferee's share of each property's unrealized appreciation). Any remaining increase must be allocated among the properties within the class in proportion to the transferee's share of the amount that would be realized by the partnership upon the hypothetical sale of each asset in the class.

(B) *Decreases.* If there is a decrease in basis to be allocated within a class, the decrease must be allocated first to properties with unrealized depreciation in proportion to the transferee's shares of the respective amounts of unrealized depreciation before such decrease (but only to the extent of the transferee's share of each property's unrealized depreciation). Any remaining decrease must be allocated among the properties within the class in proportion to the transferee's shares of their adjusted bases (as adjusted under the preceding sentence).

(C) *Limitation in decrease of basis.* Where, as the result of a transaction to which this paragraph (b)(5) applies, a decrease in basis must be allocated to capital gain assets, ordinary income assets, or both, and the amount of the decrease otherwise allocable to a particular class exceeds the transferee's share of the adjusted basis to the partnership of all depreciated assets in that class, the transferee's negative basis adjustment is limited to the transferee's share of the partnership's adjusted basis in all depreciated assets in that class.

(D) *Carryover adjustment.* Where a transferee's negative basis adjustment under section 743(b) cannot be allocated to any asset, because the adjustment exceeds the transferee's share of the adjusted basis to the partnership of all depreciated assets in a particular class, the adjustment is made when the partnership subsequently acquires property of a like character to which an adjustment can be made.

(iv) *Examples.* The provisions of this paragraph (b)(5) are illustrated by the following examples:

*Example 1.* A is a member of partnership LTP, which has made an election under section 754. The three partners in LTP have equal interests in capital and profits. Solely in exchange for a partnership interest in UTP, A contributes its interest in LTP to UTP in a transaction described in section 721. At the time of the transfer, A's basis in its partnership interest ($5,000) equals its share of inside basis (also $5,000). Under section 723, UTP's basis in its interest in LTP is $5,000. LTP's only two assets on the date of contribution are inventory with a basis of $5,000 and a fair market value of $7,500, and a nondepreciable capital asset with a basis of $10,000 and a fair market value of $7,500. The amount of the basis adjustment under section 743(b) to partnership property is $0 ($5,000, UTP's basis in its interest in LTP, minus $5,000, UTP's share of LTP's basis in partnership assets). Because UTP acquired its interest in LTP in a transferred basis exchange, and the total amount of the basis adjustment under section 743(b) is zero, UTP receives no special basis adjustments under section 743(b) with respect to the partnership property of LTP.

*Example 2.* (i) A purchases a partnership interest in LTP at a time when an election under section 754 is not in effect. The three partners in LTP have equal interests in capital and profits. During a later year for which LTP has an election under section 754 in effect, and in a transaction that is unrelated to A's purchase of the LTP interest, A contributes its interest in LTP to UTP in a transaction described in section 721 (solely in exchange for a partnership interest in UTP). At the time of the transfer, A's adjusted basis in its interest in LTP is $20,433. Under section 721, A recognizes no gain or loss as a result of the contribution of its partnership interest to UTP. Under section 723, UTP's basis in its partnership interest in LTP is $20,433. The balance sheet of LTP on the date of the contribution shows the following:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Cash | $5,000 | $5,000 |
| Accounts receivable | 10,000 | 10,000 |
| Inventory | 20,000 | 21,000 |

Attachment T - page 17 of 20

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Nondepreciable capital asset | 20,000 | 40,000 |
| Total | 55,000 | 76,000 |

|  | Liabilities and Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Liabilities | $10,000 | $10,000 |
| Capital: |  |  |
| A | 15,000 | 22,000 |
| B | 15,000 | 22,000 |
| C | 15,000 | 22,000 |
| Total | 55,000 | 76,000 |

(ii) The amount of the basis adjustment under section 743(b) is the difference between the basis of UTP's interest in LTP and UTP's share of the adjusted basis to LTP of partnership property. UTP's interest in the previously taxed capital of LTP is $15,000 ($22,000, the amount of cash UTP would receive if LTP liquidated immediately after the hypothetical transaction, decreased by $7,000, the amount of tax gain allocated to UTP from the hypothetical transaction). UTP's share of the adjusted basis to LTP of partnership property is $18,333 ($15,000 share of previously taxed capital, plus $3,333 share of LTP's liabilities). The amount of the basis adjustment under section 743(b) to partnership property therefore, is $2,100 ($20,433 minus $18,333).

