26 C.F.R. § 1.861-8

division of their time between domestic and foreign activities varies from day to day and cannot be estimated on an annual basis with any reasonable degree of accuracy. Similarly, there are no facts which would justify a method of apportionment of their salaries or of one of the other listed deductions based on more specific factors than gross receipts or gross income. An acceptable method of apportionment would be on the basis of gross receipts. The apportionment of the $200,000 deduction is as follows:

```
Apportionment of the $200,000 expense
to the statutory grouping of
  gross income: $200,000 x
[$500,000/($500,000 + $750,000) ]
.......... $80,000
Apportionment of the $200,000 expense
to the residual grouping of
  gross income: $200,000 x
[$750,000/($500,000 + $750,000) ]
.......... 120,000
                                    ----
---
  Total apportioned supportive expense
.................................
200,000
```

**Example 20**--Supportive Expense--(i) Facts. Assume the same facts as above except that X's president devotes only 5 percent of his time to the foreign operations and 95 percent of his time to the domestic operations and that X's sales manager devotes approximately 10 percent of his time to foreign sales and 90 percent of his time to domestic sales.

(ii) Allocation. The expenses incurred by X with respect to its worldwide activities are definitely related, and therefore allocable to X's gross income from both its foreign and domestic markets.

(iii) Apportionment. On the basis of the additional facts it is not acceptable to apportion the salaries of the president and the sales manager on the basis of gross receipts. It is acceptable to apportion such salaries between the statutory grouping (gross income from sources without the United States) and residual grouping (gross income from sources within the United States) on the basis of time devoted to each sales activity. Remaining expenses may still be apportioned on the basis of gross receipts. The apportionment is as follows:

```
Apportionment of the $200,000 expense
to the statutory grouping of
  gross income:
   President's salary: $40,000 x 5 pct
..................................
$2,000
   Sales manager's salary: $20,000 x
10 pct ...........................
2,000
   Remaining expenses: $140,000 x
[$500,000/($500,000 + $750,000) ] ....
56,000
                                    ----
---
       Subtotal: Apportionment of
expense to statutory grouping .......
60,000

                                    ----
---
Apportionment of the $200,000 expense
to the residual grouping of
  gross income:
   President's salary: $40,000 x 95
pct ..............................
38,000
   Sales manager's salary: $20,000 x
90 pct ...........................
18,000
   Remaining expenses: $140,000 x
[$750,000/($500,000 + $750,000) ] ....
84,000
                                    ----
---
       Subtotal: Apportionment of
expense to residual grouping .......
140,000
                                    ----
---
                                    ----
---
       Total: Apportioned general and
administrative expense .........
200,000
```

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    Attachment V  – page 14 of 28

26 C.F.R. § 1.861-8

**Example 21**—Supportive Expense--(i) Facts. X, a foreign corporation doing business in the United States, is a manufacturer of metal stamping machines. X has no United States subsidiaries and no separate division to manage and oversee its business in the United States. X manufactures and sells these machines in the United States and in foreign countries A and B and has a separate manufacturing facility in each country. Sales of these machines are X's only source of income. In 1977, X incurs general and administrative expenses related to both its U.S. and foreign operations of $100,000. It has machine sales of $500,000, $1,000,000 and $1,000,000 on which it earns gross income of $200,000, $400,000 and $400,000 in the United States, country A, and country B, respectively. The income from the manufacture and sale of the machines in countries A and B is not effectively connected with X's business in the United States.

(ii) Allocation. The $100,000 of general and administrative expense is definitely related to the income to which it gives rise, namely a part of the gross income from sales of machines in the United States, in country A, and in country B. The expenses are allocable to this class of income, even though X's gross income from sources outside the United States is excluded income since it is not effectively connected with a U.S. trade or business.

(iii) Apportionment. Since X is a foreign corporation, the statutory grouping is gross income effectively connected with X's trade of business in the United States, namely gross income from sources within the United States, and the residual grouping is gross income not effectively connected with a trade or business in the United States, namely gross income from countries A and B. Since there are no facts which would require a method of apportionment other than on the basis of sales or gross income, the amount may be apportioned between the two groupings on the basis of amounts of gross income as follows:

```
Apportionment of general and
administrative expense to the
statutory
  grouping, gross income from sources
within the United States:
  $100,000 x [$200,000/($200,000 +
$400,000 + $400,000) ] .............
$20,000
Apportionment of general and
administrative expense to the residual
  grouping, gross income from sources
without the United States:
  $100,000 x [ ($400,000 +
$400,000)/($200,000 + $400,000 +
  $400,000) ] ........................
..................... 80,000
                                    ____
___
  Total apportioned general and
administrative expense ...........
100,000
```

**Example 22**—Domestic International Sales Corporations--(i) Facts. X, a domestic corporation, manufactures a line of kitchenware and sells it to retailers in the United States, France, and the United Kingdom. After the Domestic International Sales Corporation (DISC) legislation was passed in 1971, X established, as of January 1, 1972, a DISC and thereafter did all of its foreign marketing through sales by the DISC. In 1977 the DISC has total sales of $7,700,000 for which X's cost of goods sold is $6,000,000. Thus, the gross income attributable to exports through the DISC is $1,700,000 ($7,700,000 - $6,000,000). Moreover, X has U.S. domestic sales of kitchenware of $12,000,000 on which it earned gross income of $900,000, and X receives royalty income from the foreign license of its kitchenware technology in the amount of $800,000. The DISC's expenses attributable to the resale of export property are $400,000 of which $300,000 qualify as export promotion expenses. X also incurs $125,000 of general and administrative expenses in connection with its domestic and foreign sales activities, and its foreign licensing activities. X and the DISC determine transfer prices charged on the basis of a single product grouping and the "50-50" combined taxable income method (without marginal costing) which permits the DISC to have a taxable income equal to 50 percent of the combined taxable income attributable to the production and sales of the export property, plus 10 percent of the DISC's export promotion expenses.

(ii) Allocation. For purposes of determining combined taxable income of X and the DISC from export sales, general and administrative expenses of $125,000 must be allocated to and apportioned between gross income resulting from the production and sale of kitchenware for export, and from the production and sale of kitchenware for the domestic market. The deduction of $400,000 for expenses attributable to the resale of export property is

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     Attachment V   – page 15 of 28

26 C.F.R. § 1.861-8

allocated solely to gross income from the production and sale of kitchenware in foreign markets.