(iii) The total amount of gain that would be allocated to UTP from the hypothetical sale of capital gain property is $6,666.67 (one-third of the excess of the fair market value of LTP's nondepreciable capital asset, $40,000, over its basis, $20,000). The total amount of gain that would be allocated to UTP from the hypothetical sale of ordinary income property is $333.33 (one-third of the excess of the fair market value of LTP's inventory, $21,000, over its basis, $20,000). Under paragraph (b)(5), LTP must allocate $2,000 ($6,666.67 divided by $7,000 times $2,100) of UTP's basis adjustment to the nondepreciable capital asset. LTP must allocate $100 ($333.33 divided by $7,000 times $2,100) of UTP's basis adjustment to the inventory.

(c) *Adjustments under section 734(b)*—(1) *Allocations between classes of property*—(i) *General rule.* Where there is a distribution of partnership property resulting in an adjustment to the basis of undistributed partnership property under section 734(b)(1)(B) or (b)(2)(B), the adjustment must be allocated to remaining partnership property of a character similar to that of the distributed property with respect to which the adjustment arose. Thus, when the partnership's adjusted basis of distributed capital gain property immediately prior to distribution exceeds the basis of the property to the distributee partner (as determined under section 732), the basis of the undistributed capital gain property remaining in the partnership is increased by an amount equal to the excess. Conversely, when the basis to the distributee partner (as determined under section 732) of distributed capital gain property exceeds the partnership's adjusted basis of such property immediately prior to the distribution, the basis of the undistributed capital gain property remaining in the partnership is decreased by an amount equal to such excess. Similarly, where there is a distribution of ordinary income property, and the basis of the property to the distributee partner (as determined under section 732) is not the same as the partnership's adjusted basis of the property immediately prior to distribution, the adjustment is made only to undistributed property of the same class remaining in the partnership.

(ii) *Special rule.* Where there is a distribution resulting in an adjustment under section 734(b)(1)(A) or (b)(2)(A) to the basis of undistributed partnership property, the adjustment is allocated only to capital gain property.

(2) *Allocations within the classes*—(i) *Increases.* If there is an increase in basis to be allocated within a class, the increase must be allocated first to properties with unrealized appreciation in proportion to their respective amounts of unrealized appreciation before such increase (but only to the extent of each property's unrealized appreciation). Any remaining increase must be allocated among the properties within the class in proportion to their fair market values.

(ii) *Decreases.* If there is a decrease in basis to be allocated within a class, the decrease must be allocated first to properties with unrealized depreciation in proportion to their respective amounts of unrealized depreciation before such decrease (but only to the extent of each property's unrealized depreciation). Any remaining decrease must be allocated among the properties within the class in proportion to their adjusted bases (as adjusted under the preceding sentence).

(3) *Limitation in decrease of basis.* Where a decrease in the basis of partnership assets is required under section 734(b)(2) and the amount of the decrease exceeds the adjusted basis to the partnership of property of the required character, the basis of such property is reduced to zero (but not below zero).

(4) *Carryover adjustment.* Where, in the case of a distribution, an increase or a decrease in the basis of undistributed property cannot be made because the partnership owns no property of the character required to be adjusted, or because the basis of all the property of a like character has been reduced to zero, the adjustment is made when the partnership subsequently acquires property of a like character to which an adjustment can be made.