(iii) *Apportionment.* Apportionment of expense takes place in two stages. In the first stage, for computing combined taxable income from the production and sale of export property, the general and administrative expense should be apportioned between the statutory grouping of gross income from the export of kitchenware and the residual grouping of gross income from domestic sales and foreign licenses. In the second stage, since the limitation on the foreign tax credit requires the use of a separate limitation with respect to dividends from a DISC (section 904(d)), the general and administrative expense should be apportioned between two statutory groupings, DISC dividends and foreign royalty income (for which the overall limitation is used), and the residual grouping of gross income from sales within the United States. In the first stage, in the absence of more specific or contrary information, the general and administrative expense may be apportioned on the basis of gross income in the respective groupings, as follows:

```
Apportionment of general and
administrative expense to the
statutory
   grouping, gross income from exports
of kitchenware: $125,000 x
   [$1,700,000/($1,700,000 + $900,000 +
$800,000)] .....................
$62,500
Apportionment of general and
administrative expense to the residual
   grouping, gross income from domestic
sales of kitchenware and
   foreign royalty income from
licensing kitchenware technology:
   $125,000 x [ ($900,000 +
$800,000)/($1,700,000 + $900,000 +
   $800,000) ]
............................................
.................... 62,500
                                     ----
   ---
         Total apportionment of general
and administrative expense ......
125,000
```

On the basis of this apportionment, the combined taxable income, and the DISC portion of taxable income may be calculated as follows:

```
Gross income from exports
...............................
$1,700,000
Less:
     DISC expense for resale of export
property ............ 400,000
     Apportioned general and
administrative expense .........
62,500

                              ----------


$462,500
                                    ------
   ---
Combined taxable income from
production and export of kitchenware
... 1,237,500
                                    ------
   ---

                                    ------
   ---
DISC income:
     50 pct of combined taxable income
...............................
618,750
     10 pct of export promotion
expense of $300,000
.................... 30,000

                                    ------
   ---
         Total DISC income
...........................................
..... 648,750
DISC income as a percentage of
combined taxable income
................... 52.4
```

In the second stage, in the absence of more specific or contrary information, the general and administrative expense may also be apportioned on the basis of gross income in the respective groupings. Since DISC taxable income is 52.4 percent of combined taxable income, DISC gross income is treated as 52.4 percent of the gross income from exports $1,700,000. The apportionment follows:

26 C.F.R. § 1.861-8

```
Apportionment of general and
administrative expense to the
statutory
  grouping, DISC dividends: $125,000 x
[ (0.524 x
  $1,700,000)/($1,700,000 + $900,000 +
$800,000) ] ....................
$32,750
Apportionment of general and
administrative expense to the
statutory
  grouping, foreign royalty income:
$125,000 x [$800,000/($1,700,000 +
  $900,000 + $800,000) ]
..........................................
.......... 29,412
Apportionment of general and
administrative expense to the residual
  grouping, gross income from sources
within the United States:
  $125,000 x [ ($900,000 + (0.476 x
$1,700,000))/($1,700,000 +
  $900,000 + $800,000) ]
..........................................
.......... 62,838
                                   ----
---
     Total apportioned general and
administrative expense ..........
125,000
```

(iv) This Example 22 applies only to DISC taxable years ending before January 1, 1987, and to distributions from a DISC or former DISC with respect to DISC or former DISC taxable years ending before January 1, 1987.

**Example 23**--[Reserved]

**Example 24**--[Reserved] For guidance, see § 1.861-8T(g) Example 24.

**Example 25**--Income Taxes--(i) Facts. X, a domestic corporation, is a manufacturer and distributor of electronic equipment with operations in states A, B, and C. X also has a branch in country Y which manufactures and distributes the same type of electronic equipment. In 1988, X has taxable income from these activities, as described under the Code (without taking into account the deduction for state income taxes), of $1,000,000, of which $200,000 is foreign source general limitation income subject to a separate limitation under section 904(d)(1)(I) ("general limitation income") and $800,000 is domestic source income. States A, B, and C each determine X's income subject to tax within their state by making adjustments to X's taxable income as determined under the Code, and then apportioning the adjusted taxable income on the basis of the relative amounts of X's payroll, property, and sales within each state as compared to X's worldwide payroll, property, and sales. The adjustments made by states A, B, and C all involve adding and subtracting enumerated items from taxable income as determined under the Code. However, in making these adjustments to taxable income, none of the states specifically exempts foreign source income as determined under the Code. On this basis, it is determined that X has taxable income of $550,000, $200,000, and $200,000 in states A, B, and C, respectively. The corporate tax rates in states A, B, and C are 10 percent, 5 percent, and 2 percent, respectively, and X has total state income tax liabilities of $69,000 ($55,000 + $10,000 + $4,000), which it deducts as an expense for federal income tax purposes.

(ii) Allocation. X's deduction of $69,000 for state income taxes is definitely related and thus allocable to the gross income with respect to which the taxes are imposed. Since the statutes of states A, B, and C do not specifically exempt foreign source income (as determined under the Code) from taxation and since, in the aggregate, states A, B, and C tax $950,000 of X's income while only $800,000 is domestic source income under the Code, it is presumed that state income taxes are imposed on $150,000 of foreign source income. The deduction for state income taxes is therefore related and allocable to both X's foreign source and domestic source income.

(iii) Apportionment. For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation gross income, and one residual grouping, gross income from sources within the United States. The state income tax deduction of $69,000 must be apportioned between these two groupings. Corporation X calculates the apportionment on the basis of the relative amounts of foreign source general limitation taxable income and U.S. source taxable income subject to state taxation. In this case, state income taxes are presumed to be imposed on $800,000 of domestic source income and $150,000 of foreign source general limitation income.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    Attachment V    – page 17 of 28

26 C.F.R. § 1.861-8

```
State income tax deduction apportioned
to foreign source general
  limitation income (statutory
grouping): $69,000 x
  ($150,000/$950,000)
..........................................
............ $10,895
State income tax deduction apportioned
to income from sources
  within the United States (residual
grouping): $69,000 x
  ($800,000/$950,000)
..........................................
............ 58,105
                                    -------
---
Total apportioned state income tax
deduction ...........................
$69,000
```

**Example 26**—Income Taxes—(i) Facts. Assume the same facts as in Example 25 except that the language of state A's statute and the statute's operation exempt from taxation all foreign source income, as determined under the Code, so that foreign source income is not included in adjusted taxable income subject to apportionment in state A (and factors relating to X's country Y branch are not taken into account in computing the state A apportionment fraction).