(5) *Example.* The following example illustrates this paragraph (c):

*Example.* (i) A, B, and C form equal partnership PRS. A contributes $50,000 and Asset 1, capital gain property with a fair market value of $50,000 and an adjusted tax basis of $25,000. B and C each contributes $100,000. PRS uses the cash to purchase Assets 2, 3, 4, 5, and 6. Assets 4, 5, and 6 are the only assets held by the partnership which are subject to section 751. The partnership has an election in effect under section 754. After seven years, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $ 25,000 | $ 75,000 |
| Asset 2 | 100,000 | 117,500 |
| Asset 3 | 50,000 | 60,000 |
| Ordinary Income Property: |  |  |
| Asset 4 | $ 40,000 | $ 45,000 |
| Asset 5 | 50,000 | 60,000 |
| Asset 6 | 10,000 | 2,500 |
| Total | 275,000 | 360,000 |

(ii) *Allocation between classes.* Assume that PRS distributes Assets 3 and 5 to A in complete liquidation of A's interest in the partnership. A's basis in the partnership interest was $75,000. The partnership's basis in Assets 3 and 5 was $50,000 each. A's $75,000 basis in its partnership interest is allocated between Assets 3 and 5 under sections 732(b) and (c). A will, therefore, have a basis of $25,000 in Asset 3 (capital gain property), and a basis of $50,000 in Asset 5 (section 751 property). The distribution results in a $25,000 increase in the basis of capital gain property. There is no change in the basis of ordinary income property.

(iii) *Allocation within class.* The amount of the basis increase to capital gain property is $25,000 and must be allocated among the remaining capital gain assets in proportion to the difference between the fair market value and basis of each. The fair market value of Asset 1 exceeds its basis by $50,000. The fair market value of Asset 2 exceeds its basis by $17,500. Therefore, the basis of Asset 1 will be increased by $18,519 ($25,000, multiplied by $50,000, divided by $67,500), and the basis of Asset 2 will be increased by $6,481 ($25,000 multiplied by $17,500, divided by $67,500).

(d) *Effective date.* This section applies to transfers of partnership interests and distributions of property from a partnership that occur on or after December 15, 1999.

Par. 9. Section 1.1017–1 is amended by:
1. Revising paragraph (g)(2)(iv).
2. Adding paragraph (g)(2)(v).
The addition and revision read as follows:

§ 1.1017–1  **Basis reductions following a discharge of indebtedness.**

\* \* \* \* \*
(g) \* \* \*
(2) \* \* \*
(iv) *Partner's share of partnership basis*—(A) *In general.* For purposes of this paragraph (g), a partner's proportionate share of the partnership's basis in depreciable property (or depreciable real property) is equal to the sum of—
(1) The partner's section 743(b) basis adjustments to items of partnership depreciable property (or depreciable real property); and
(2) The common basis depreciation deductions (but not including remedial allocations of depreciation deductions under § 1.704–3(d)) that, under the terms of the partnership agreement effective for the taxable year in which the discharge of indebtedness occurs, are reasonably expected to be allocated to the partner over the property's remaining useful life. The assumptions made by a partnership in determining the reasonably expected allocation of depreciation deductions must be consistent for each partner. For example, a partnership may not treat the same depreciation deductions as being reasonably expected by more than one partner.

(B) *Effective date.* This paragraph (g)(2)(iv) applies to elections made under sections 108(b)(5) and 108(c) on or after December 15, 1999.

(v) *Treatment of basis reduction*—(A) *Basis adjustment.* The amount of the reduction to the basis of depreciable partnership property constitutes an adjustment to the basis of partnership property with respect to the partner only. No adjustment is made to the common basis of partnership property. Thus, for purposes of income, deduction, gain, loss, and distribution, the partner will have a special basis for those partnership properties the bases of which are adjusted under section 1017 and this section.

(B) *Recovery of adjustments to basis of partnership property.* Adjustments to the basis of partnership property under this section are recovered in the manner described in § 1.743–1.