(ii) Allocation. X's deduction of $69,000 for state income taxes is definitely related and thus allocable to the gross income with respect to which the taxes are imposed. Since state A exempts all foreign source income by statute, state A is presumed to impose tax on $550,000 of X's $800,000 of domestic source income. X's state A tax of $55,000 is allocable, therefore, solely to domestic source income. Since the statutes of states B and C do not specifically exclude all foreign source income as determined under the Code, and since states B and C impose tax on $400,000 ($200,000 + $200,000) of X's income of which only $250,000 ($800,000 - $550,000) is presumed to be domestic source, the deduction for the $14,000 of income taxes imposed by states B and C is related and allocable to both foreign source and domestic source income.

(iii) Apportionment. (A) For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation gross income, and one residual grouping, gross income from sources within the United States. The deduction of $14,000 for income taxes of states B and C must be apportioned between these two groupings.

(B) Corporation X calculates the apportionment on the basis of the relative amounts of foreign source general limitation income and U.S. source income subject to state taxation.

```
States B and C income tax deduction
apportioned to foreign source
  general limitation income (statutory
grouping): $14,000 x
  ($150,000/$400,000)
..........................................
............ $5,250
States B and C income tax deduction
apportioned to income from sources
  within the United States (residual
grouping): $14,000 x
  ($250,000/$400,000)
..........................................
............ 8,750
                                     ----
---
Total apportioned state income tax
deduction ...........................
$14,000
```

(C) Of X's total income taxes of $69,000, the amount allocated and apportioned to foreign source general limitation income equals $5,250. The total amount of state income taxes allocated and apportioned to U.S. source income equals $63,750 ($55,000 + $8,750).

**Example 27**—Income Tax—(i) Facts. Assume the same facts as in Example 25 except that state A, in which X has significant income-producing activities, does not impose a corporate income tax or other state tax computed on the basis of income derived from business activities conducted in state A. X therefore has a total state income tax liability in 1988 of $14,000 ($10,000 paid to state B plus $4,000 paid to state C), all of which is subject to allocation and apportionment under paragraph (b) of this section.

(ii) Allocation. (A) X's deduction of $14,000 for state income taxes is definitely related and allocable to the gross income with respect to which the taxes are imposed.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

26 C.F.R. § 1.861-8

However, in these facts, an adjustment is necessary before the aggregate state taxable incomes can be compared with U.S. source income on the federal income tax return in the manner described in Examples 25 and 26. Unlike the facts in Examples 25 and 26, state A imposes no income tax and does not define taxable income attributable to activities in state A. The total amount of X's income subject to state taxation is, therefore, $400,000 ($200,000 in state B and $200,000 in state C). This total presumptively does not include any income attributable to activities performed in state A and therefore can not properly be compared to total U.S. source taxable income reported by X for federal income tax purposes, which does include income attributable to state A activities.

(B)(1) Accordingly, before applying the method used in Examples 25 and 26 to the facts of this example, it is necessary first to estimate the amount of taxable income that state A could reasonably attribute to X's activities in state A, and then to reduce federal taxable income by that amount.

(2) Any reasonable method may be used to attribute taxable income to X's activities in state A. For example, the rules of the Uniform Division of Income for Tax Purposes Act ("UDITPA") attribute income to a state on the basis of the average of three ratios that are based upon the taxpayer's facts-- property within the state over total property, payroll within the state over total payroll, and sales within the state over total sales--and, with adjustments, provide a reasonable method for this purpose. When applying the rules of UDITPA to estimate U.S. source income derived from state A activities, the taxpayer's UDITPA factors must be adjusted to eliminate both taxable income and factors attributable to a foreign branch. Therefore, in this example all taxable income as well as UDITPA apportionment factors (property, payroll, and sales) attributable to X's country Y branch must be eliminated.

(C)(1) Since it is presumed that, if state A had had an income tax, state A would not attempt to tax the income derived by X's country Y branch, any reasonable estimate of the income that would be taxed by state A must exclude any foreign source income.

(2) When using the rules of UDITPA to estimate the income that would have been taxable by state A in these facts, foreign source income is excluded by starting with federally defined taxable income (before deduction for state income taxes) and subtracting any income derived by X's country Y branch. The hypothetical state A taxable income is then determined by multiplying the resulting difference by the average of X's state A property, payroll, and sales ratios, determined using the principles of UDITPA (after adjustment by eliminating the country Y branch factors). The resulting product is presumed to be exclusively U.S. source income, and the allocation and apportionment method described in Example 26 must then be applied.

(3) If, for example, state A taxable income were determined to equal $550,000, then $550,000 of U.S. source income for federal income tax purposes would be presumed to constitute state A taxable income. Under Example 26, the remaining $250,000 ($800,000 - $550,000) of U.S. source income for federal income tax purposes would be presumed to be subject to tax in states B and C. Since states B and C impose tax on $400,000, the application of Example 25 would result in a presumption that $150,000 is foreign source income and $250,000 is domestic source income. The deduction for the $14,000 of income taxes of states B and C would therefore be related and allocable to both foreign source and domestic source income and would be subject to apportionment.

(iii) Apportionment. The deduction of $14,000 for income taxes of states B and C is apportioned in the same manner as in Example 26. As a result, $5,250 of the $14,000 of state B and state C income taxes is apportioned to foreign source general limitation income ($14,000 x $150,000/$400,000), and $8,750 ($14,000 x $250,000/$400,000) of the $14,000 of state B and state C income taxes is apportioned to U.S. source income.

**Example 28**--Income Tax--(i) Facts. (A) Assume the same facts as in Example 25 (X has $1,000,000 of taxable income for federal income tax purposes, $800,000 of which is U.S. source income and $200,000 of which is foreign source general limitation income), except that $100,000 of X's $200,000 of foreign source general limitation income consists of dividends from first-tier controlled foreign corporations ("CFCs") (as defined in section 957(a) of the Code) which derive exclusively foreign source general limitation income. X owns stock representing 10 to 50 percent of the vote and value in such CFCs.