(C) *Effect of basis reduction.* Adjustments to the basis of partnership property under this section are treated in the same manner and have the same effect as an adjustment to the basis of partnership property under section 743(b). The following example illustrates this paragraph (g)(2)(v):

*Example.* (i) A, B, and C are equal partners in partnership PRS, which owns (among other things) Asset 1, an item of depreciable property with a basis of $30,000. A's basis in its partnership interest is $20,000. Under the terms of the partnership agreement, A's share of the depreciation deductions from Asset 1 over its remaining useful life will be $10,000. Under section 1017, A requests, and PRS agrees, to decrease the basis of Asset 1 with respect to A by $10,000.

(ii) In the year following the reduction of basis under section 1017, PRS amends its partnership agreement to provide that items of depreciation and loss from Asset 1 will be allocated equally between B and C. In that year, A's distributive share of the partnership's common basis depreciation deductions from Asset 1 is now $0. Under § 1.743–1(j)(4)(ii)(B), the amount of the section 1017 basis adjustment that A recovers during the year is $1,000. A will report $1,000 of ordinary income because A's distributive share of the partnership's common basis depreciation deductions from Asset 1 ($0) is insufficient to offset the amount of the section 1017 basis adjustment recovered by A during the year ($1,000).

(iii) In the following year, PRS sells Asset 1 for $15,000 and recognizes a $12,000 loss. This loss is allocated equally between B and C, and A's share of the loss is $0. Upon the sale of Asset 1, A recovers its entire remaining section 1017 basis adjustment ($9,000). A will report $9,000 of ordinary income.

(D) *Effective date.* This paragraph (g)(2)(v) applies to elections made under sections 108(b)(5) and 108(c) on or after December 15, 1999.

PART 602—OMB CONTROL NUMBERS UNDER THE PAPERWORK REDUCTION ACT

Par. 10. The authority citation for part 602 continues to read as follows:

**Authority:** 26 U.S.C. 7805.

Par. 11. In § 602.101, paragraph (b) is amended by revising the entries for 1.732–1 and 1.743–1 in the table to read as follows:

§ 602.101  **OMB Control numbers.**
\* \* \* \* \*
(b) \* \* \*

| CFR part or section where identified and described | Current OMB control No. |
|---|---|
| * * * * * | |
| 1.732–1 | 1545–0099 |
| | 1545–1588 |
| * * * * * | |
| 1.743–1 | 1545–0074 |
| | 1545–1588 |
| * * * * * | |

**David A. Mader,**
*Acting Deputy Commissioner of Internal Revenue.*

Approved November 29, 1999.

**Jonathan Talisman,**
*Acting Assistant Secretary of the Treasury.*

[FR Doc. 99–32400 Filed 12–14–99; 8:45 am]

**BILLING CODE 4830–01–U**

---

## PENSION BENEFIT GUARANTY CORPORATION

### 29 CFR Part 4044

### Allocation of Assets in Single-Employer Plans; Interest Assumptions for Valuing Benefits

**AGENCY:** Pension Benefit Guaranty Corporation.

**ACTION:** Final rule.

**SUMMARY:** The Pension Benefit Guaranty Corporation's regulation on Allocation of Assets in Single-Employer Plans prescribes interest assumptions for valuing benefits under terminating single-employer plans. This final rule amends the regulation to adopt interest assumptions for plans with valuation dates in January 2000. Interest assumptions are also published on the PBGC's web site (http://www.pbgc.gov).

**EFFECTIVE DATE:** January 1, 2000.

**FOR FURTHER INFORMATION CONTACT:** Harold J. Ashner, Assistant General Counsel, Office of the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW., Washington, DC 20005, 202–326–4024. (For TTY/TDD users, call the Federal relay service toll-free at 1–800–877–8339 and ask to be connected to 202–326–4024.)