(B) State A taxable income is computed by first making adjustments to X's federal taxable income. These adjustments result in X having a total of $1,100,000 of

26 C.F.R. § 1.861-8

apportionable taxable income for state A tax purposes. None of the $100,000 of adjustments made by state A relate to the dividends paid by the CFCs. As in Example 25, the amount of apportionable taxable income attributable to business activities conducted in state A is determined by multiplying apportionable taxable income by a fraction (the "state apportionment fraction") that compares the relative amounts of X's payroll, property, and sales within state A with X's worldwide payroll, property and sales. An analysis of state A law indicates that state A law includes in its definition of the taxable business income of X which is apportionable to X's state A activities, dividends paid to X by its subsidiaries that are in the same business as X, but are less than 50 percent owned by X ("portfolio dividends"). The dividends received by X from the 10 to 50 percent owned first-tier CFCs, therefore, are considered to be portfolio dividends includable in apportionable business income for state A tax purposes. However, the factors of these CFCs are not included in the state A apportionment fraction for purposes of apportioning income to X's activities in the state. The comparison of X's state A factors with X's worldwide factors results in a state apportionment fraction of 50 percent. Applying this fraction to apportionable taxable income of $1,100,000, as determined under state law, results in attributing 50 percent of apportionable taxable income to state A, and produces total state A taxable income of $550,000. State A imposes an income tax at a rate of 10 percent on the amount of income that is attributed to state A, which results in $55,000 of tax imposed by state A.

(ii) Allocation. (A) States A, B, and C impose income taxes of $69,000 which must be allocated to the classes of gross income upon which the taxes are imposed. A portion of X's federal income tax deduction of $55,000 for state A income tax is definitely related and thus allocable to the class of gross income consisting of foreign source portfolio dividends. A definite relationship exists between a deduction for state income tax and portfolio dividends when a state includes portfolio dividends in state taxable income apportionable to the state, but determines state taxable income by applying an apportionment fraction that excludes the factors of the corporations paying those dividends. By applying a state apportionment fraction that excludes factors of the corporations paying portfolio dividends to apportionable taxable income that includes the $100,000 of foreign source portfolio dividends, $50,000 (50 percent of the $100,000) of the portfolio dividends is attributed to X's activities in state A and subjected to state A income tax. Applying the state A income tax rate of 10 percent to the $50,000 of foreign source portfolio dividends subjected to state A income tax, $5,000 of X's $55,000 total state A income tax liability is definitely related and allocable to a class of gross income consisting of the foreign source portfolio dividends. Since under the look-through rules of <u>section 904(d)(3)</u> the foreign source portfolio dividends from the first-tier CFCs are included within the general limitation described in <u>section 904(d)(1)(I)</u>, the $5,000 of state A tax on foreign source portfolio dividends is allocated entirely to foreign source general limitation income and, therefore, is not apportioned. (If the total amount of state A tax imposed on foreign source portfolio dividends were to exceed the actual amount of X's state A income tax liability (for example, due to net operating losses), the actual amount of state A tax would be allocated entirely to those foreign source portfolio dividends.) After allocation of a portion of the state A tax to portfolio dividends, $50,000 ($55,000 - $5,000) of state A tax remains to be allocated.

(B) A total of $64,000 (the aggregate of the $50,000 remaining state A tax, and the $10,000 and $4,000 of taxes imposed by states B and C, respectively) is to be allocated (as provided in Example 25) by comparing U.S. source taxable income (as determined under the Code) with the aggregate of the state taxable incomes determined by states A, B, and C (after reducing state apportionable taxable incomes by the amount of any portfolio dividends included in apportionable taxable income to which tax has been specifically allocated). X's state A taxable income, after reduction by the $50,000 of portfolio dividends taxed by state A, equals $500,000. X also has taxable income of $200,000 and $200,000 in states B and C, respectively. In the aggregate, therefore, states A, B, and C tax $900,000 of X's income, after excluding state taxable income attributable to portfolio dividends. Since X has only $800,000 of U.S. source taxable income for federal income tax purposes, it is presumed that state income taxes are imposed on $100,000 of foreign source income. The remaining deduction of $64,000 for state income taxes is therefore related and allocable to both foreign source and domestic source income and is subject to apportionment.

(iii) Apportionment. For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation income, and one residual grouping, gross income from sources within the United States. The remaining state income tax deduction of $64,000 must be apportioned between these two groupings on the basis of relative

26 C.F.R. § 1.861-8

amounts of foreign source general limitation taxable income and U.S. source taxable income subject to state taxation. In this case, the $64,000 of state income taxes is considered to be imposed on $800,000 of domestic source income and $100,000 of foreign source general limitation income and is apportioned as follows:

```
State income tax deduction apportioned
to foreign source general
   limitation income (statutory
grouping): $64,000 x
   ($100,000/$900,000)
..................................
........... $ 7,111
State income tax deduction apportioned
to income from sources
   within the United States (residual
grouping): $64,000 x
   ($800,000/$900,000)
..................................
........... 56,889
                                  -------
---
Total apportioned state income tax
deduction ........................
$64,000
```

Of the total state income taxes of $69,000, the amount allocated and apportioned to foreign source general limitation income equals $12,111 ($5,000 + $7,111). The total amount of state income taxes allocated and apportioned to U.S. source income equals $56,889.

**Example 29**—Income Taxes--(i) Facts. (A) P, a domestic corporation, is a manufacturer and distributor of electronic equipment with operations in states F, G, and H. P also has a branch in country Y which manufactures and distributes the same type of electronic equipment. In addition, P has three wholly owned subsidiaries, US1, US2, and FS, the latter a controlled foreign corporation ("CFC") as defined in section 957(a) of the Code. P also owns stock representing 10 to 50 percent of the vote and value of various other first-tier CFCs that derive exclusively foreign source general limitation income.