**SUPPLEMENTARY INFORMATION:** The PBGC's regulation on Allocation of Assets in Single-Employer Plans (29 CFR part 4044) prescribes actuarial assumptions for valuing plan benefits of terminating single-employer plans covered by title IV of the Employee Retirement Income Security Act of 1974.

Among the actuarial assumptions prescribed in part 4044 are interest assumptions. These interest assumptions are intended to reflect current conditions in the financial and annuity markets.

Two sets of interest assumptions are prescribed, one set for the valuation of benefits to be paid as annuities and one set for the valuation of benefits to be paid as lump sums. This amendment adds to appendix B to part 4044 the annuity and lump sum interest assumptions for valuing benefits in plans with valuation dates during January 2000.

For annuity benefits, the interest assumptions will be 6.90 percent for the first 25 years following the valuation date and 6.25 percent thereafter. The annuity interest assumptions (in comparison with those in effect during December 1999) reflect a 5-year increase in the period during which the initial rate applies (from a period of 20 years following the valuation date to a period of 25 years following the valuation date). The initial rate, in effect for the first 25 years following the valuation date, represents an increase (from the initial rate in effect for December 1999) of 0.40 percent. The ultimate rate, in effect thereafter, represents an increase (from the ultimate rate in effect for December 1999) of 1.00 percent.

For benefits to be paid as lump sums, the interest assumptions to be used by the PBGC will be 5.00 percent for the period during which a benefit is in pay status, 4.25 percent during the seven-year period directly preceding the benefit's placement in pay status, and 4.00 percent during any other years preceding the benefit's placement in pay status. The lump sum interest assumptions represent a decrease (from those in effect for December 1999), of 0.25 percent for the period during which a benefit is in pay status and for the seven-year period directly preceding the benefit's placement in pay status; they are otherwise unchanged.

The PBGC has determined that notice and public comment on this amendment are impracticable and contrary to the public interest. This finding is based on the need to determine and issue new interest assumptions promptly so that the assumptions can reflect, as accurately as possible, current market conditions.

Because of the need to provide immediate guidance for the valuation of benefits in plans with valuation dates during January 2000, the PBGC finds that good cause exists for making the assumptions set forth in this amendment effective less than 30 days after publication.

The PBGC has determined that this action is not a "significant regulatory action" under the criteria set forth in Executive Order 12866.

Because no general notice of proposed rulemaking is required for this amendment, the Regulatory Flexibility Act of 1980 does not apply. See 5 U.S.C. 601(2).

### List of Subjects in 29 CFR Part 4044

Pension insurance, Pensions.

In consideration of the foregoing, 29 CFR part 4044 is amended as follows:

### PART 4044—ALLOCATION OF ASSETS IN SINGLE-EMPLOYER PLANS

1. The authority citation for part 4044 continues to read as follows:

**Authority:** 29 U.S.C. 1301(a), 1302(b)(3), 1341, 1344, 1362.

2. In appendix B, a new entry is added to Table I, and Rate Set 75 is added to Table II, as set forth below. The introductory text of each table is republished for the convenience of the reader and remains unchanged.

### Appendix B to Part 4044—Interest Rates Used to Value Annuities and Lump Sums

TABLE I.—Annuity Valuations:

[This table sets forth, for each indicated calendar month, the interest rates (denoted by $i_1, i_2, \ldots$, and referred to generally as $i_t$) assumed to be in effect between specified anniversaries of a valuation date that occurs within that calendar month; those anniversaries are specified in the columns adjacent to the rates. The last listed rate is assumed to be in effect after the last listed anniversary date.]

| For valuation dates occurring in the month— | The values of $i_t$ are: | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | $i_t$ | for | $t =$ | $i_t$ | for | $t =$ | $i_t$ | for | $t =$ |
| * * | * | | * | | * | | * | |
| January 2000 | .0690 | 1–25 | | .0625 | >25 | | N/A | N/A | |