(B) In 1988, P derives $1,000,000 of federal taxable income (without taking into account the deduction for state income taxes), which consists of $250,000 of foreign source general limitation income and $750,000 of U.S. source income. The foreign source general limitation income consists of a $25,000 subpart F inclusion with respect to FS, $150,000 of dividends from the other first-tier CFCs deriving exclusively foreign source general limitation income, in which P owns stock representing 10 to 50 percent of the vote and value, and $75,000 of manufacturing and sales income derived by P's U.S. operations and country Y branch. The $750,000 of U.S. source income consists of manufacturing and sales income derived by P's U.S. operations.

(C) For federal income tax purposes, US1 derives $75,000 of taxable income, before deduction for state income taxes, which consists entirely of U.S. source income. US2, a so-called "80/20" corporation described in section 861(c)(1), derives $250,000 of federal taxable income before deduction for state or foreign income taxes, all of which is derived from foreign operations and consists entirely of foreign source general limitation income. FS is not engaged in a U.S. trade or business and derives $550,000 of foreign source general limitation income before deduction for foreign income taxes.

(D) State F imposes a corporate income tax of 10 percent of P's state F taxable income, which is determined by formulary apportionment of the total taxable income attributable to P's worldwide unitary business. State F determines P's taxable income for state F tax purposes by first making adjustments to the taxable income, as determined for federal income tax purposes, of the members of the unitary business group to determine the total taxable income of the group. State F then computes P's state taxable income by attributing a portion of that unitary business taxable income to activities of P that are conducted in state F. State F does this by multiplying the unitary business taxable income (federal taxable income with state adjustments) by a fraction (the "state apportionment fraction") that compares the relative amounts of the unitary business group's payroll, property, and sales (the "factors") in state F with the payroll, property, and sales of the unitary business group. P is the only member of its unitary business group that has state F factors and that is thereby subject to state F income tax and filing requirements. State F defines the unitary business group to include any corporation more than 50 percent of which is directly or indirectly owned by a state F taxpayer and is engaged in the same unitary business. P's unitary business group, therefore, includes P, US1, US2, and FS, but does not include the 10 to 50 percent owned CFCs. The income of the unitary business group excludes intercompany dividends between members of the unitary business group and subpart F inclusions with

26 C.F.R. § 1.861-8

respect to a member of the unitary business group. Dividends paid from nonmembers of the unitary group (the 10 to 50 percent owned CFCs) for state F tax purposes are referred to as "portfolio dividends" and are included in taxable income of the unitary business. None of the factors (in state F or worldwide) of the corporations paying portfolio dividends are included in the state F apportionment fraction for purposes of apportioning total taxable income of the unitary business to P's state F activities.

(E) After state adjustments to the taxable income of the unitary business group, as determined under federal tax principles, the total taxable income of P's unitary business group equals $2,000,000, consisting of $1,050,000 of P's income ($100,000 of foreign source manufacturing and sales income, $150,000 of foreign source portfolio dividends, and $800,000 of U.S. source manufacturing and sales income, but excluding the $25,000 subpart F inclusion attributable to FS since FS is a member of the unitary business group), $100,000 of US1's income (from sales made in the United States), $275,000 of US2's income (from an active business outside the United States), and $575,000 of FS's income. The differences between taxable income under federal tax principles and state F apportionable taxable income for P, US1, US2, and FS represent adjustments to taxable income under federal tax principles that are made pursuant to the tax laws of state F.

(F) The taxable income for each member of the unitary business group under federal tax principles and state law principles is summarized in the following table. (The items of income listed in the "Federal" column of the table refer to taxable income before deduction for state income tax.)

|  | Federal | State F |
|---|---|---|
| **P** | | |
| U.S. source income | $750,000 | $800,000 |
| Foreign source general limitation income: | | |
| Portfolio dividends | 150,000 | 150,000 |
| Subpart F income | 25,000 | 0 |
| Manufacturing and sales income | 75,000 | 100,000 |
| Total taxable income | 1,000,000 | 1,050,000 |
| **US1** | | |
| U.S. source income | 75,000 | 100,000 |
| **US2** | | |
| Foreign source general limitation income | 250,000 | 275,000 |
| **FS** | | |
| Foreign source general limitation income | 550,000 | 575,000 |
| Taxable income of the unitary business group | | 2,000,000 |

(G) State F deems P to have state F taxable income of $500,000, which is determined by multiplying the total taxable income of the unitary business group ($2,000,000) by the group's state F apportionment fraction, which is assumed to be 25 percent in these facts. P's state F taxable income is then multiplied by the state F tax rate of 10 percent, resulting in a state F tax liability of $50,000. State G and state H, unlike state F, do not tax portfolio dividends. Although state G and state H apportion taxable income, respectively, on the basis of an apportionment fraction that compares state factors to total factors, state G and state H, unlike state F, do not apply a unitary business theory and consider only P's taxable income and factors in computing P's taxable income. P's taxable income under state G law equals $300,000, which is subject to a 5 percent tax rate resulting in a state G tax liability of $15,000. P's taxable income under state H law is $300,000, which is subject to a tax rate of 2 percent resulting in a state H tax liability of $6,000. P has a total federal income tax deduction for state income taxes of

26 C.F.R. § 1.861-8

$71,000 ($50,000 + 15,000 + 6,000).

(ii) Allocation. (A) P's deduction of $71,000 for state income taxes is definitely related and allocable to the gross income with respect to which the taxes are imposed. Adjustments may be necessary, however, before aggregate state taxable incomes can be compared with U.S. source taxable income on the federal income tax return in the manner described in Examples 25 and 26. In allocating P's deduction for state income taxes, it is necessary first to determine the portion, if any, of the deduction that is definitely related and allocable to a particular class of gross income. A definite relationship exists between a deduction for state income tax and dividend income when a state includes portfolio dividends in state taxable income apportionable to the taxpayer's activities in the state, but determines state taxable income by applying an apportionment formula that excludes the factors of the corporations paying portfolio dividends.

(B) In this case, $150,000 of foreign source portfolio dividends are subject to a state F apportionment fraction of 25 percent, which results in a total of $37,500 of state F taxable income attributable to such dividends. As illustrated in Example 28, $3,750 ($150,000 x 25 percent state F apportionment percentage x 10 percent state F tax rate) of P's state F income tax is definitely related and allocable to a class of gross income consisting entirely of the foreign source portfolio dividends. Since under the look-through rules of section 904(d)(3) the foreign source portfolio dividends paid by first-tier CFCs are included within the general limitation described in section 904(d)(1)(I), the $3,750 of state F tax on foreign source portfolio dividends is allocated entirely to foreign source general limitation income and, therefore, is not apportioned.

(C) After reducing state F taxable income of the unitary business group by the taxable income attributable to portfolio dividends, P's remaining state F taxable income equals $462,500 ($500,000 - $37,500), the portion of the taxable income of the unitary business that state F attributes to P's activities in state F. Accordingly, in order to allocate and apportion the remaining $46,250 of state F tax ($50,000 of state F tax minus the $3,750 of state F tax allocated to foreign source portfolio dividends), it is necessary first to determine if state F is taxing only P's non-unitary taxable income (as defined below) or is imposing its tax partly on other unitary business income that is attributed under state F law to P's activities in state F. P's state F non-unitary taxable income is computed by applying the state F apportionment formula, solely on the basis of P's income (excluding portfolio dividends) and state F apportionment factors. If the state F taxable income (after reduction by the portfolio dividends attributed to state F) attributed to P under state F law exceeds P's non-unitary taxable income, a portion of the state F tax must be allocated and apportioned on the basis of the other unitary business income that is attributed to and taxable to P under state F law. If P's non-unitary taxable income equals or exceeds the $462,500 of remaining state F taxable income, it is presumed that state F is only taxing P's non-unitary taxable income, so that the entire amount of the remaining state F tax should be allocated and apportioned in the manner described in Example 25.

(D) If P's non-unitary taxable income is less than the $462,500 of remaining state F taxable income (after reduction for the $37,500 of state F taxable income attributable to portfolio dividends), it is presumed that state F is attributing to P, and taxing P upon, other unitary business income. In such a case, it is necessary to determine if state F is attributing to P, and imposing its income tax on, a part of the foreign source income that would be generally presumed under separate accounting to be the income of foreign affiliates and 80/20 companies included in the unitary group, or whether state F is limiting the income it attributes to P, and its taxation of P, to the U.S. source income that would be generally presumed under separate accounting to be the income of domestic members of the unitary group.

(E) Assume for purposes of this example that the non-unitary taxable income attributable to P equals $396,000, computed by multiplying P's state F taxable income of $900,000 (P's state F taxable income (before state F apportionment) of $1,050,000 less the $150,000 of foreign source portfolio dividends) by P's non-unitary state F apportionment fraction, which is assumed to be 44 percent. Because P's non-unitary taxable income of $396,000 is less than the $462,500 of remaining state F taxable income, state F is presumed to be attributing to P and taxing the income that would have been generally attributed under separate accounting to P's affiliates in the unitary group. To determine if state F tax is being imposed on members of the unitary group (other than P) that produce foreign source income, it is necessary to compute a hypothetical state F taxable income for all companies in the unitary group with significant U.S. operations. (For this purpose, the hypothetical group of companies with significant domestic operations is referred

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    Attachment V — page 23 of 28

26 C.F.R. § 1.861-8

to as the "water's edge group.") State F is presumed to be attributing to P and taxing income that would have been generally attributable under separate accounting to foreign corporations and 80/20 companies to the extent that the remaining state F taxable income ($462,500) of P exceeds the hypothetical state F taxable income that would have been attributed under state F law to P if state F had defined the unitary group to be the water's edge group.

(F) The members of the water's edge group would have been P and US1. The unitary business income of this water's edge group is $1,000,000, the sum of $900,000 (P's state F taxable income (before state F apportionment) of $1,050,000 less the $150,000 of foreign source portfolio dividends) and $100,000 (US1's state F taxable income). For purposes of this example, the state F apportionment fraction determined on a unitary basis for this water's edge group is assumed to equal 40 percent, the average of P and US1's state F payroll, property, and sales factor ratios (the water's edge group's state F factors over its worldwide factors). Applying this apportionment fraction to the $1,000,000 of unitary business income of the water's edge group yields state F water's edge taxable income of $400,000. The excess of the remaining $462,500 of P's state F taxable income over the $400,000 of P's state F water's edge taxable income equals $62,500, and is attributable to the inclusion of US2 and FS in the unitary group. The state F tax attributable to the $62,500 of taxable income attributed to P under state F law, and that would have generally been attributed to US2 and FS under non-unitary accounting, equals $6,250 and is allocated entirely to a class of gross income consisting of foreign source general limitation income, because the income of FS and US2 consists entirely of such income. After the $6,250 of state F tax attributable to US2 and FS is subtracted from the remaining $46,250 of net state F tax, P has $40,000 of state F tax remaining to be allocated and apportioned.

(G) To the extent that the remainder of P's state F taxable income ($400,000) exceeds P's non-unitary state F taxable income ($396,000), it is presumed that state F is attributing to and imposing on P a tax on U.S. source income that would have been attributed under separate accounting to members of the water's edge group other than P. In these facts, the $4,000 difference in P's state F taxable income results from the inclusion of US1 in the unitary group. The $400 of P's state F tax attributable to this $4,000 is allocated entirely to P's U.S. source income. P's remaining $39,600 of state F tax ($40,000 of P's state F tax resulting from the attribution of P of income that would have been attributed under non-unitary accounting to other members of the water's edge group, minus $400 of state F tax attributable to US1 and allocated to P's U.S. source income) is the state F tax attributable to P's non-unitary state F taxable income that is to be allocated and apportioned together with P's state G tax of $15,000 and state H tax of $6,000 as illustrated in Example 25.

(H) In allocating the $60,600 of state tax liabilities ($39,600 state F tax attributable to P's non-unitary state F income + $15,000 state G tax + $6,000 state H tax) under Example 25, P's state taxable income in state G and state H ($300,000 + $300,000) must be added to P's non-unitary state F taxable income ($396,000). The resulting $996,000 of combined state taxable incomes is compared with $750,000 of U.S. source income on P's federal income tax return. Because P's combined state taxable incomes exceeds P's federal U.S. source taxable income, it is presumed that the remaining $60,600 of P's total state income taxes is imposed in part on foreign source income. Accordingly, P's remaining deduction of $60,600 ($39,600 + $15,000 + $6,000) for state income taxes is related and allocable to both P's foreign source and domestic source income and is subject to apportionment.

(iii) Apportionment. The $60,600 of state taxes (the remaining $39,600 of state F tax + $15,000 of state G tax + $6,000 of state H tax) must be apportioned between foreign source general limitation income and U.S. source income for federal income tax purposes. This apportionment is based upon the relative amounts of foreign source general limitation taxable income and U.S. source taxable income comprising the $996,000 of income subject to tax by the states, after reducing the total amount of income subject to tax by the portfolio dividends and the income attributed to P under state F law that would have been attributed under arm's length principles to other members of P's state F unitary business group. The deduction for the $60,600 of state income taxes is apportioned as follows:

```
State income tax deduction apportioned
to foreign source general
  limitation income (statutory
grouping): $60,600 x
  ($246,000/$996,000)
.......................................
........... $14,967
State income tax deduction apportioned
to income from sources
  within the United States (residual
```

26 C.F.R. § 1.861-8

```
grouping): $60,600 x
   ($750,000/$996,000)
.........................................
............ 45,633
                                    -------
---
Total apportioned state income tax
deduction ...........................
60,600
```

Of the total state income taxes of $71,000, the amount allocated and apportioned to foreign source general limitation income is $24,967--the sum of $14,967 of state F, state G, and state H taxes apportioned to foreign source general limitation income, $3,750 of state F tax allocated to foreign source apportionable dividend income, and the $6,250 of state F tax allocated to foreign source general limitation income as the result of state F's worldwide unitary business theory of taxation. The total amount of state income taxes allocated and apportioned to U.S. source income equals $46,033--the sum of the $400 of state F tax attributable to the inclusion of US1 in the state F unitary business group and $45,633 of combined state F, G, and H tax apportioned under the method provided in Example 25.

**Example 30.** [Reserved]. For further guidance, see § 1.861-8T(g), Example 30.

**Example 31**--Income Taxes--(i) Facts. Assume that the facts are the same as in Example 29, except that state G requires P to adjust its federal taxable income by depreciating an asset at a different rate than is allowed P under the Internal Revenue Code for the same asset. Before using the methodology of Example 25 to determine whether a portion of its deduction for state income taxes is allocable to a class of gross income that includes foreign source income, P recomputes its taxable income under state G law by using the rate of depreciation that it is entitled to use under the Code, and uses this recomputed amount in applying the methodology of Example 25.

(ii) Allocation. P's modification of its state G taxable income is permissible. Under the methodology of Example 25, this modification of state G taxable income will produce a reasonable determination of the portion (if any) of P's state income taxes that is allocable to a class of gross income that includes foreign sources income.

**Example 32**--Income Taxes--(i) Facts. Assume the facts are the same as Example 29, except that P's state F taxable income differs from the amount of its U.S. source income under federal income tax principles solely because state F determines P's state taxable income under a worldwide unitary business theory instead of the arm's length principles applied in the Code. Before using the methodology of Example 25 to determine whether a portion of its deduction for state income taxes is allocable to a class of gross income that includes foreign source income, P recomputes state F taxable income under the arm's length principles applied in the Code. P substitutes that recomputed amount for the amount of taxable income actually determined under state F law in applying the methodology of Example 25.

(ii) Allocation. P's modification of state F taxable income does not accurately reflect the factual relationship between the deduction for state F income tax and the income on which the tax is imposed, because there is no factual relationship between the state F income tax and the state F taxable income as recomputed under Code principles. State F does not impose its income tax upon P's income as it might have been defined under the Internal Revenue Code. Consequently, P's modification of state F taxable income is impermissible because it will not produce a reasonable determination of the portion (if any) of P's state income taxes that is allocable to a class of gross income that includes foreign source income.

**Example 33**--Income Taxes--(i) Facts. Assume the same facts as in Example 29, except that state G does not impose an income tax on corporations, and P's non-unitary state F taxable income equals $462,500. Thus only $56,000 of state income taxes ($50,000 of state F income tax and $6,000 of state H income tax) are deductible and required to be allocated and (if necessary) apportioned. As in Example 29, P has $800,000 of aggregate state taxable income ($500,000 of state F taxable income and $300,000 of state H taxable income).

(ii) Method One. Assume that P has elected to allocate and apportion its deduction for state income tax under the safe harbor method provided in § 1.861-8 (e)(6)(ii)(D)(2) ("Method One").

(A) Step One--Specific allocation to foreign source portfolio dividends. P applies the methodology of paragraph (ii) of Example 28 to determine the portion of the deduction that must be allocated to a class of gross income consisting solely of foreign source portfolio

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.     Attachment V   -- page 25 of 28

26 C.F.R. § 1.861-8

dividends. As illustrated in paragraphs (ii) (A) and (B) of Example 29, $3,750 of the deduction for state F income tax is attributable to the $37,500 of foreign source portfolio dividends attributed under state F law to P's activities in state F. Thus $3,750 of P's deduction for state income tax must be specifically allocated to a class of gross income consisting solely of $37,500 of foreign source portfolio dividends. No apportionment of the $3,750 is necessary. P's adjusted state taxable income is $762,500 (aggregate state taxable income of $800,000 reduced by $37,500 of foreign source portfolio dividends). Because the remaining amount of state F taxable income ($462,500) equals P's non-unitary state F taxable income, no further specific allocation of state tax is required.

(B) Step Two--Adjustment of U.S. source federal taxable income. P applies the methodology illustrated in paragraph (ii) of Example 27 (including the rules of UDITPA described therein) to determine the amount of its federal taxable income attributable to its activities in state G. Assume that P determines under this methodology that $300,000 of its federal taxable income is attributable to activities in state G. P's adjusted U.S. source federal taxable income equals $450,000 ($750,000 minus the $300,000 attributed to P's activities in state G).

(C) Step Three--Allocation. The portion of P's deduction for state income tax remaining to be allocated equals $52,250 ($56,000 minus the $3,750 specifically allocated to foreign source portfolio dividends). P allocates this portion by applying the methodology illustrated in paragraph (ii) of Example 25, as modified by paragraph (e)(6)(ii)(D)(2)(iii) of this section. Thus, P compares its adjusted state taxable income (as determined under Step One in paragraph (A) above) with an amount equal to 110% of its adjusted U.S. source federal taxable income (as determined under Step Two in paragraph (B) above). Because P's adjusted state taxable income ($762,500) exceeds 110% of P's adjusted U.S. source federal taxable income ($495,000, or 110% of $450,000), the remaining portion of P's deduction for state income tax ($52,500) must be allocated to a class of gross income that includes both U.S. and foreign source income.

(D) Step Four--Apportionment. P must apportion to U.S. source income the portion of the deduction that is attributable to state income tax imposed upon state taxable income in an amount equal to 110% of P's adjusted U.S. source federal taxable income. The remainder of the deduction must be apportioned to foreign source general limitation income.

```
Amount of deduction to be apportioned
.................................
$52,250.00
Less portion of deduction to be
apportioned to income from sources
  within the United States (residual
grouping): $52,250 x
  ($495,000/$762,500)
..............................
........ $33,919.67

                                 --------
---
Equals Portion of deduction to be
apportioned to foreign source
  general limitation income (statutory
grouping):  ..................
$18,330.33
```

(iii) Method Two. Assume that P has elected to allocate and apportion its deduction for state income tax under the safe harbor method provided in § 1.861-8(e)(6)(ii)(D)(3) ("Method Two").

(A) Step One--Specific allocation. Step One of Method Two is the same as Step One of Method One. Therefore, as described in paragraph (A) of paragraph (ii) above, $3,750 of P's deduction for state income tax must be specifically allocated to a class of gross income consisting solely of $37,500 of foreign source portfolio dividends. No apportionment of the $3,750 is necessary. P's adjusted state taxable income is $762,500 (aggregate state taxable income of $800,000 reduced by $37,500 of foreign source portfolio dividends).

(B) Step Two--Adjustment of U.S. source federal taxable income. Step Two of Method Two is the same as Step Two of Method One. Therefore, as described in paragraph (B) of paragraph (ii) above, assume that P determines that $300,000 of its federal taxable income is attributable to activities in state G. P's adjusted U.S. source federal taxable income equals $450,000 ($750,000 minus the $300,000 attributed to P's activities in state G).

(C) Step Three--Allocation. The portion of P's deduction for state income tax remaining to be allocated equals $52,250 ($56,000 minus the $3,750 of state F income tax specifically allocated to foreign source portfolio dividends). P allocates this portion by applying

26 C.F.R. § 1.861-8

the methodology illustrated in paragraph (ii) of Example 25, as modified by paragraph (e)(6)(ii)(D)(3)(iii) of this section. Thus, P compares its adjusted state taxable income (as determined under Step One in paragraph (A) above) with its adjusted U.S. source federal taxable income (as determined under Step Two in paragraph (B) above). Because P's adjusted state taxable income ($762,500) exceeds P's adjusted U.S. source federal taxable income ($450,000), the remaining portion of P's deduction for state income tax ($52,500) must be allocated to a class of gross income that includes both U.S. and foreign source income.

(D) Step Four--Apportionment. P must apportion to U.S. source income the portion of the deduction that is attributable to state income tax imposed upon state taxable income in an amount equal to P's adjusted U.S. source federal taxable income.

```
Amount of deduction to be apportioned
.................................
$52,250.00
Less portion of deduction initially
apportioned to income from
  sources within the United States
(residual grouping): $52,250 x
  ($450,000/$762,500)
.........................................
......... 30,836.07

                              -------
---
Remainder requiring further
apportionment: $52,250 x
  ($312,500/$762,500)
.........................................
......... 21,413.93
```

The remainder of $21,413.93 must be further apportioned between foreign source general limitation income and U.S. source federal taxable income in the same proportions that P's adjusted U.S. source federal taxable income and foreign source general limitation income bear to P's total federal taxable income (taking into account the adjustment of U.S. source federal taxable income and reduced by the amount of foreign source portfolio dividends to which the tax has been specifically allocated).

```
Portion of remainder apportioned to
foreign source general
  limitation income (statutory
grouping): $21,413.93 x
  ($212,500/$662,500)
.........................................
......... $6,868.62
Remaining state income tax deduction
to be apportioned to income
  from sources within the United
States (residual grouping):
  $21,413.93 X ($450,000/$662,500)
.........................................
$14,545.31
```

Of P's total deduction of $56,000 for state income tax, the portion allocated and apportioned to foreign source general limitation income equals $10,618.62-- the sum of $6,868.62 apportioned under Step Four and the $3,750.00 specifically allocated to foreign source portfolio dividend income under Step One. The portion of the deduction allocated and apportioned to U.S. source income equals $45,381.38--the sum of the $30,836.07 and the $14,545.31 apportioned under Step Four.

(h) **Effective/applicability date.** Paragraphs (f)(1)(vi)(E), (f)(1)(vi)(F), and (f)(1)(vi)(H) of this section apply to taxable years ending after April 9, 2008.

[T.D. 6500, 25 FR 11910, Nov. 26, 1960, as amended by T.D. 6892, 31 FR 11144, Aug. 23, 1966; T.D. 7378, 40 FR 45434, Oct. 2, 1975; T.D. 7456, 42 FR 1195, Jan. 6, 1977; T.D. 7749, 46 FR 1683, Jan. 7, 1981; T.D. 7939, 49 FR 4207, Feb. 3, 1984; T.D. 8228, 53 FR 35474, Sept. 14, 1988; T.D. 8236, 53 FR 49874, Dec. 12, 1988; T.D. 8286, 55 FR 3052, Jan. 30, 1990; T.D. 8337, 56 FR 10369, March 12, 1991; 56 FR 22760, May 16, 1991; 56 FR 24001, May 28, 1991; T.D. 8228, 60 FR 36669, July 18, 1995; T.D. 8646, 60 FR 66503, Dec. 22, 1995; T.D. 8805, 64 FR 1509, Jan. 11, 1999; T.D. 8973, 66 FR 67083, Dec. 28, 2001; T.D. 9143, 69 FR 44931, July 28, 2004; T.D. 9194, 70 FR 18928, April 11, 2005; T.D. 9211, 70 FR 40662, July 14, 2005; T.D. 9278, 71 FR 44514, Aug. 4, 2006; T.D. 9391, 73 FR 19358, April 9, 2008]

26 C. F. R. § 1.861-8, **26 CFR § 1.861-8**

Current through April 17, 2008; 73 FR 20841

Copr. © 2008 Thomson/West

26 C.F.R. § 1.861-8

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.    Attachment V  – page 28 of 28