# ATTACHMENT

7

**39910    Federal Register / Vol. 59, No. 149 / Thursday, August 4, 1994 / Rules and Regulations**

## DEPARTMENT OF JUSTICE

**28 CFR Part 77**

**[AG Order No. 1903–94]**

**Communications With Represented Persons**

**AGENCY:** Department of Justice.

**ACTION:** Final rule.

**SUMMARY:** This final rule governs the circumstances under which attorneys employed by the Department of Justice ("Department") may communicate with persons known to be represented by counsel in the course of law enforcement investigations and proceedings.

The purpose of this rule is to impose a comprehensive, clear, and uniform set of regulations on the conduct of government attorneys during criminal and civil investigations and enforcement proceedings. The rule is intended to ensure that government attorneys adhere to the highest ethical standards, while eliminating the uncertainty and confusion arising from the variety of interpretations of state rules, some of which have been incorporated as local court rules in a number of federal district courts.

The rule establishes, prospectively, a general prohibition, subject to limited enumerated exceptions, against contacts with "represented parties" without the consent of counsel. This prohibition derives from the American Bar Association ("ABA") Code of Professional Responsibility and its successor, the ABA Model Rules of Professional Conduct. The rule, on the other hand, generally permits investigative contacts with "represented persons": that is, individuals or organizations that are represented by counsel but that have not yet been named as defendants in a civil or criminal enforcement proceeding or arrested as part of a criminal proceeding. However, the rule does not permit contacts with represented persons without the consent of counsel for the purpose of negotiating plea agreements, settlements, or other similar legal arrangements.

In addition, the Department intends to issue substantial additions to the United States Attorneys' Manual ("Manual") to provide additional direction to Department attorneys when they deal with represented individuals and organizations, in order to accommodate more fully the principles and purposes underlying the state bar rules. Those provisions will further restrict government attorneys when they contact targets of criminal or civil law enforcement investigations who are known to be represented by counsel, and when they communicate with other represented persons.

**EFFECTIVE DATE:** September 6, 1994.

**FOR FURTHER INFORMATION CONTACT:** F. Mark Terison, Senior Attorney, Legal Counsel, Executive Office for United States Attorneys, United States Department of Justice, (202) 514–4024. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:**

### I. Background

This final rule on the subject of communications with represented persons culminates a lengthy rulemaking process in which a proposed rule on the same subject was issued three separate times for comment. *See* 59 FR 10086 (Mar. 3, 1994); 58 FR 39976 (July 26, 1993); and 57 FR 54737 (Nov. 20, 1992). Comments received after the publication in November 1992 and in July 1993 of earlier versions of the rule resulted in major substantive changes being made to the rule. As a result, a new proposal reflecting these changes was published on March 3, 1994. During the most recent comment period, the Department received many thoughtful comments from private attorneys, local bar organizations, state courts, federal prosecutors, and others. The Department closely scrutinized all of these comments. After considering those comments, the Department made several relatively minor amendments to the proposed rule. Therefore, the final rule remains in substantially the same form as the proposed rule issued in March 1994.

The final rule reflects the Department's commitment to fostering ethical behavior consistent with the principles informing DR 7–104(A)(1) of the ABA Code of Professional Responsibility and Rule 4.2 of the Model Rules of Professional Conduct, while setting forth clear and uniform national guidelines upon which government attorneys can rely in carrying out their responsibilities to enforce federal laws. (The term "attorney for the government" is defined in paragraph 77.2(a), and where this phrase, or a variant of it, such as "government attorney," is used elsewhere in this commentary, it has the meaning set forth in paragraph 77.2(a), unless the context clearly indicates otherwise, and it is typically used interchangeably with "Department attorney."). In essence, this regulation permits federal prosecutors and agents to continue to conduct legitimate criminal and civil investigations against all individuals, whether or not those persons are represented by counsel. It allows government attorneys to continue to make or direct undercover or overt contacts with individuals and organizations represented by counsel for the purpose of developing factual information up until the point at which they are arrested or charged with a crime or named as defendants in a civil law enforcement action. However, the regulation generally does not permit federal prosecutors to attempt to negotiate plea agreements, settlements, or similar arrangements with individuals represented by counsel without the consent of their attorneys. This regulation also precludes, with certain narrow exceptions, any contacts with represented parties after an arrest, indictment, or the filing of a complaint on the subject matter of the representation.

Additionally, the Department plans to add provisions to the United States Attorneys' Manual that will set forth further guidance. The Department intends to prohibit overt approaches by federal attorneys to represented targets of criminal or civil enforcement proceedings without the consent of counsel, unless certain enumerated exceptions are met. The planned provisions also will generally require that government attorneys receive approval from their supervisors before communicating with any represented party or represented target.

Since early in this century, the rules of professional conduct that govern attorneys have required that lawyers for one party in a dispute communicate only through an adverse party's lawyer, rather than directly. DR 7–104(A)(1) of the ABA Model Code of Professional Responsibility provides:

A. During the course of his representation of a client a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Rule 4.2 of the ABA Model Rules states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Disciplinary authorities in all 50 states and in the District of Columbia have adopted one of these rules, or a similar prohibition. Underlying these rules is the recognition that when two parties in a legal proceeding are represented, it is generally unfair for an attorney to

**Attachment 7 - page 1 of 22**

circumvent opposing counsel and employ superior skills and legal training to take advantage of the opposing party.

At the same time, the courts have long recognized that government law enforcement agents must be allowed broad powers, within constitutional limits, to investigate crime and civil violations of police and regulatory laws. These powers properly include the authority to conduct undercover operations and to interview witnesses, potential suspects, targets, and even those defendants who waive their right to remain silent. Although the Fifth and Sixth Amendments significantly restrict contacts with defendants after their initial appearance before a judge or after indictment, these constraints generally do not apply before a person has been taken into custody or charged in an adversary proceeding. Sound policies support this substantial power of police to investigate. The general public, victims of crime, and even potential suspects have a strong interest in vigorous inquiry by law enforcement officers before arrest or the filing of charges.

As long as investigations were treated as within the province of the police alone, the traditional rule forbidding counsel from directly contacting represented persons did not come into conflict with legitimate law enforcement activities. In recent years, however, the Department of Justice has encouraged federal prosecutors to play a larger role in preindictment, prearrest investigations. Some of this increased involvement stems from the wider use of law enforcement techniques, such as electronic surveillance, which require the preparation of legal filings. Also, complex white collar and organized crime investigations necessitate more intensive engagement of lawyers, who present such cases to grand juries. Most important, greater participation of lawyers at the preindictment stage of law enforcement has been regarded as helpful in assuring that police investigations comply with legal and ethical standards.

This extension of the traditional prosecutor's responsibility has been a salutary development. One by-product, however, has been uncertainty about whether the traditional professional limitation on attorney contacts with represented parties should be viewed as a restriction upon prosecutors engaged in investigations and, by extension, the agents with whom they work. The overwhelming preponderance of federal appellate courts have held that the restriction on contacts with represented persons does not apply at the preindictment investigation stage. *See,*

*e.g., United States v. Ryans,* 903 F.2d 731, 739 (10th Cir.), *cert. denied,* 498 U.S. 855 (1990); *United States v. Fitterer,* 710 F.2d 1328, 1333 (8th Cir.), *cert. denied,* 464 U.S. 852 (1983); *United States v. Kenny,* 645 F.2d 1323, 1339 (9th Cir.), *cert. denied,* 452 U.S. 920 (1981); *United States v. Weiss,* 599 F.2d 730, 739 (5th Cir. 1979); and *United States v. Lemonakis,* 485 F.2d 941, 955–56 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 989 (1974). Only the Second Circuit has suggested otherwise. *See United States v. Hammad,* 846 F.2d 854, amended, 858 F.2d 834 (2d Cir. 1988), *cert. denied,* 498 U.S. 871 (1990). However, that suggestion was muted significantly in a revised opinion by the Second Circuit that "urge[d] restraint in applying the rule to criminal investigations," 858 F.2d at 838, and ultimately concluded that "a prosecutor is 'authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations * * * " *Id.* at 839. By contrast, state courts and state bar organizations have varied widely in their interpretation of the scope of the prohibition on contacts embodied in DR 7–104, Model Rule 4.2, and their analogs. Some examples of the varying interpretations are detailed below.

Uncertainty about the scope and applicability of DR 7–104, Model Rule 4.2, and their state counterparts has directly affected the investigative activities of agents, including Federal Bureau of Investigation and Drug Enforcement Administration personnel, who work with prosecutors. The expansive application of these rules in some jurisdictions may have the effect of blocking preindictment interviews or undercover operations that most courts have held permissible under federal constitutional and statutory law. Additionally, the heightened threat of disciplinary action that accompanies the expansive application of these rules has created a chilling effect on prosecutors responsible for directing these legitimate investigative activities.

These problems are compounded when federal attorneys assigned to the same case are members of different state bars. Under federal law, a Department attorney must be a member in good standing of a state bar, but he or she need not belong to the bar in each state in which he or she is practicing for the government. Therefore, prosecution teams often comprise attorneys admitted to different bars. The application of different state disciplinary rules to these individuals creates uncertainty, confusion, and the possibility of unfairness. Indeed, one member of a two-member federal prosecution team

could receive a commendation for effective law enforcement while the other member, licensed in a different state, might be subject to state discipline for the same conduct.

In light of these circumstances, the Department has concluded that a compelling need exists that warrants a uniform federal rule to reconcile the traditional rule against contacts with a represented party with the obligation of the Department of Justice to enforce the law vigorously. Indeed, absent a uniform federal rule, prosecutors have been moved on occasion to reduce their participation in the investigative phase of law enforcement so as to leave federal agents unfettered by state disciplinary rules that were never intended to govern police behavior. Such a retreat from the field by prosecutors serves neither efficiency nor the interest in elevating legal compliance and ethical standards in all phases of law enforcement.

Furthermore, the disciplinary rules themselves invite promulgation of a regulation such as this one. Nearly all the states have adopted rules that include an "authorized by law" exception. This final rule, a duly promulgated regulation, is intended to constitute "law" within the meaning of those exceptions.

Finally, the Department has long maintained, and continues to maintain, that it has the authority to exempt its attorneys from the application of DR 7–104 and Model Rule 4.2 and their state counterparts. Furthermore, the Department maintains that whether, and to what extent, such prohibitions should apply to Department attorneys is a policy question. *See Ethical Restraints of the ABA Code of Professional Responsibility on Federal Criminal Investigations,* 4B Op. O.L.C. 576, 577 (1980). In light of the fact that all 50 states and the District of Columbia have adopted some form of a prohibition on contacts with represented parties, and in view of the long history of those rules, the Department believes that its attorneys should adhere to the principles underlying those rules to the maximum extent possible, consistent with the Department's law enforcement responsibilities. Therefore, even though the Department has the authority to exempt its attorneys from the reach of these rules, the Department has decided not to implement a wholesale exemption.

Rather, this regulation attempts to reconcile the purposes underlying DR 7–104 and Model Rule 4.2 with effective law enforcement. Recognizing the importance of the attorney-client relationship and the desirability that an individual who is represented by

**Attachment 7 - page 2 of 22**

counsel be fully advised by counsel before negotiating legal agreements, this regulation provides that federal attorneys may not negotiate plea bargains, settlement agreements, immunity agreements, or similar arrangements without the consent of the individual's attorney. There is a heightened risk in this context of the prosecutor's superior legal training and specialized knowledge being used to the detriment of the untutored layperson. Thus, the regulations comport with the principal purpose of DR 7–104 and Model Rule 4.2 by insisting that the individual's attorney participate in these types of negotiations. Further, even when contacts are allowed, the regulation is designed to minimize any intrusion into the attorney-client relationship. At the same time, this regulation does permit direct contacts at the preindictment, prearrest investigative stage with any individual, whether or not he or she is represented by counsel. The regulation is drafted to conform to the approach of most federal appellate courts that have considered the matter. *See, e.g., United States* v. *Ryans,* 903 F.2d 731 (10th Cir.) (discussing cases), *cert. denied,* 498 U.S. 855 (1990), and other cases cited previously in connection with the discussion of preindictment contacts. The Department believes that public policy and effective law enforcement would not be served if the simple act of retaining an attorney could serve to exempt a person from lawful, court-approved investigative techniques. The Department believes that it is inappropriate to alter investigative techniques based upon an individual's financial ability to retain counsel before the point at which an indigent would be afforded court-appointed counsel.

This regulation and the planned changes to the United States Attorneys' Manual also will give effect to other important aspects of the bar rules against contacts with represented parties. For example, the regulation precludes federal attorneys from disparaging an individual's counsel or from attempting to gain access to attorney-client confidences or lawful defense strategy. The guidelines that the Department intends to add to the Manual also will make clear that once an individual is in a likely adversarial situation with the government and has retained an attorney to represent himself or herself with respect to the particular subject matter under investigation, the government attorney must take greater care before making any *ex parte* contacts. While the regulation authorizes most communications before

arrest, the planned Manual changes provide that, as a matter of internal policy guidance, federal prosecutors generally should not make overt contacts with represented targets of investigations. However, the planned Manual provisions permit overt contacts with a represented target when initiated by the target; when necessary to prevent death or physical injury; when the relevant investigation involves ongoing or additional crimes, or different crimes from that to which the representation relates; or when a United States Attorney or an Assistant Attorney General expressly concludes, under all of the circumstances, that the contact is needed for effective law enforcement.

Finally, the regulation and planned Manual provisions also address when a government attorney may communicate with an employee, officer, or director of a represented corporation or organization without the consent of counsel. The regulation generally prohibits a government attorney from communicating with a current, high-level employee of a represented organization who participates as a "decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter" once the organization has been named as a defendant in a criminal or civil law enforcement proceeding. Further, the contemplated Manual provisions would generally prohibit contacts without the consent of counsel with controlling individuals of organizations that have not yet been named as defendants but are targets of federal criminal or civil law enforcement investigations.

This final rule recognizes that state courts and disciplinary bodies generally play the primary role in regulating the conduct of all attorneys, including those who work for the federal government. The Department also recognizes that with respect to most matters, Department attorneys are subject to the bar rules and disciplinary proceedings of the states in which they are licensed. However, the Department believes it must be the final arbiter of the scope of policing with respect to *ex parte* contacts involving federal prosecutors, subject to the Constitution and the laws of the United States. As noted above, because of the expanded participation of federal prosecutors in preindictment investigations, and the trend of state courts increasingly to apply DR 7–104 and Model Rule 4.2 expansively against federal prosecutors, these rules have affected and circumscribed the power of federal officials to carry out their legally mandated responsibilities. This regulation provides that the Attorney

General shall have exclusive authority to determine these rules. Further, the Department's rules are intended fully to preempt and supersede the application of state and local court rules relating to contacts by Department of Justice attorneys when carrying out their federal law enforcement functions. Only if the Attorney General finds that a Department attorney has willfully violated these new rules would that attorney continue to be subject to the full measure of state disciplinary jurisdiction.

The Department is confident that, taken together, this regulation, the planned Manual amendments, and this supplemental information will promote the public interest in effective law enforcement in a manner that also conforms to the highest standards of legal ethics.

The procedures established by this rule apply to conduct occurring after the rule's publication.

**II. Rulemaking History**

On November 22, 1992, the Department of Justice published in the Federal Register a proposed rule regarding communications with represented persons. 57 FR 54737. By December 21, 1992, the close of the comment period, the Department had received comments from 20 sources.

The Department was concerned that not all interested parties had received sufficient opportunity to respond during the initial comment period. Noting "the complex and important nature of the rule to the criminal and civil justice systems and the licenses and livelihoods of its attorneys," on July 26, 1993, the Department reissued the proposed rule for an additional 30-day comment period. 58 FR 39976. The Department received 219 comments following this second publication of the proposed rule.

On March 3, 1994, the Department issued a new proposed rule governing the same subject matter for an additional 30-day comment period. 59 FR 10086. In response to concerns raised by bar organizations, bar counsel, state and federal judges, and others, that proposal reflected substantial changes from the earlier proposals. This publication of the proposed rule was accompanied by the issuance of companion provisions that the Department intends to include in the United States Attorneys' Manual, which set forth certain more restrictive policies with regard to overt investigatory communications. The discussion that follows summarizes the issues that were raised in response to the Department's latest publication of the proposed rule.

**Attachment 7 - page 3 of 22**

## III. Summary of Comments Received

During the most recent comment period, which closed on April 4, 1994, timely comments were received from 31 sources, including nine individuals, nine organizations, four state court judges, one federal court judge, five U.S. Attorney's Offices, two Department of Justice components, and one other federal agency. Of the 31 comments received, nine comments supported promulgation of the proposed rule, 20 comments opposed the rule, and two other comments failed to take any definitive position on the proposed rule as a whole. As with previous versions of this rule, many writing in opposition to the Department's proposal argued that it unfairly permits the Department to hold its attorneys to ethical rules different from those that apply to all other attorneys. Other opponents of the proposed rule—most notably the ABA and a special committee of the Conference of State Supreme Court Chief Justices—challenged the proposed rule on constitutional and statutory grounds, arguing that the Department lacks authority to preempt state ethics rules or to supersede local federal district court rules. Those writing in support of the proposal generally praised it for bringing certainty and clear guidance to an area that previously has been unclear and disruptive of law enforcement functions.

The Department has considered carefully each comment and appreciates the thoughtfulness reflected in them. The Department's responses to those comments are discussed below, either in the "General Comments" section or in the context of the particular section or paragraph to which they pertain as part of the "Section-by-Section" analysis. All revisions adopted in the final rule are indicated.

## IV. General Comments

Comments were received on the following three general issues: (1) the need for the rule; (2) the constitutional and statutory authority for the rule; and (3) the sufficiency of the rule's internal enforcement mechanisms. These general comments essentially repeated comments received in response to previous versions of the proposed rule. After careful reconsideration of these recurring issues, the Department's position on many of these subjects—in particular, the constitutional and statutory basis for this rule and the need for and advisability of such a rule—remains the same. Therefore, the Department's response in this section builds upon responses published in previous commentaries.

A. *The Need for the Rule.* One state court judge, one federal judge, five individuals, and six organizations criticized the proposed rule as holding government attorneys to lower ethical standards than those that apply to all other attorneys. This comment was formulated in a variety of ways, with the following as illustrative examples: "[t]he rules apply to everyone, and it should especially apply to attorneys in Government service;" "I do not know why it is that the department somehow thinks [it] can exempt [its] attorneys from the rules of conduct that all of the lawyers must abide by;" "[Department] lawyers should be treated as subject to the same rule of law that applies to the conduct of all other lawyers;" and "[f]airness simply will not tolerate exalting the role of one adversary's advocate above the other."

In response to these comments, the Department finds it important, first, to make clear that this rule is not designed to diminish the ethical responsibilities of government attorneys; it is intended to clarify those responsibilities. The current situation, in which state contact rules purport to govern the substantive conduct of federal law enforcement attorneys, has proven unsatisfactory because the standards of ethical conduct are uncertain and subject to unpredictable and varying interpretations. This uncertainty as to what constitutes appropriate conduct by Department attorneys has interfered with the responsible exercise of the law enforcement duties of Department attorneys. The basic purpose of this regulation is to provide a uniform rule of ethics regarding contacts with represented persons that can be consistently and predictably applied. By doing so, the regulation will allow all Department attorneys involved in a federal law enforcement proceeding to understand and abide by applicable standards. There is simply no basis for believing that there will be a reduction in compliance with ethical standards by federal prosecutors.

Many commenters opposing the proposed rule dismissed as unnecessary the creation of a uniform set of rules for Department attorneys. Some commented that the *ex parte* contact rules currently in place do not vary significantly, given that virtually every jurisdiction has adopted some version of the ABA's anti-contact rule. Other commenters argued that, in any event, state and local ethics rules do not interfere substantially with federal law enforcement activities because only in rare instances have federal prosecutors actually been investigated by a state disciplinary authority.

Although an anti-contact rule is in effect in nearly all jurisdictions, it is not interpreted uniformly. Among other things, jurisdictions differ as to whether the anti-contact rule applies in the investigatory stage, *compare United States* v. *Ryans,* 903 F.2d 731, 739 (10th Cir.), *cert. denied,* 498 U.S. 855 (1990) *with United States* v. *Hammad,* 858 F.2d 834, 839 (2d Cir. 1988), *cert. denied,* 498 U.S. 871 (1990); whether the rule applies to prosecutors, *compare Matter of Doe,* 801 F. Supp. 478 (D.N.M. 1992) *with* District of Columbia Rules of Professional Conduct Rule 4.2 cmt. ¶ 8; whether the rule applies to former employees of a represented corporate party, *compare Public Serv. Elec. & Gas* v. *Associated Elec. & Gas,* 745 F. Supp. 1037, 1042 (D.N.J. 1990) *with Polycast Technology Corp.* v. *Uniroyal, Inc.,* 129 F.R.D. 621, 628 (S.D.N.Y. 1990); and whether the rule applies to all corporate employees who could make admissions on behalf of the corporation or only to employees who belong to a so-called "control group." *Compare* Model Rules of Professional Conduct Rule 4.2 cmt. (1983) *with Wright by. Wright* v. *Group Health Hosp.,* 691 P.2d 564 (Wash. 1984). The lack of uniformity in interpreting existing anti-contact rules has created concern among government attorneys of inadvertently running afoul of state court or federal district court rules. The threat of disciplinary proceedings (and the possible resulting loss of license and livelihood) against a government attorney engaged in legitimate law enforcement activities has had a chilling effect on the responsible exercise of law enforcement duties. Many federal prosecutors who submitted comments in connection with the earlier versions of this rule stated that they feel compelled to refrain from authorizing or participating in legitimate and ethical law enforcement activities because of the current uncertainty as to the acceptability of various *ex parte* contacts.

To add to the confusion inherent in the current situation, the Department's attorney staff consists of members of many different state bars who commonly appear in multiple jurisdictions. Under the Model Rule's approach, an attorney practicing in a jurisdiction in which he or she is not a member of the bar remains subject to the jurisdiction of the bar of which he or she is a member, but if the rules in the two places differ, principles of conflict of laws may apply. Model Rules of Professional Conduct Rule 8.5 and cmt. (1983). As a result, when state anti-contact rules purport to govern the conduct of federal attorneys, the

**Attachment 7 - page 4 of 22**

**39914    Federal Register** / Vol. 59, No. 149 / Thursday, August 4, 1994 / Rules and Regulations

question of which rule governs the conduct of Department lawyers may often be complicated. Indeed, as was noted in the "Background" section of this commentary, government attorneys may be subject to substantially different rules when they are working alongside one another on the same case. One commenter proposed that instead of issuing a uniform contacts rule for Department attorneys, the Department should encourage its attorneys to practice only in a given jurisdiction and to obtain bar membership in that jurisdiction. However, Congress has made clear that Department attorneys should be able to practice in different jurisdictions so long as they are a member of some state bar, and there is a significant federal interest in preserving the Department's ability to assign its attorneys wherever there are law enforcement needs to be met. This uniform rule regarding contacts with represented persons achieves consistency and high ethical standards without hampering federal law enforcement activity.

In formulating this uniform rule, the Department has not disregarded existing state ethics rules, as a number of comments imply. As set forth in section 77.12, this regulation is specifically intended to fit within the structure of DR 7–104 and Model Rule 4.2, as well as analogous state and local district court disciplinary rules. Both DR 7–104 and Model Rule 4.2 provide that communications that are "authorized by law" are exempted from the general prohibition of the rule and, according to the Reporter for the commission that developed the Model Rules, Yale Law School ethics professor Geoffrey Hazard, this exception was drafted with the "government lawyer" problem in mind. *See* Letter of January 19, 1994 from Professor Geoffrey C. Hazard, Jr. to Chief Justice E. Norman Veasey, at 2 ("I can state from first-hand knowledge that this [authorized by law] qualification was drafted mindful of the government lawyer problem, among others. In my opinion it is within the authority of the federal government, particularly the Justice Department, to promulgate such regulations.") (This letter and all comments are on file with the Office of the Associate Attorney General, United States Department of Justice.) As explained later in this commentary, the Department's position is that communications with represented persons undertaken pursuant to this duly promulgated regulation clearly constitute communications "authorized by law." Therefore, in nearly all jurisdictions, communications approved

under the Department's rules will be appropriate under existing ethical rules as well.

Furthermore, the content of this rule derives largely from DR 7–104 and Model Rule 4.2 and is wholly consistent with the principles underlying these rules. This regulation grants greater latitude for lawyer communications with a represented "person" during the investigative phase of law enforcement than with a represented "party" after adversarial proceedings have commenced. This distinction appears in the texts of DR 7–104 and Model Rule 4.2, which prohibit only communications with "a party" the lawyer knows to be represented by another lawyer in the matter. This distinction also accords with the great weight of federal court interpretations of the state ethics rules. *See Ryans*, 903 F.2d at 739 ("We are not convinced that the language of [the anti-contact rule] calls for its application to the investigative phase of law enforcement" because "the rule appears to contemplate an adversarial relationship between litigants, whether in a criminal or a civil setting"); *United States v. Sutton*, 801 F.2d 1346, 1365–66 (D.C. Cir. 1986) (anti-contact rule "was never meant to apply to [pre-indictment, non-custodial] situations such as these"); *United States v. Dobbs*, 711 F.2d 84, 86 (8th Cir. 1983) (agent's "noncustodial interview of [suspect] prior to the initiation of judicial proceedings against the appellant did not constitute an ethical breach"); *United States v. Fitterer*, 710 F.2d 1328, 1333 (8th Cir.) (anti-contact rule does not prohibit prosecutors from using undercover informants to communicate with represented persons prior to indictment), *cert. denied*, 464 U.S. 852 (1983); *United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) (prosecutor's use of undercover informant in pre-indictment, non-custodial setting to communicate with represented person does not violate DR 7–104); *United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir. 1982) (anti-contact rule was not intended to prohibit use of undercover informants prior to indictment); *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.) ("the government's use of such investigative techniques at this stage of a criminal matter does not implicate the sorts of ethical problems addressed by the Code"), *cert. denied*, 452 U.S. 920 (1981); *United States v. Weiss*, 599 F.2d 730, 739–40 (5th Cir. 1979) (prosecutor's investigatory communications upheld against challenge under anti-contact rule); *United States v. Lemonakis*, 485 F.2d 941, 953–56 (D.C. Cir. 1973) (anti-

contact rule does not apply prior to indictment, and use of undercover informant did not violate rule in any event), *cert. denied*, 415 U.S. 989 (1974); *In re U.S. Dept. of Justice Antitrust Investigation*, 1992–2 Trade Cases (CCH) ¶ 69,933, at 68,469 (D. Minn. 1992) (Minnesota's Rule 4.2 held inapplicable because "[t]he word 'parties' in Rule 4.2 indicates the presence of a lawsuit" and "[t]he present controversy relates to an investigation, not a lawsuit"); *United States v. Infelise*, 773 F. Supp. 93, 95 n.3 (N.D. Ill. 1991) (DR 7–104(A)(1) "speaks in terms of communications with a 'party', suggesting that the rule is to be applied only when adversarial proceedings have been initiated"); *United States v. Western Electric Co.*, 1990–2 Trade Cases (CCH) ¶ 69,148, at 64,314 & n.6 (D.D.C. 1990); *United States v. Buda*, 718 F. Supp. 1094, 1096 (W.D.N.Y. 1989); *United States v. Chestman*, 704 F. Supp. 451, 454 (S.D.N.Y. 1989), *rev'd on other grounds*, 903 F.2d 75 (2d Cir. 1990), *aff'd in part*, 947 F.2d 551 (2d Cir. 1991) (en banc); *United States v. Galanis*, 685 F. Supp. 901, 903–04 (S.D.N.Y. 1988); *United States v. Guerrerio*, 675 F. Supp. 1430, 1438 (S.D.N.Y. 1987). *But see United States v. Hammad*, 858 F.2d 834, 839 (2d Cir. 1988) (pre-indictment communications may be improper if accompanied by "misconduct" on the part of the government), *cert. denied*, 498 U.S. 871 (1990); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.), *cert. denied*, 488 U.S. 867 (1988); *United States v. Sam Goody, Inc.*, 518 F. Supp. 1223, 1224–25 n.3 (E.D.N.Y. 1981), *appeal dismissed*, 675 F.2d 17 (2d Cir. 1982); *see also* Comment to ABA Model Rule 4.2 (notwithstanding use of the term "party," the rule does not require that a person be "a party to a formal legal proceeding").

The courts have readily recognized that Department attorneys engaged in criminal and civil law enforcement matters perform distinctly different functions from attorneys engaged in the private practice of law. The courts have further recognized that the rules governing communications with represented persons should take account of these differences. To disregard these differences would therefore impose substantial and deleterious restrictions on the legitimate law enforcement duties of Department attorneys that do not presently exist.

For much the same reasons, the Department believes that there is a basis for distinguishing for purposes of this regulation between Department attorneys engaged in law enforcement activities (who are covered by this regulation) and Department attorneys

**Attachment 7 - page 5 of 22**

engaged in civil suits in which the United States is not acting under its police or regulatory powers (who are not covered). One commenter proposed extending these rules to cover also the latter activities of Department attorneys; however, because government attorneys engaged in other, ordinary civil litigation are not engaged in distinctly different functions from private attorneys involved in civil cases, they are not brought under this regulation.

Two organizations further criticized the Department for holding government attorneys to ethical standards no higher than what the Constitution provides. The Department agrees that the constitutional baseline does not provide the proper measure of government attorneys' ethical obligations. But this regulation does not purport to equate the two standards. On the contrary, the Department's final rule imposes a range of restrictions that go beyond those that are constitutionally compelled. For example, the regulation prohibits government attorneys generally from engaging in negotiations of certain specified legal agreements with any represented individual without the consent of that individual's counsel, even if that individual is not in custody and not formally charged. Such communications are not constitutionally proscribed. *See Brewer* v. *Williams,* 430 U.S. 387, 398 (1979); *Miranda* v. *Arizona,* 384 U.S. 436 (1966). Additionally, the Department plans to issue United States Attorneys' Manual provisions that will place significant limits on the ability of government attorneys to engage in noncustodial communications with a represented "target" of a federal criminal or civil law enforcement investigation, even though narrowing an investigation to focus on a particular suspect does not trigger the suspect's right to counsel. *See Hoffa* v. *United States,* 385 U.S. 293 (1966). Therefore, in constructing these standards to guide the ethical conduct of its attorneys, the Department has imposed ethical restrictions on Department attorneys that extend significantly beyond what the Constitution requires.

B. *The Constitutional and Statutory Authority for the Rule.* 1. *The Department's Authority To Promulgate the Rule.* A number of commenters argued that the Attorney General lacks delegated authority to promulgate this regulation. Comments stressed that "[n]o act of Congress purports to authorize the Department to adopt regulations to override state ethics rules governing lawyers," and that the proposed regulation in fact is "contrary to . . . the explicit mandate of

Congress" that every Department attorney must get a license from a State and maintain that license.

Rules governing the conduct of Department attorneys, or any other officials of the Executive Branch, may be promulgated only pursuant to constitutional or statutory authority. Congress's delegation of authority need not be specific or explicit. *Chrysler Corp.* v. *Brown,* 441 U.S. 281, 307–08 (1979). The Department believes that it possesses appropriate statutory authority to promulgate this regulation pursuant to two distinct sources: 5 U.S.C. 301 ("commonly referred to as the 'housekeeping statute,'" *Chrysler Corp.,* 441 U.S. at 309 (citation omitted)); and title 28 of the United States Code, which in a variety of provisions authorizes the Attorney General and the Department to enforce federal law and to regulate the conduct of Department attorneys.

Section 301 of title 5, United States Code, authorizes the Attorney General to "prescribe regulations for the government of [her] department," "the conduct of its employees," and "the distribution and performance of its business." 5 U.S.C. 301. The Supreme Court has held that this provision authorizes the Attorney General to issue regulations with extra-departmental effect. *See, e.g., Georgia* v. *United States,* 411 U.S. 526, 536 (1973) (holding that section 301 provided the Attorney General with "ample legislative authority" to issue regulations that established procedural and substantive standards binding on state and local governments); *United States ex rel. Touhy* v. *Ragen,* 340 U.S. 462 (1951) (federal government attorney could not be held in contempt for following an Attorney General regulation promulgated pursuant to a predecessor to section 301).

Title 28 of the United States Code grants the Attorney General and the Department a variety of law enforcement powers including the power (through intermediary officials) to conduct grand jury proceedings or any other kind of civil or criminal legal proceeding; to conduct litigation, and to "secur[e] evidence" therefor; to detect and prosecute crimes; and to prosecute "civil actions, suits, and proceedings in which the United States is concerned." 28 U.S.C. 515(a), 516, 533, 547; *see* 28 U.S.C. 509, 510. The Attorney General is also authorized to "supervise all litigation" to which the United States is a party and to direct United States Attorneys and other subordinate attorneys in the "discharge of their respective duties." 28 U.S.C. 519. These provisions grant the Attorney General

extremely broad authority to supervise the enforcement of federal law.

In order for a Department regulation to have the force and effect of law, it must rest on a reasonable construction of the statutes delegating the authority to promulgate it and must not in substance contradict any act of Congress. *See, e.g., NLRB* v. *United Food and Commercial Workers Union, Local 23,* 484 U.S. 112, 123 (1987); *Capital Cities Cable, Inc.* v. *Crisp,* 467 U.S. 691, 699–700 (1989). These rules represent the reasoned judgment of the Attorney General and of the Department about the lawful authority of federal lawyers effectively to investigate and prosecute crimes.

One individual and a number of organizations, including the Conference of Chief Justices, posited that the Department is acting outside the scope of its congressionally delegated authority because this regulation assertedly contravenes the Department of Justice Appropriation Authorization Act of 1979, which requires all Department attorneys to be "duly licensed and authorized to practice as an attorney under the laws of a State, territory, or the District of Columbia." Pub. Law No. 96–132, § 3(a), 93 Stat. 1040, 1044 (Nov. 30, 1979), as carried forward by Pub. Law No. 103–121, 107 Stat. 1153, 1163 (Oct. 27, 1993) (reenacting provisions of Pub. Law No. 96–132). These commenters suggested that when Congress required Department attorneys to be licensed by a state bar, Congress implied that Department attorneys should be subject to all the rules and regulations of state authorities, regardless of their impact on officials carrying out federal law enforcement. Therefore, this regulation, by shielding Department attorneys from state disciplinary proceedings for violations of state rules interfering with effective federal law enforcement, is alleged to violate Congress's clear intent in enacting the Department's appropriation statute.

The Department believes that these comments mistake the purpose and effect of the congressional requirement that federal attorneys have state licenses. That requirement, which is satisfied by admission to the state's bar and maintenance of bar membership, simply serves to ensure that the professional qualifications of all Department lawyers have in fact been examined. No comment received by the Department demonstrates that Congress intended the requirement to have the further effect of interfering with the Attorney General's ability to ensure effective federal law enforcement or of compelling federal attorneys to comply

**Attachment 7 - page 6 of 22**

with state bar ethical standards that contradict federal rules.

2. *The Department's Power to Preempt State Ethics Rules.* One individual, one state court judge, and five organizations, including the Special Committee of the Conference of Chief Justices, commented that the Department does not have the constitutional power to preempt state regulation of its attorneys.

It should first be noted that in most instances the force and effect of these rules should not depend on whether they preempt state ethics rules under the Supremacy Clause. As already noted, communications within the scope of the regulation are intended to constitute communications that are "authorized by law" within the meaning of DR 7–104, Model Rule 4.2, and analogous disciplinary rules. Therefore, if the relevant state rule contains an authorized-by-law exception, this regulation should be seen as constituting such authorization, thereby bringing any attorney communication permissible under these rules in conformity with that state law and eliminating the Supremacy Clause issue.

The Committee of Chief Justices commented that it is the exclusive province of the state supreme courts to construe state disciplinary rules and to determine whether this regulation falls within the "authorized by law" exception to these rules. The Department has simply expressed its *intention* to fit communications made pursuant to these rules within the "authorized by law" exception to state and local federal court rules, and its *belief* that this regulation indeed constitutes legal authorization for such communications. The Department notes that it would seem to require a very strained reading to conclude that a regulation duly promulgated after notice and comment and within the scope of its delegated authority does not also constitute "law." *Cf. Chrysler Corp.,* 441 U.S. at 295–96 (1979) ("It has been established in a variety of contexts that properly promulgated substantive agency regulations have the 'force and effect of law.'. . . It would therefore take a clear showing of contrary legislative intent before the phrase 'authorized by law' in [18 U.S.C.] § 1905 could be held to have a narrower ambit than the traditional understanding." (citation omitted)).

However, the Department recognizes that situations may arise in which the power of this regulation to displace state rules will depend on its preemptive force under the Supremacy Clause. Such situations may arise in several forms: where the applicable ethics rule has no

"authorized by law" exception; where this regulation is deemed not to constitute "law" for purposes of such exception; or where a communication is held to violate the applicable ethics rule and not be "authorized" by this regulation. Therefore, an important feature of this regulation is its express intention to preempt and supersede the operation of state and local federal court rules as they relate to contacts by Department attorneys, regardless of whether such rules are inconsistent or consistent with this regulation, absent a finding of a willful violation of these rules by the Attorney General.

The preemption of state regulation of contacts with represented persons, except when the Attorney General has found a willful violation of the federal regulation, was an integral feature of this rule as proposed earlier. The proposed rule reflected the Department's belief that preemption of state and local rules, which have been unevenly applied, is necessary to ensure that government attorneys' conduct respecting *ex parte* contacts is subject to uniform and predictable standards. The Department has made minor revisions to section 77.12 to clarify that the Department's intent is to displace even purportedly consistent state regulation in this area (or, as it is commonly phrased, to "occupy the field" of reviewing *ex parte* contacts by Department attorneys). The rules and this commentary now state in more express terms the Department's intention to preclude any state regulation of government attorneys respecting the subject matter of these rules, unless the Attorney General first finds a willful violation of these rules.

Several comments suggested that the Attorney General lacks the authority to preempt state disciplinary rules, absent an explicit Congressional authorization to do so. These comments misconceive the power of a federal agency or department to preempt state regulation. Congress may, of course, expressly preempt all state regulation in a particular field, *see Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 247, 255 (1947); *accord Jones v. Rath Packing Co.,* 430 U.S. 519, 536–37 (1977), and, in proper circumstances, a federal agency similarly "may determine that its authority is exclusive and preempts any state efforts to regulate in the forbidden area." *City of New York v. FCC,* 486 U.S. 57, 64 (1988). *See generally Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153–54 (1982) ("[f]ederal regulations have no less pre-emptive effect than federal statutes" under the Supremacy Clause); *Hillsborough County, Fla. v.*

*Automated Med. Labs,* 471 U.S. 707, 713 (1985) ("We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes."). A federal agency may preempt state regulation whenever the agency, in doing so, is acting within the proper scope of its congressionally delegated authority. *Louisiana Public Serv. Comm'n v. FCC,* 476 U.S. 355, 368–69 (1986). *Accord City of New York,* 486 U.S. at 64 ("if the agency's choice to pre-empt 'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned' " (citation omitted)). Thus, contrary to the commenters' suggestion, "[a] preemptive regulation's force does not depend on express congressional authorization to displace state law . . . ." *Fidelity Federal Sav. & Loan Ass'n,* 458 U.S. at 154.

In promulgating this regulation, the Department is acting within the scope of its discretionary authority. The ample consideration given to this regulation and its earlier versions reflects the Department's effort reasonably to accommodate the relevant policies concerning law enforcement and professional conduct, and, as discussed in the previous section, there is no basis for concluding that the Department has exceeded its statutory authority. Moreover, the purpose of these rules, as defined in section 77.1, is to "ensure the Department's ability to enforce federal law effectively and ethically" and so fulfill the Department's statutory responsibilities. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 700 (1984) (authority to regulate extends to all regulatory actions necessary to ensure the achievement of statutory responsibilities).

The "presumption against finding preemption of state law in areas traditionally regulated by the States," *California v. ARC America Corp.,* 490 U.S. 93, 101 (1989), and the traditional state regulation of legal practice and lawyers' ethics, *Leis v. Flynt,* 439 U.S. 438, 442 (1979), does not foreclose the Attorney General from concluding that it is appropriate here to displace those state rules that regulate the conduct of federal officials in the performance of their law enforcement duties. Here, the presumption against preemption is overcome by this regulation's express preemption provision, which is fully effective even in matters traditionally occupied by the states.

**Attachment 7 - page 7 of 22**

Furthermore, under the intergovernmental immunity doctrine, states may not directly regulate or punish federal officials for acts undertaken in their official capacities, or otherwise substantially interfere with the lawful functions of federal officials. *See, e.g., Hancock* v. *Train,* 426 U.S. 167, 178–79 (1976); *M'Culloch* v. *Maryland,* 17 U.S. (4 Wheat) 316, 437 (1819); Ethical Restraints of the ABA Code of Professional Responsibility on Federal Criminal Investigations, 4B Op. O.L.C. 576, 601–02 (1980). "An officer of the United States cannot, in the discharge of his duty, be governed and controlled by state laws, any further than such laws have been adopted and sanctioned by the legislative authority of the United States." *Bank of the United States* v. *Halstead,* 23 U.S. (10 Wheat.) 51, 63 (1825). Contacts covered by this regulation fall within the scope of federal attorneys' duties to carry out the law enforcement activities of the United States. The application to those attorneys of state ethics laws prohibiting such conduct therefore would constitute interference with the activities of the federal government forbidden by the intergovernmental immunity doctrine.

For the foregoing and other reasons, the Department believes that this regulation effectively preempts state ethical rules regarding contacts with represented persons.

3. *The Department's Authority to Supersede Federal District Court Rules.* Most federal district courts have adopted as local federal district court rules one of the two sets of ABA rules or a similar anti-contact rule of the state in which the district court sits. *See Rand* v. *Monsanto Co.,* 926 F.2d 596, 601–603 (7th Cir. 1991). Such adoption gives the state rules the force of federal law. *See United States* v. *Hvass,* 355 U.S. 570, 575 (1958). One individual and two organizations commented that this regulation, if promulgated, would abrogate the primary authority of federal courts to regulate the conduct of attorneys arising out of federal law enforcement proceedings.

The Department views this concern as significant but essentially theoretical, because the regulation has been crafted so that it will not operate in a way that puts it into conflict with local district court rules. However, in response to these comments, it should be noted that through this regulation the Department does intend not only to preempt the application by state courts of state rules relating to contacts by attorneys for the government, but also to supersede the application by federal courts of the local federal district court rules relating to contacts by government attorneys in

civil and criminal law enforcement investigations and proceedings. *See* § 77.12 and accompanying commentary.

There are two reasons why the promulgation and operation of this regulation is unlikely to present the issue of abrogation of federal court authority identified by these commenters. The first is that the regulation adopts the line of analysis adopted by the great weight of authority interpreting local district court rules governing contacts with represented persons. *See United States* v. *Ryans,* 903 F.2d 731, 739 (10th Cir.) (discussing cases), *cert. denied,* 498 U.S. 855 (1990). The Department has not sought in this regulation to validate conduct that would otherwise be invalid under most local district court rules.

In addition, nearly all district courts that have adopted local rules governing contacts with represented persons have incorporated the "authorized by law" exception in the Model Rules or in the corresponding state rule. *See generally Rand,* 926 F.2d at 601–603. As explained above, this regulation constitutes "law" within the meaning of any such exception. Thus, the conduct this regulation authorizes is for that reason equally authorized by these local district court rules.

Thus, this regulation in practice should not present any tension between the federal executive and judicial powers. In response to the commenters' suggestion that any tension would have to be resolved in favor of the judicial power, however, the Department disagrees. Were the issue to arise, it would be properly considered, as an initial matter, as a question of the proper exercise of delegated legislative authority. Congress, not the courts, has the primary power to prescribe rules for the federal courts. *See Palermo* v. *United States,* 360 U.S. 343, 353 n. 11 (1959); *Sibbach* v. *Wilson & Co.,* 312 U.S. 1, 9–10 (1941). *See generally Hanna* v. *Plumer,* 380 U.S. 460, 472–73 (1965). In the case of this regulation, Congress has delegated that authority by statute to the Attorney General. This regulation therefore has no less legal force than, for example, the Federal Rules, which derive their ultimate authority from legislation. *See* 28 U.S.C. §§ 2071 *et seq.* Local district court rules, even those dealing with attorney discipline, may not displace legislatively-authorized national rules of procedure. *Rand,* 926 F.2d at 600 (Rules of Civil Procedure). *Accord, Baylson* v. *Disciplinary Bd. of Supreme Court of Pa.,* 975 F.2d 102, 107 (3d Cir. 1992) (Rules of Criminal Procedure). A local rule inconsistent with a regulation lawfully issued under statutory

authority is, as a matter of law, inconsistent with the underlying statute, and must yield to Congress's paramount authority as delegated to the department or agency issuing the regulation. Thus, the conclusion that the Attorney General has the statutory authority to promulgate the proposed regulation entails the further conclusion that the regulation displaces inconsistent local federal court rules.

Furthermore, the regulation has been carefully drawn in such a way so that once a person has been brought before a court, in general no substantive communication can occur without the consent of counsel unless: the court finds a knowing, intelligent, and voluntary waiver; the communication is made pursuant to court-approved discovery procedures; or the communication concerns a criminal or civil offense different from the offense before the court. The regulation thus accords substantial and appropriate deference to the court's supervisory authority over the parties and proceedings before it. Moreover, this regulation does not purport to disturb the authority of federal courts to fashion appropriate remedies when an *ex parte* contact violates the Constitution. *See* § 77.11(b) and accompanying commentary. Therefore, federal courts will retain significant powers under the Constitution to respond to or sanction improper *ex parte* contacts by government attorneys with represented parties.

The balance of the regulation regulates contacts with persons who are not before the court, and as to whom the supervisory authority of a federal court is, at best, attenuated. *See, e.g., United States* v. *Payner,* 447 U.S. 727, 735 n. 7 (1980) ("The supervisory power merely permits federal courts to supervise the administration of criminal justice among the parties before the bar."); *United States* v. *Williams,* 112 S. Ct. 1735, 1742 (1992) (federal court has no "supervisory" judicial authority to prescribe standards of prosecutorial conduct before the grand jury in the first instance). It would raise significant separation of powers concerns for a district court to assert supervisory authority to regulate and sanction the conduct of executive branch attorneys when the Attorney General has adjudged such conduct legitimate and necessary for law enforcement purposes, when that judgment has been embodied in a duly promulgated regulation, and when the conduct concerns persons who have not yet come before the court.

C. *Sufficiency of Internal Enforcement Mechanisms.* Four organizations and two individuals commented that these

rules, as proposed, lacked enforcement mechanisms sufficient to deter prohibited communications. These comments took two forms: (1) a general suggestion that the Department could not be trusted to police itself (or as, one commenter put it, it would be a case of "the fox maintain[ing] . . . guard over the hen-house"); and (2) a specific concern that the restrictions to be placed in the United States Attorneys' Manual would not in 'ac. .e enforced against Department attorneys who violated them.

The Attorney General has exclusive authority over any violations of these rules. As a general matter, violations of these rules will be addressed as matters of attorney discipline by the Department, rather than by any external disciplinary authority. Only if the Attorney General finds a willful violation of these rules may sanctions for the violations be imposed by a state disciplinary authority. This disciplinary structure reflects the Department's belief that allowing sanctions to be issued independent of the Department's internal review process would frustrate the Department's efforts to eliminate the current uncertainty arising from the differing interpretations of the various anti-contact rules by federal courts, state courts, and state disciplinary authorities. The Department intends fully to enforce these rules and to issue appropriate and strong sanctions for any violation of these rules.

The Department also disagrees with those comments that suggest that the provisions the Department currently intends to add to the United States Attorneys' Manual will not be enforced. The Manual contains a great number of significant Department of Justice policies, many of which impose substantial restrictions on Department attorneys. There is no evidence that such policies are routinely overlooked by Department attorneys or that violations of policies set forth in the Manual are not regarded by the Department as serious breaches of professional duties. On the contrary, the failure to follow such policies is taken very seriously. The Department expects its attorneys involved in criminal or civil law enforcement to follow all provisions in the Manual amendments that it intends to issue regarding *ex parte* contacts. Failure to follow such rules will result in appropriate discipline by the Department.

## V. Section-by-Section Analysis

### Section 77.1: Purpose and Authority

Comments relating to this section are addressed in the "General Comments"

section above. No changes have been made to this section.

### Section 77.2: Definitions

The following terms are defined in section 77.2 of this part. In the final rule, unlike in the proposed rule, these terms are arranged alphabetically for the reader's ease.

a. *"Attorney for the government."* The term "attorney for the government" includes virtually all Department of Justice attorneys with investigative, litigative, or management responsibilities, regardless of title. It does not, however, include law enforcement agents employed by the Department of Justice who are also members of state bars, if they are employed as, and are performing the function of, agents rather than attorneys. The Federal Bureau of Investigation, Drug Enforcement Agency and other investigative agencies have long recruited individuals with advanced degrees—including, for example, engineering, business, and law degrees—to serve as agents. The Department strongly encourages the recruitment of educated and specially-trained individuals for positions as agents. An agent's bar membership should not adversely affect his or her ability to conduct comprehensive investigations and otherwise to fulfill his or her law enforcement functions. Therefore, the rule specifically exempts attorney-agents from its scope if they are employed by the government as investigative agents and not as attorneys.

The term also does not include attorneys for departments or agencies outside the Department of Justice, regardless of their litigative authority, except to the extent such persons have been specially appointed pursuant to 28 U.S.C. 515 or 543.

Two Department of Justice components commented that the definition of "attorney for the government," which explicitly covers attorneys employed in the six main divisions of the Department, should be amended to cover all attorneys working in the legal offices of the various Department agencies, such as the Drug Enforcement Administration and the Federal Bureau of Investigation. The Department agrees that the definition of "attorney for the government" should not distinguish between attorneys employed in the Department's divisions and attorneys employed in the Department's agencies, given that both sets of attorneys exercise similar functions and responsibilities with respect to criminal investigations and prosecutions. Accordingly, the

definition of "attorney for the government" has been modified to include explicitly "the Chief Counsel of the DEA and any attorney employed in that office, the General Counsel of the FBI and any attorney employed in that office or in the Legal Counsel Division of the FBI, and, in addition, any attorney employed in, or head of, any other legal office in a Department of Justice agency."

b. *"Civil Law Enforcement Investigation."* This term includes any investigation of potential civil violations of, or claims under, federal law that may form the basis of a civil law enforcement proceeding, as defined in paragraph 77.2(c).

c. *"Civil Law Enforcement Proceeding."* The term "civil law enforcement proceeding" encompasses a variety of activities beyond the particular areas identified in the definition, which are intended only to be illustrative.

The exclusion of proceedings related to the enforcement of an administrative subpoena or summons or a civil investigative demand (CID) is intended to ensure that the filing of such a proceeding does not trigger the limitations of section 77.5, which generally prohibits *ex parte* communications once adversary proceedings have commenced against a represented "party." Thus, the filing by the United States of a proceeding to enforce a subpoena, summons, or CID will not prohibit further investigatory communications regarding the underlying substantive violations.

The final sentence of paragraph 77.2(c)(2) ensures that the United States need not be the plaintiff in order for a civil action to be "brought by the United States," but may be a counterclaimant or cross-claimant if the counterclaim or cross-claim otherwise fits within the description of civil law enforcement.

d. *"Cooperating witness or individual."* A "cooperating witness or individual" is defined to include informants, witnesses, and other persons who are not law enforcement agents, but only to the extent that such a person is acting "to assist the government in an undercover or confidential capacity."

e. *"Employee."* The term "employee" is not limited to its literal meaning, but also includes officers, directors, partners, members, and trustees. *See* § 77.10 (communications involving organizations). An independent contractor would not be considered an "employee" for purposes of these rules.

f. *"Organization."* The term "organization" includes any corporation, partnership, association,

**Attachment 7 - page 9 of 22**

joint-stock company, union, trust, pension fund, unincorporated organization, state or local government or political subdivision thereof, or non-profit organization. It does not, of course, include groups of individuals "associated in fact" within the meaning of the racketeering statutes. *See* 18 U.S.C. 1961(4).

Communications with organizations and their employees are governed generally by section 77.10.

g. *"Person."* The term "person" includes individuals and organizations as defined in paragraph 77.2(f).

h. *"Undercover Investigation."* Under this definition, the hallmark of an "undercover operation" is an investigation in which an individual "whose identity as an official of the government or a person acting at the behest thereof is concealed or is intended to be concealed." This definition is intended to be read broadly to include every type of law enforcement investigation in which the identity of a government employee, or the fact that an individual is cooperating with the government, is concealed.

### Section 77.3: Represented Party; Represented Person

This section differentiates between a represented "party" and a represented "person." This distinction is fully consistent with the language of and principles underlying DR 7–104(a)(1) and Model Rule 4.2, which establish general prohibitions against *ex parte* contacts with a represented "party." Section 77.5 of this part generally prohibits government attorneys from initiating *ex parte* contacts with represented parties, but does not prohibit *ex parte* contacts with represented persons. (However, sections 77.8 and 77.9 also prohibit certain contacts with represented persons).

An individual is considered to be a "represented party" under paragraph 77.3(a) if: (1) the person is represented by counsel; (2) the representation is current *and* concerns the subject matter in question; *and* (3) the person has either been arrested or charged in a federal criminal case or is a defendant in a civil law enforcement proceeding concerning the subject matter of the representation. If the person is currently represented in fact regarding the subject matter in question, but has not been charged or arrested, that person is considered a "represented person." Thus, witnesses, suspects, and targets of investigations who have not been indicted or arrested, but are represented regarding the subject matter in question, are considered represented persons under this rule.

Several commenters argued that this section's basic distinction between represented "persons" and represented "parties" runs counter to the policy considerations underlying DR 7–104(A)(1) and Model Rule 4.2. However, as discussed in the "General Comments" section, this distinction is consistent with the vast majority of federal court opinions interpreting DR 7–104(A)(1) and Model Rule 4.2., as well as the text of those rules. Furthermore, this distinction is grounded in logic and common sense, given the legitimate necessity for attorneys for the government to be able to direct agents and cooperating witnesses to contact represented persons during undercover investigations.

One organization commented that prosecutors will hold back on filing formal charges in order to maximize their ability to communicate with represented "persons." The Department does not agree that prosecutors are likely to engage in this kind of systematic manipulation. The capacity to do so exists under the Sixth Amendment (given that the Sixth Amendment right to counsel attaches only once formal charges are filed, *see Brewer* v. *Williams*, 430 U.S. 387, 398 (1979)), but there is no evidence of systematic prosecutorial abuse of the charging process under the Sixth Amendment. Furthermore, the Department intends to add a new provision to the United States Attorneys' Manual that will prohibit a Department attorney from communicating overtly with a "target" of an investigation before he or she is formally charged or named as a civil defendant, except in specifically enumerated circumstances.

### Section 77.4: Constitutional and Other Limitations.

This section makes clear that this regulation does not purport to authorize any communication prohibited by the Constitution or any federal statute or Federal Rule of Criminal or Civil Procedure. Although these rules do not supersede the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, this limitation does not extend to other rules regarding procedure in federal courts. Thus, rules of procedure adopted by individual courts as local rules, many of which incorporate state bar rules, are not included in this limitation; and, in fact, this regulation is explicitly intended to supersede local federal court rules regarding *ex parte* contacts by attorneys for the government. *See* § 77.12 and accompanying commentary.

No specific comments were received regarding this section, and it has not been changed.

### Section 77.5: General Rule for Civil and Criminal Enforcement; Represented Parties

This section closely tracks the language of DR 7–104(A)(1) and Model Rule 4.2 and applies similar prohibitions to attorneys for the government. The section prohibits an attorney for the government from communicating with a represented party, as defined in section 77.3, about the subject matter of the representation without the consent of that individual's attorney. As with DR 7–104(A)(1) and Model Rule 4.2, the prohibition applies only if the attorney for the government knows that the represented party is, in fact, represented by counsel. Therefore, communications by an attorney for the government with a represented party will not violate this rule if the attorney for the government is unaware of the fact of representation.

This section also prohibits an attorney for the government from causing another individual to communicate with a represented party. Accordingly, this rule proscribes an attorney from directing a government investigator to do what the attorney himself or herself is prohibited from doing. Conversely, a government attorney will not be personally responsible for the actions of agents in communicating with represented persons unless, in doing so, the agents were acting as the attorney's "alter ego." *See United States* v. *Heinz,* 983 F.2d 609, 612–14 (5th Cir. 1993).

It also should be noted that this provision is violated (and thus, a basis for departmental discipline exists) when an inappropriate communication takes place, regardless of whether or not the communication results in eliciting an inculpatory statement or is otherwise prejudicial to the represented party.

No specific comments were received regarding this section, and it has not been changed.

### Section 77.6: Exceptions; Represented Parties

This section describes the circumstances under which Department attorneys may communicate, or cause others to communicate, with a represented party whom the Department attorney knows is represented concerning the subject matter of the representation, without first obtaining the consent of the represented party's counsel.

*Paragraph (a): Determination if representation exists.*

**Attachment 7 - page 10 of 22**

This exception recognizes the fact that there is no reason to prohibit a limited inquiry about whether an individual is, in fact, represented by counsel regarding the relevant subject matter. Such an inquiry does not involve the kind of communication about which courts have expressed concern and has little potential for undermining the attorney-client relationship. It is also consistent with DR 7–104(A)(1) and Model Rule 4.2.

There may be uncertainty about the existence of representation with respect to whether it has been established, whether it may have been terminated, and whether a particular subject falls within the scope of the representation. The first issue typically arises before a judicial or other appearance, when the government attorney has some information suggesting that the person may be represented. It also may arise when an attorney purports to represent a group of persons, such as all the employees of a corporation. Uncertainty about the termination of the representation may arise when substantial time has passed since it was made known that the person was represented by counsel or when the attorney for the government has reason to believe that the representation has ceased. It is unlikely, however, that such uncertainty will arise when there are pending judicial proceedings, because in such circumstances the court in most jurisdictions must approve termination of representation.

In response to one comment, it is worth clarifying that that representation is presumed to cease to be current for purposes of these rules when the matter in question has reached a final judgment (i.e., once the direct appeals process, including any petition for certiorari, has run its full course), unless there is reason to believe that representation is continuing.

When inquiring about the status of representation, government attorneys and agents generally must refrain from stating whether it is necessary or desirable to be represented by counsel. After the right to counsel has attached, a statement or implication suggesting that counsel is not providing proper or effective representation could violate the Sixth Amendment right to effective assistance of counsel. *See United States* v. *Morrison*, 449 U.S. 361, 364 (1981).

One organization commented that the right to inquire whether a party is represented by counsel is an invitation to a more substantive conversation with a represented party with respect to the matter underlying the representation, which would violate these rules. The Department does not agree that this

paragraph creates a significant potential for abuse. This exception, which is clear in its terms, allows Department attorneys to do no more than determine whether a person is in fact represented by counsel. The Department expects that all Department attorneys will understand the limited parameters and purpose of this exception, and any attempt to use this paragraph to gather additional information about the subject matter of the representation would be a clear violation of these rules and would constitute sanctionable conduct.

*Paragraph (b): Discovery or judicial or administrative process.*

Any communication that is authorized by discovery procedures, such as a deposition of a party-opponent, or by judicial or administrative process, such as a grand jury, deposition, or trial subpoena or an administrative summons, obviously should not be prohibited by any rule. *See United States* v. *Schwimmer*, 882 F.2d 22, 28 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990) (prosecutor's questioning of represented person before the grand jury outside the presence of counsel is "authorized by law" under DR 7–104). Among other reasons for this exception, a person who is served with process has an opportunity to consult with counsel prior to his or her appearance at the proceeding, and may have counsel present if desired during the proceeding (except, of course, while testifying before a grand jury). More generally, communications authorized by discovery procedures already have in place appropriate mechanisms for protection of the attorney-client relationship. This provision ensures that this regulation does not prevent such communications from continuing to be allowed.

This exception does not purport to authorize any communications not otherwise available pursuant to approved discovery procedures or legal process. However, one individual commented that the text of paragraph (b), as proposed in March 1994, might be construed to authorize certain discovery procedures—such as the taking of a party's deposition testimony in the absence of the party's attorney and without the attorney's prior agreement—even where such practice was not in accordance with the rules of the applicable tribunal. To clarify that this paragraph's intent is to authorize only approved discovery procedures or legal process, this paragraph has been amended in the final rule to exempt only those communications made pursuant to discovery procedures or legal process "in accordance with the

orders or rules of the court or other tribunal where the matter is pending."

*Paragraph (c): Initiation of communication by represented party.*

This paragraph sets out the circumstances under which it is proper for a government attorney to communicate with a represented party who has initiated contact, without the consent of that party's counsel.

A defendant may wish to communicate with the government outside the presence of counsel for many valid reasons. For instance, a defendant may wish to cooperate with the government but not want his or her attorney to know for fear that the attorney will disclose the defendant's intentions to others. This situation may arise, for example, when the defendant's attorney is being paid by another individual involved in a criminal enterprise, and the defendant questions whether he or she has the attorney's undivided loyalty. The same problem may arise when a single attorney represents multiple parties who are part of the same criminal enterprise.

When the desire of a defendant or arrestee to speak with the attorney for the government outside the presence of his or her counsel is "voluntary, knowing, and informed," there is no valid reason to prohibit the government from engaging in such communications. In fact, the Department believes that it would be a dereliction of its obligation vigorously to enforce federal law if it promulgated a rule that would prohibit such communications.

It is well established that an individual who is entitled to counsel under the Fifth Amendment or the Sixth Amendment may waive that right and choose to communicate with the government outside the presence of his or her attorney, "provided the waiver is made voluntarily, knowingly and intelligently." *Moran* v. *Burbine*, 475 U.S. 412, 421 (1986) (internal quotations omitted); *Patterson* v. *Illinois*, 487 U.S. 285, 292 (1988); *Brewer* v. *Williams*, 430 U.S. 387, 404–06 (1977). In such a situation, the defendant should not be prohibited from engaging in communications that are allowed by the Constitution by a disciplinary rule that was intended to protect that individual in the first place. Neither common sense nor the principles underlying DR 7–104 and Rule 4.2 requires such a result.

This paragraph includes procedural protections designed to ensure that such waivers are in fact voluntary, knowing, and informed. After a represented individual has been arrested or charged in a criminal proceeding or is named as a defendant in a civil law enforcement proceeding, this paragraph requires that

several steps be taken before a government attorney may engage in a substantive discussion with the represented party. First, the government attorney must inform the individual of his or her right to speak through his or her attorney and to have that attorney present for any communications with the government attorney. Second, the represented party must manifest his or her desire to waive the right to counsel in a voluntary, knowing, and informed way. If at all possible, the attorney for the government should obtain a signed written waiver. Third, the attorney for the government must bring the matter before the appropriate district court judge, magistrate judge, or other tribunal of competent jurisdiction. Then, it is up to the court to determine that the waiver satisfies the provisions of this rule or that substitute counsel is in place (including counsel appointed at that time by the court) who has consented to the communication.

This paragraph does not require, however, that the waiver must always take place before the judge or magistrate judge. In exceptional circumstances, it may be impractical or unsafe to bring the defendant before a judge or magistrate judge to secure the waiver. In such circumstances, the government attorney may secure a waiver from the defendant outside the court, and, before any substantive discussion between the defendant and the government takes place, bring evidence of the waiver to the court so that the court can determine whether the waiver was made knowingly, intelligently, and voluntarily.

One United States Attorney's Office commented that paragraph (c), as proposed, appeared to require an attorney first to obtain an informed waiver and only after receiving such a waiver to bring the matter before the appropriate tribunal. The Department does not intend to require (and does not understand the text of paragraph (c) to require) an attorney for the government, when contacted by a represented party, necessarily to attempt to secure a waiver himself or herself before bringing the matter to the attention of the court. A government attorney who is contacted by a represented party may, consistent with this paragraph, choose to bring the matter directly to the attention of the court, assuming the represented party has manifested his or her desire to waive the right to counsel. The court then would determine whether the party wishes to waive the presence of counsel for the communication. In general, however, the usual practice is for the government attorney to obtain from the

represented party a waiver before bringing the matter before the court.

As noted above, the initiation of *ex parte* contacts by represented parties frequently occurs in the context of the "fearful defendant" whose attorney has been chosen by a third party, often an individual above the defendant in the criminal hierarchy. Such a defendant may wish to cooperate with the government but may fear that his life or safety will be endangered if his attorney learns of the cooperation. Although the need for a mechanism by which a represented party can initiate contacts with the government is particularly acute in this context, paragraph (c) is not limited to this setting. Rather, the proper inquiry is whether the represented party's waiver of the right to counsel is voluntary, knowing, and informed, not whether the represented party has established some overriding justification for his or her decision.

One organization objected to the extension of this exception to anyone other than a "fearful defendant," suggesting that any other client will have no better reason to initiate communication than "a misguided belief that he can help himself by talking to the prosecutor." The Department believes that it would be overly paternalistic to refuse to permit any but fearful represented parties to initiate direct contact with the government. Given that a criminal defendant has a constitutional right to decline legal representation entirely, *see Faretta* v. *California,* 422 U.S. 806 (1975), government attorneys should not be ethically bound to refuse to listen to a criminal defendant who chooses to decline the presence of counsel for purposes of a particular communication with appropriate court approval.

Additionally, it would be neither workable nor proper to require a Department attorney or judicial officer to probe the client about his or her relationship with counsel in order to ascertain whether the client is genuinely fearful, or fearful enough, of his or her attorney's involvement to justify a conversation outside the presence of counsel. Such an inquiry would tend to enhance, not minimize, intrusion into the attorney-client relationship. A more reliable protection of the client's interest and of the attorney-client relationship is this paragraph's careful process of testing the client's desire (as opposed to the client's reasons) for waiving the presence of counsel. This is the same analysis the courts undertake in assessing waivers of the constitutional rights to counsel or against self-incrimination. The proper issue in such

a setting, as here, is whether the waiver is knowing, intelligent, and voluntary.

Another commenter opined that paragraph (c), by allowing represented parties to waive the presence of counsel and speak directly to a government attorney, would authorize a violation of the represented party's constitutional rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and its progeny. Cases following *Miranda* provide that custodial interrogation must cease whenever the person in custody invokes his or her right to have counsel present. *See, e.g., Edwards* v. *Arizona,* 451 U.S. 477 (1981). However, the prohibition against further interrogation does not apply when the accused himself or herself initiates further communication, *see id.* at 484–86, which would need to be the case for this paragraph to apply.

*Paragraph (d): Waivers at the time of arrest.*

The previous paragraph (paragraph (c)) provides the general guidelines regarding how a represented party may waive protections otherwise provided under this regulation. This paragraph provides for a different rule dealing specifically with a waiver at the time of arrest.

This paragraph provides that a government attorney may communicate directly with a represented party "at the time of arrest of the represented party" without the consent of that party's counsel, provided that the represented party has been fully informed of his or her constitutional rights at that time and has waived them. The government attorney need not comply with any of the additional requirements of paragraph (c) in such a situation.

A substantial body of law has developed regarding waiver of constitutional rights in the immediate post-arrest setting. The Department believes that the constitutional protections established in that decisional law adequately protect represented individuals following arrest. Furthermore, the effectiveness of post-arrest interviews would be significantly curtailed if the procedural requirements of paragraph (c) applied. Accordingly, this paragraph is intended to preserve this investigative tool without adding any additional procedural requirements.

The Department received two comments regarding this paragraph: one relating to the timing of the waiver, and the other relating to the terms of the waiver.

A Department component commented that it would clarify the meaning of a communication "at the time of the arrest of the represented person" to add to the text that such communication must be

made "at the time of the arrest of the represented party before he or she is presented to a judicial officer with respect to that arrest . . . ." The Department has decided against adopting the proposed additional language, because it would unadvisedly extend this exception beyond its proper and intended narrow limits. This exception to the general rule against post-arrest communications is designed to preserve the ability of government attorneys to interview individuals immediately (i.e., within hours) following arrest as an effective and important law enforcement tool. *See, e.g.,* 18 U.S.C. 3501(c). It is not intended to allow government attorneys to attempt to initiate communications with an arrested person any time before the person is presented to a judicial officer, which can extend days beyond the "time of arrest." The Department believes that such an extension of this limited exception could put excessive pressure on clients and unduly intrude upon the attorney-client relationship.

A United States Attorney's Office commented that proposed paragraph (d), under which the represented party must be advised of and waive "his or her constitutional rights," could be construed to require the represented party to be explicitly told that he or she has a right to *his* or *her* attorney, and not just that he or she has a right to *an* attorney (as required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966)). This paragraph is intended to apply whenever an arrested person is read his or her *Miranda* rights and waives those rights; it is not intended to require the represented party to be apprised of his right to counsel in any different or more specific terms than *Miranda* and its progeny require. To make clear that the usual *Miranda* warnings and waiver suffice for purposes of this section, paragraph 77.6(d) has been amended in the final rule to read as follows: "The communication is made at the time of the arrest of the represented party and he or she is advised of his or her rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and voluntarily and knowingly waives them."

*Paragraph (e): Investigation of additional, different, or ongoing crimes or civil violations.*

The Sixth Amendment right to counsel is "offense-specific." *McNeil* v. *Wisconsin,* 111 S. Ct. 2204, 2207 (1991). Thus, a defendant whose Sixth Amendment rights have attached as to one offense remains subject to questioning, whether direct or covert, regarding uncharged crimes. *Id.; Maine* v. *Moulton,* 474 U.S. 159, 180 n.16 (1985); *United States* v. *Mitcheltree,* 940

F.2d 1329, 1342 (10th Cir. 1991); *United States* v. *Terzado-Madruga,* 897 F.2d 1099, 1111–12 (11th Cir. 1990); *United States* v. *Chu,* 779 F.2d 356, 368 (7th Cir. 1985); *United States* v. *Grego,* 724 F.2d 701, 703 (8th Cir. 1984). The proposed rule employs an analogous approach, permitting *ex parte* contacts with a represented party if the contacts involve the investigation of offenses as to which the represented party has been neither arrested nor charged in a criminal or civil law enforcement proceeding. The Department believes this approach is wholly consistent with DR 7–104 and Model Rule 4.2 and the cases interpreting those rules.

Accordingly, this section provides that communications may be made in the course of investigations of additional, different, or ongoing criminal or unlawful activity, even though the individual is represented by counsel with respect to conduct for which he or she has already been arrested or charged. Such additional criminal or unlawful conduct is typically one of three varieties: (1) conduct that is separate from the original wrongful conduct; (2) crimes or unlawful conduct that are intended to impede the administration of justice or the trial of the charged crime, such as subornation of perjury, obstruction of justice, jury tampering, or murder, assault, or intimidation of witnesses; and (3) conduct that is a continuation of the charged crime, such as a conspiracy or a scheme to defraud that continues past the time of indictment. The new or additional criminal or wrongful activity may have occurred in the past or may be ongoing at the time of the investigation.

One organization objected to this section's coverage of criminal or wrongful activity that has already been completed at the time of the communication, as distinct from activity that is ongoing. However, the Department sees no basis in the policies underlying the Sixth Amendment and the Model Rules for basing the propriety of investigation into additional or different uncharged crimes on whether such activity is complete or ongoing.

One individual expressed concern that Department attorneys would exploit this exception by making gratuitous allusions to other offenses in the course of an otherwise illicit contact with a represented party. As noted above, prevailing case law interpreting the Sixth Amendment and the Model Rules permit an attorney to question a defendant as to uncharged offenses, and there is no evidence of systemic prosecutorial abuse of this type of interrogation. Accordingly, there is no

reason to suspect that prosecutorial practice under these rules will be different.

*Paragraph (f): Threat to safety or life.*

The Supreme Court has recognized that, in certain limited situations, the need to guard against threats to public safety can justify noncompliance with otherwise applicable constitutional safeguards. *See Warden* v. *Hayden,* 387 U.S. 294, 298–99 (1967) (warrantless search permissible when delay would endanger lives of officers and citizens); *New York* v. *Quarles,* 467 U.S. 649, 657 (1984) ("the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the [*Miranda*] prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination"). This paragraph recognizes an analogous exception to the general prohibition against communications with represented parties in the absence of their counsel. It is the Department's intention that this exception be invoked only in rare circumstances and only for the purpose of protecting human life or safety.

The exception has three requirements: (1) the attorney for the government must have a good faith belief that the safety or life of any person is threatened; (2) the purpose of the communication must be to obtain information to protect against the risk of injury or death; and (3) the attorney for the government must, in good faith, believe that the communication is reasonably necessary to protect against such risk. These requirements are imposed to ensure that the exception is invoked only to protect human life or safety, and not as a routine matter in violent crime prosecutions. For example, the fact that potentially dangerous firearms have not been recovered would not in and of itself be sufficient under ordinary circumstances to constitute a threat to safety under this exception. Furthermore, the communication must be for the purpose of protecting human life or safety, and may not be designed to elicit testimonial evidence. However, information thus obtained may be used for any purpose consistent with constitutional limitations.

No specific comments were received regarding this paragraph, and it has not been changed.

*Section 77.7: Represented Persons; Investigations*

As noted in the discussion of section 77.3, individuals and organizations who are neither defendants nor arrestees are not "parties" within the meaning of this rule, and the general prohibition on *ex*

*parte* contacts therefore does not apply. This section makes clear that attorneys for the government are authorized to communicate, directly or indirectly, with a represented person unless the contact is prohibited by some other provision of federal law. These communications are subject, however, to the restrictions set forth in sections 77.8 and 77.9 regarding certain categories of negotiations and respect for attorney-client relationships.

Two individuals commented that this section, even as limited by sections 77.8 and 77.9, allows a broader range of contact with persons under investigation than is necessary to meet the Department's legitimate investigative needs. These individuals agreed that the government must be free to conduct undercover operations and investigations, even when field investigators coming into contact with potential criminal or civil respondents are directed by government attorneys. They argued, however, that overt communications with persons during the investigative stage are not similarly justified.

The Department agrees that overt communications between a government attorney and a represented person during the investigative stage raise different considerations from covert communications and should be subject to greater restrictions. For this reason, the Department plans to make revisions to the United States Attorneys' Manual providing that government attorneys should engage in overt communications only after carefully considering whether the communication is more appropriately handled by others, and should generally not communicate overtly, or cause another to communicate overtly, with a target of a federal criminal or civil investigation, who is known by the Department attorney to be represented by counsel, concerning the subject matter of the representation. Nevertheless, the Department believes that overt contacts by federal attorneys and agents with witnesses and subjects of investigations are often necessary for effective law enforcement and hence should be permitted.

*Section 77.8: Represented Persons and Represented Parties; Plea Negotiations and Other Legal Agreements*

This section prohibits government attorneys from initiating or engaging in negotiations of certain specified legal agreements with any individual whom the government attorney knows is represented by counsel, without the counsel's consent. Even when the regulation otherwise permits

substantive discussions with a represented party or represented person, it ordinarily would be improper for a government attorney to initiate or negotiate a plea agreement, settlement, immunity agreement or any other disposition of a claim or charge without the consent of the individual's counsel. The one exception to this prohibition occurs when the communication is initiated by the represented person or represented party and the procedural safeguards provided for in paragraph 77.6(c) are satisfied.

The Department believes that this section is important for the preservation of the attorney-client relationship. One of the primary purposes of DR 7–104 and Model Rule 4.2 is to protect an individual represented by counsel from overreaching by an attorney for an adversary. The Department believes the risk and the consequences of such overreaching are at their greatest during negotiations over plea agreements, settlements, and other key legal agreements. The training, experience, and knowledge of the law possessed by an attorney is particularly valuable in such situations.

The prohibition contained in this section includes all negotiations of the terms of a particular plea agreement, settlement agreement, or other agreement covered by the section. However, this section does not prohibit an attorney for the government from responding to questions regarding the nature of such agreements, potential charges, potential penalties, or other subjects related to such agreements during an otherwise permissible discussion. Nevertheless, an attorney for the government should take care in such situations not to go beyond providing information on these and similar subjects and should generally refer the represented person to his or her counsel for further discussion of these issues. The government attorney should also make it clear that he or she will not negotiate any agreement with respect to the disposition of criminal charges, civil claims or potential charges, or immunity agreements without the consent of counsel.

No specific comments were received regarding this section, and it has not been changed.

*Section 77.9: Represented Persons and Represented Parties; Respect for Attorney-Client Relationships*

When an attorney for the government communicates with a represented party pursuant to one or more of the exceptions listed in section 77.6, or with a represented person pursuant to section

77.7, the communication is nevertheless subject to the restrictions of this section.

*Paragraph (a): Deference to Attorney-Client Relationship*

Federal courts have recognized that it is improper for an attorney for the government to disparage counsel for the represented party or otherwise to seek to disrupt the relationship between that party and his attorney. *See, e.g., United States* v. *Morrison,* 449 U.S. 361, 362, 367 (1981); *United States* v. *Weiss,* 599 F.2d 730, 740 (5th Cir. 1979); *id.* at 740–41 (Godbold, J., specially concurring). This paragraph codifies those basic principles by prohibiting communications that: (1) attempt to elicit information regarding lawful defense strategies; (2) disparage the represented party's counsel; or (3) otherwise improperly seek to disrupt the attorney-client relationship. These prohibitions apply in every phase of criminal and civil enforcement investigations and proceedings.

However, the paragraph also accommodates an important exception to this prohibition. Courts have held that a government attorney may not permit legal proceedings to go forward if he or she is aware of a conflict of interest between a represented party and his or her lawyer. *See United States* v. *Iorizzo,* 786 F.2d 52, 59 (2d Cir. 1986). Under this circumstance, the attorney for the government ordinarily should move to disqualify the lawyer involved, if legal proceedings have already commenced. If it is not feasible to move for disqualification or otherwise challenge the representation, this paragraph allows an attorney for the government to communicate with the represented individual for the limited purpose of apprising the represented individual of the perceived conflict. However, any substantive discussion of the subject matter of the representation is permissible only insofar as it is authorized by some other provision of this rule.

In order to ensure that this provision is used only in rare circumstances, the rule requires prior authorization for such communications from the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General or a United States Attorney. The authorization should be in writing if at all possible. Furthermore, before providing approval, the authorizing officer must find: (1) a substantial likelihood of a conflict; and (2) that it is not feasible to obtain a court order on the matter.

One organization commented that judicial approval, or at least approval by a designated Assistant Attorney General

VerDate 20-JUL-94   19:23 Aug 03, 1994   Jkt 150257   PO 00000   Frm 00015   Fmt 4701   Sfmt 4700   E:\FR\FM\P04AU0.PT4   pfrm06

(rather than by a United States Attorney), should be required before an attorney for the government may apprise a represented party or person of any perceived conflict of interest. Another organization and an individual commented that attorneys for the government should never be allowed to inform a represented individual of a perceived conflict of interest, and, instead, should be required to move to disqualify counsel and leave it to the court to adjudicate any conflicts of interest. The Department believes that there will be circumstances in which it will not be feasible to obtain a judicial order challenging the representation (especially prior to the filing of charges), or when the exigencies of the situation may make it impracticable to obtain prior authorization of a judicial officer or an Assistant Attorney General. In such circumstances, and when a high-level Department official, such as a United States Attorney, determines that there is a significant likelihood of a conflict of interest between a represented individual and his or her attorney, it is better that the represented person or party be apprised of the potential conflict of interest than be left uninformed. Accordingly, the Department has decided to leave this paragraph unchanged in the final rule.

*Paragraph (b): Attorney-Client Meetings*

The attendance of an undercover agent or a cooperating witness at lawful meetings of an individual and his or her attorneys is ordinarily an improper intrusion into the attorney-client relationship. The courts have recognized, however, that such attendance occasionally will be required when the operative is invited to participate and his or her refusal to do so would effectively reveal his or her connection to the government. *See, e.g., Weatherford* v. *Bursey,* 429 U.S. 545, 557 (1977); *United States* v. *Ginsberg,* 758 F.2d 823, 833 (2d Cir. 1985); *United States* v. *Mastroianni,* 749 F.2d 900, 906 (1st Cir. 1984). As the First Circuit has noted, a contrary rule "would provide the defense with a quick and easy alarm system to detect the presence of any informants, simply by inviting all known associates of defendants to a supposed defense strategy meeting." *Mastroianni,* 749 F.2d at 906.

Attendance at such meetings, however, intrudes into the attorney-client relationship and impairs the right of the defendant to a fair trial. Accordingly, this section provides that undercover agents or cooperating witnesses may participate in such meetings, but only when requested to do so by the defense and when reasonably

necessary to protect their safety or life or the confidentiality of an undercover operation. *See Weatherford,* 429 U.S. at 557.

However, even when an undercover operative's attendance at such a lawful meeting is authorized to protect his or her cover and safety, any information acquired regarding lawful defense strategy or trial preparation may not be communicated to government attorneys or otherwise used to the substantial detriment of the represented party. *See Weatherford,* 429 U.S. at 558; *Ginsberg,* 758 F.2d at 833; *Mastroianni,* 749 F.2d at 906. As a safeguard, this rule provides that such information should not be communicated to the attorneys for the government or law enforcement agents who are participating in the trial of the pending criminal charges.

When there is reasonable cause to believe that the purpose of the meeting is not the lawful defense of the underlying charges, but the commission of a new or additional crime (such as bribery of a witness or subordination of perjury), attendance by informants or undercover agents at attorney-client meetings is permissible pursuant to paragraph 77.6(e). The belief, however, must be based on reasonable cause, not mere suspicion or conjecture. *See Mastroianni,* 749 F.2d at 906. Furthermore, the prohibition against communication of lawful defense strategy to the prosecution should be observed if, in fact, such strategy is imparted to the informant or agent.

Government attorneys should give serious consideration to the extreme sensitivity of permitting agent and informant attendance at defense meetings. Agents and informants should be instructed to avoid participating in such meetings, and to minimize their participation when attendance is required, if it is possible to do so without arousing suspicion. Agents or witnesses who attend defense meetings should also be instructed to make every attempt to avoid taking any role in the shaping of defense strategy or trial preparations. Additionally, agents and informants should be instructed to avoid imparting lawful defense strategy or trial preparation information to attorneys for the government or to law enforcement agents who are directly participating in the ongoing investigation or in the prosecution of pending criminal charges.

Finally, this restriction applies only to law enforcement officials and cooperating witnesses who are acting as "agents for the government" at the time of the communication. If one of several co-defendants who attended an attorney-client defense strategy meeting

later testifies for the government at trial, no violation will have occurred as long as the co-defendant was not a government agent at the time of the meeting. *United States* v. *Brugman,* 655 F.2d 540, 545–46 (4th Cir. 1981).

A Department component commented that an undercover agent's attendance at a meeting at which legal strategy is not discussed does not intrude on the attorney-client relationship; therefore, the component proposed limiting this paragraph's prohibition against government agents participating in an attorney-client meeting or communication to situations where there is a "reasonable basis" to believe that the meeting or communication will concern legal advice or strategy. The Department believes that it is unwise and unworkable to encourage government attorneys and undercover agents to guess whether legal issues will come up in an attorney-client meeting or communication. It would also be disruptive of the attorney-client relationship for government attorneys and undercover agents to gather the information that might make such a determination even remotely reliable. Therefore, this paragraph has not been changed.

*Section 77.10: Organizations and Employees*

This section addresses the difficult issue of when a communication with an employee or member of a represented organization should be considered a communication with the organization itself. Important interests depend on this determination. On the one hand, organizations should not be shielded from effective criminal or civil law enforcement prosecution simply by retaining counsel. It is not uncommon for federal prosecutors to encounter attorneys who assert that they represent every individual in a large corporation or organization. If such attorneys were able to prevent government investigators from gaining informal access to any employee of the organization by withholding consent, information relevant to claims against the organization might never come to light because such information is often in the exclusive possession of the organization and its employees. *See, e.g., Suggs* v. *Capital Cities/ABC Inc.,* 54 Empl. Prac. Dec. (CCH) ¶ 40,195 at 63,910 (S.D.N.Y. Apr. 24, 1990). On the other hand, organizations are entitled to the effective assistance of counsel, and the relationship between an organization and its counsel deserves respect.

The Department believes that this section, and particularly the definition of "controlling individual" in paragraph

**Attachment 7 - page 15 of 22**

(a) of this section, strikes an appropriate balance, one that ensures government attorneys the ability to enforce federal law, while preserving the opportunity for corporations and other organizations to secure effective assistance of counsel.

*Paragraph (a): Communications with current employees; organizational representation.*

This paragraph states that a communication with a current employee of an organizational party or person should be treated as a communication with the organization for purposes of this part only if the employee is a "controlling individual." If a communication with a current employee is properly characterized under this regulation as a communication with a represented organization (that is, if the communication is with a controlling individual), then that communication is subject generally to the same limitations that would apply if the communication were with a represented person or represented party.

In accord with the basic structure of this regulation, which distinguishes between represented parties and represented persons, this paragraph effectively provides that when an organization is a represented party, an attorney for the government shall not communicate, or cause another to communicate, with any controlling individual of the organization without the consent of the organization's attorney, subject to the exceptions enumerated in § 77.6. In contrast, when an organization qualifies as a represented person, an attorney for the government may communicate, or cause another to communicate, with any controlling individual, provided the communication does not violate the provisions of §§ 77.8 or 77.9.

The definition of "controlling individual" is intended to encompass those individuals who typically are part of the organization's control group. A controlling individual under this definition must: (1) be a current employee or member of the organization; (2) hold a high-level position with the organization; (3) participate "as a decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter;" and (4) be known by the government to be engaged in such activities. This definition attempts to identify those limited number of individuals affiliated with the organization who actually are involved in determining the organization's position with regard to the legal proceeding or investigation.

One individual and one organization questioned limiting the class of employees who should be considered "controlling individuals" for purposes of this subsection to those who participate in framing the organization's legal position in the matter. They argued that the proposed "controlling individual" test authorizes contacts with employees who, while not directing the organization's counsel, nonetheless have extensive authority to act on behalf of the organization. The underlying concern of these comments appears to be that this paragraph, as proposed, authorizes contacts with many employees who are likely to possess information relevant to claims asserted against the corporation and who have the capacity to make statements that a court will deem admissible at trial as evidentiary admissions against the corporation. This is certainly true. However, the Department believes that its anti-contact rule should not be designed with the goal of protecting corporations from disclosure of prejudicial facts. *See, e.g., Action Air Freight v. Pilot Air Freight,* 769 F. Supp. 899, 903 (E.D. Pa. 1991) (anti-contact rule "should not necessarily chill the flow of harmful information"); *Hanntz v. Shiley, Inc.,* 766 F. Supp. 258, 267 (D.N.J. 1991) ("the policies of Rule 4.2 do not justify a wholesale restriction on discovery of factual information, damaging or not").

Anti-contact rules such as DR 7–104 and Model Rule 4.2 are intended to protect the attorney-client relationship from unnecessary interference and to protect represented parties from overreaching by opposing counsel. Damage to the attorney-client relationship inheres particularly in communications with high-level corporate employees who have contact with the corporation's attorneys in the course of making ultimate decisions regarding choice of counsel, implementing counsel's advice, and determining settlement and other litigation strategies. Therefore, communications with those high-level individuals affiliated with or employed by an organization who are responsible for employing and directing the organization's counsel and for determining legal positions taken by the organization are the type of communications prohibited by DR 7–104.

Accordingly, this paragraph defines "controlling individual" consistently with the principles underlying the disciplinary rules on *ex parte* contacts. The Department also believes that the alternative approaches urged by commenters would impose

unacceptable constraints on federal law enforcement. Therefore, this paragraph has not been changed.

*Paragraph (b): Communications with former employees; organizational representation.*

This paragraph authorizes communications with former employees of represented organizations. Because former employees do not direct the affairs of the organization and therefore cannot be considered members of the "control group" or any other controlling entity of an organization, communications with them are not considered communications with the organization for purposes of the rule. This reasoning is consistent with the conclusion of the majority of federal courts that have held that DR 7–104(A)(1) does not bar communications with former employees of a represented corporate party. *See, e.g., Hanntz v. Shiley, Inc.,* 766 F. Supp. 258, 267 & n.8 (D.N.J. 1991); *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F. Supp. 899, 904 (E.D. Pa. 1991); *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412, 417–18 (D. Utah 1991); *Sherrod v. Furniture Center,* 769 F. Supp. 1021, 1022 (W.D. Tenn. 1991); *Dubois v. Gradco Systems, Inc.,* 136 F.R.D. 341, 345 n.4 (D. Conn. 1991); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 628 (S.D.N.Y. 1990). *See also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991) ("Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer."). *But see PPG Industries, Inc. v. BASF Corp.,* 134 F.R.D. 118, 121 (W.D. Pa. 1990); *Public Serv. Elec. & Gas v. Associated Elec. & Gas,* 745 F. Supp. 1037, 1042 (D.N.J. 1990).

No specific comments were received regarding this paragraph, and it has not been changed.

*Paragraph (c): Communications With Former or Current Employees; Individual Representation*

This paragraph provides that if a former or current employee or a member of an organization retains his or her own counsel, the government shall provide the same protection to him or her that would be provided under this part to any other represented person or represented party. Communications with that individual are subject to the limitations set forth in this part. Although this paragraph provides the

general rule for such communications, paragraph (d) addresses the specific situation in which a controlling individual of a represented organization retains separate counsel.

This paragraph also provides that the government will not accept, for purposes of this rule, blanket claims by counsel that he or she represents all or a large number of employees of the organization. It is important to note that this provision is only relevant when the attorney for the government would be prohibited by some other provision of this regulation from contacting an individual falling under the broad claims of representation under question. For example, an attorney for the government may contact a low-level employee of a corporation, without consent of that employee's counsel or the corporation's counsel, regarding a matter for which the corporation has already been indicted as part of an undercover or overt factual investigation, if that individual has not been arrested or named as a defendant in a related criminal or civil law enforcement proceeding. Therefore, the fact that an attorney has stated that he or she represents that individual will have no bearing on whether the communication is proper.

However, if a particular communication with an individual employee included in such a claim of representation would be improper under these rules if he or she were in fact represented by counsel (for example, communications to negotiate a plea agreement), then this paragraph provides that a government attorney must first inquire whether the employee is in fact represented before undertaking substantive communications with the employee. As part of this inquiry, the government attorney is not required to disclose to the employee the fact that counsel has asserted that he or she represents the employee. If the employee indicates that he or she is not represented by counsel, it is proper for the government attorney to treat the employee as unrepresented. If the employee indicates that he or she is represented by counsel with regard to the relevant subject matter, the attorney for the government shall treat that employee as a represented person or represented ; rty, and any further communications with that individual shall be governed by this regulation.

No specific comments were received regarding this paragraph, and it has not been changed.

*Paragraph (d): Communications with separately represented controlling individuals.*

This paragraph applies only when a controlling individual of a represented organizational party has retained separate counsel. In such circumstances, a government attorney may not communicate with the controlling individual without the consent of that individual's separate counsel unless the communication satisfies one of the exceptions contained in §§ 77.6 or 77.9 of this part. The paragraph also allows such communications if the individual does not qualify as a represented party, initiates the communication, and waives the presence of counsel. Thus, the same rules apply to contacts with controlling individuals of represented organizational parties who retain separate counsel as apply to controlling individuals of represented organizational parties who are not separately represented.

No specific comments were received regarding this paragraph, and it has not been changed.

*Paragraph (e): Initiation of communication by unrepresented controlling individuals.*

This paragraph addresses a relatively narrow circumstance: when a controlling individual who is not individually represented by counsel initiates a communication with the government outside the presence of counsel for the organization. An attorney for the government may participate in such communications if: (1) the controlling individual indicates that he or she is speaking exclusively in his or her personal capacity and not as a representative of the organizational party; and (2) he or she indicates that the waiver of counsel is voluntary, knowing, and informed and, if willing, signs a statement to that effect. The fact that the controlling individual indicates that he or she is speaking in his or her personal capacity does not mean, however, that incriminating testimony received from the controlling individual cannot be used against the represented organization.

If the controlling individual is also a named defendant in a civil enforcement proceeding or has been arrested or charged in a criminal action, the requirements set forth in paragraph 77.6(c) must be satisfied before any substantive communications are made.

No specific comments were received regarding this paragraph, and it has not been changed.

*Paragraph (f): Multiple representation.*

This paragraph makes clear that these rules should not be construed as altering existing legal and ethical rules regarding the propriety of multiple representation.

No specific comments were received regarding this paragraph, and it has not been changed.

*Section 77.11: Enforcement of This Part*

*Paragraph (a): Exclusive enforcement by Attorney General.*

In order to ensure consistency and uniformity in the interpretation of the final rule, this paragraph provides that the Attorney General shall have exclusive authority to enforce these regulations. Thus, state courts, state disciplinary boards, and federal courts may not impose sanctions on or otherwise regulate a Department attorney engaged in federal law enforcement activities for violations of an anti-contact rule or subject a Department attorney to regulation under state or local federal court rules governing communications with represented parties, except as provided in § 77.12. This paragraph further provides the framework for investigating allegations that a Department attorney has violated this regulation. It provides that the Department's Office of Professional Responsibility ("OPR") shall have role original jurisdiction to investigate such allegations and that violations will be treated as matters of attorney discipline. *See* 28 CFR § 0.39 (establishing and defining duties of OPR). It also makes clear that the Attorney General's determination as to whether a violation has occurred shall be final and conclusive except to the extent that the Department attorney enjoys a right of review provided by other laws.

One individual and one organization objected to placing investigative responsibility in OPR, suggesting that OPR had, in the past, been reluctant to share the results of its investigations. The Department recently adopted a policy under which the results of OPR investigations are disclosed to the public if, *inter alia*, there is a finding of intentional and knowing professional misconduct by a Department attorney in the course of an investigation or litigation and the public interest in disclosure outweighs the privacy interest of the attorney and any law enforcement interest. Therefore, there will be meaningful disclosure of findings of violations of these rules.

Moreover, allegations of professional misconduct by Department attorneys concerning violations of these rules may be reported directly to OPR by any person. Complaints filed by members of the public will be fully and thoroughly reviewed by OPR.

Therefore, this paragraph has not been changed.

*Paragraph (b): No private remedies.*

This paragraph provides that the rule is not intended to and does not create any substantive rights for any person other than an attorney for the government. In particular, a violation of the regulation will not provide a basis for the dismissal of civil or criminal charges or for the suppression of evidence that is otherwise admissible. This provision accords with existing law. Traditionally, matters relating to communications with represented persons have been treated as matters of attorney discipline without granting substantive rights to defendants or any other persons. *See, e.g.,* ABA Code of Professional Responsibility, Preliminary Statement; ABA Model Rules of Professional Conduct, Scope. Of course, when the communication with a represented person or represented party violates the Constitution, the federal courts retain the power to fashion appropriate remedies.

No specific comments were received regarding this paragraph, and it has not been changed.

*Section 77.12: Relationship to State and Local Regulation*

Both DR 7–104 and Model Rule 4.2 provide that communications that are "authorized by law" are not prohibited by the rule. Virtually all the states have adopted some version of DR 7–104 or Model Rule 4.2 that includes an "authorized by law" exception. As discussed in the "General Comments" section, these rules, as substantive regulations duly promulgated by the Attorney General pursuant to statutory authority, have the force and effect of law. Accordingly, communications with represented persons that are undertaken pursuant to these rules should be considered "authorized by law" within the meaning of rules adopted by the various states. Such communications should therefore be consistent with state rules wherever state bar authorities have adopted a rule containing the "authorized by law" exception. Thus, no conflict will arise between state and federal law in those jurisdictions with regard to communications with represented persons. Similarly, no conflict should arise between this regulation and the federal district court rules that have adopted an anti-contact rule containing the "authorized by law" exception. This regulation therefore need not give rise to any tension with any provision of state or federal law.

The Department nonetheless recognizes the likelihood that government attorneys' conduct with respect to contact with represented persons may continue to be viewed by some as inconsistent with state or local

district court rules. To effectuate fully the provisions of this regulation, it therefore is important that the regulation include a plain statement by the Department of its intention to preempt and supersede regulation by state courts, state disciplinary authorities, or federal district courts of *ex parte* communications by government attorneys in civil or criminal law enforcement investigations or proceedings. *See Hillsborough County, Fla.* v. *Automated Med. Labs,* 471 U.S. 707, 718 (1985) ("because agencies normally express problems in a detailed manner and can speak through a variety of means, including regulations, preambles, interpretative statements and responses to comments, we can expect that they will make their intention clear if they intend for their regulations to be exclusive").

There is no indication from any of the comments received of any confusion regarding the breadth of the Department's intention to displace state and federal law; on the contrary, the comments in this area generally both fully grasped and took issue with the Department's stated intention to occupy the field. Given the integral importance of the exclusive enforcement authority to the overall regulatory scheme, however, some revisions have been made to this section to leave no doubt that it is the express intention of these rules to completely preempt and supersede the operation of state and local laws or rules as they relate to contacts by government attorneys in civil or criminal law enforcement investigations or proceedings. Such occupation of the field is necessary to ensure that government attorneys' conduct respecting contacts with represented persons be subject to uniform regulation and predictable standards, as against potential variations in individual state and local rules and in interpretations of those rules.

Accordingly, this regulation completely preempts state or federal court regulation of *ex parte* contacts in law enforcement matters by government attorneys and those acting at their direction, with one important exception. If the Attorney General finds that a Department attorney has committed a "willful violation" of any of these rules, preemption will not apply, and that attorney will be subject to disciplinary proceedings both by the Department and by the appropriate state disciplinary authorities.

Several commenters argued that it is inappropriate to preclude an otherwise appropriate state or federal court disciplinary proceeding when the Department's own rules have been

violated. The Department respectfully disagrees. A primary purpose for this regulation is to remove the substantial burden on federal law enforcement caused by uncertainty as to what constitutes appropriate conduct by Department attorneys. This uncertainty would not be removed were it left to the various state and federal district courts to interpret these rules and determine on their own whether they had been violated in any particular case. For this reason, the Department believes that it is necessary that it retain exclusive authority to determine whether one of its lawyers has breached these rules, with the important proviso that, when there is a finding of a willful violation, a state disciplinary authority may also impose sanctions.

One United States Attorney's Office commented that the meaning of a "willful violation" had not been clearly explained in the previous commentary. In response to this comment, the Department here clarifies that a "willful violation" means an intentional and deliberate violation of these rules, as determined by the Attorney General.

*United States Attorneys' Manual*

In addition to the promulgation of the rules discussed above, the Department intends to add several new provisions to the United States Attorneys' Manual to provide additional guidance to Department attorneys when they deal with represented individuals during criminal or civil law enforcement investigations and proceedings.

The Department has deliberately chosen to include certain baseline restrictions in the regulation and impose broader restrictions through provisions in the Manual. In the process of determining what the appropriate Departmental policy should be, it became clear that any regulation would have to apply to a variety of circumstances, including: white collar and organized crime investigations, complex conspiracy investigations, individuals whose counsel are paid by a third party, and individuals fearful of their counsel for various reasons. Accordingly, the Department determined that the regulation should be broad in scope and should provide unambiguous guidance that would not adversely affect federal law enforcement efforts. Thus, part 77 distinguishes between the investigative period (before indictment, arrest, or the filing of a complaint) and the prosecutive period (after arrest or the commencement of formal proceedings). It also distinguishes between communications that are part of a factual investigation and communications that occur during

negotiations of plea agreements, settlements, and similar legal arrangements.

The planned Manual provisions will require that government attorneys consider the principles underlying the basic prohibitions in a much wider variety of circumstances. The Department expects all Department attorneys involved in criminal or civil law enforcement proceedings to adhere to all applicable provisions in the Manual. Failure to do so will result in appropriate departmental action.

The planned changes to the Manual were included in the earlier publications simply for reference and were not subject to the requirements of notice and comment that applied to the provisions in the proposed regulation itself. The Department nonetheless received several comments regarding the draft Manual provisions. The Department has carefully considered those comments and has decided that it is appropriate (though not required) to respond to them briefly in this commentary. However, none of the comments received has prompted the Department to conclude that it should alter the planned Manual provisions. The Department anticipates that the Manual provisions will be substantially similar to the draft published in March 1994. The Department envisions publishing the Manual provisions soon and integrating them in the Manual with the final rules adopted here.

Comments were directed mainly to a draft Manual provision that would prohibit a government attorney from communicating overtly about the subject matter of a representation with a person who the government attorney knows is a "target" of a federal criminal or civil enforcement investigation and who the government attorney knows is represented by counsel, without the consent of the target's attorney. (The provisions, as published in March 1994, would also provide several exceptions to this general prohibition against overt contacts with targets, including the following: when the communication is initiated by the target; when the communication occurs at the time of arrest and the represented person has waived his or her *Miranda* rights; when the government attorney believes the contact is necessary to protect against a risk to human life or safety; or when a senior Department official determines that exigent circumstances exist, making the communication necessary for effective law enforcement).

Two United States Attorney's Offices urged reconsideration of the guideline generally prohibiting Department attorneys from directly communicating

with known "targets." These commenters expressed a number of concerns about the "target" provision—most significantly, that the determination of "target" status would be subjective and variable and that the proposed limitation on overt contacts with represented targets would interfere with the investigative process.

The Department does not agree that the term "target" would make application of this planned restriction particularly troublesome. While determinations of "target" status surely are not scientifically precise, neither are a range of other similar determinations (e.g., "probable cause" determinations) that prosecutors are expected routinely to make. In its enforcement of the planned provision, the Department intends to give substantial deference to a federal attorney's good faith judgment regarding the likelihood that a particular person will ultimately become a defendant. Even if the attorney for the government believes that an individual probably will be named as a defendant, that individual would not be considered a target until the government has actually obtained substantial evidence linking that individual to the commission of a crime or to unlawful conduct. The government attorney's uncorroborated belief that an individual will ultimately be named as a defendant would not be enough. Thus, an individual will not be considered a target under the Manual guidelines until both the attorney for the government believes that he or she will probably be named as a defendant *and* substantial evidence has been obtained.

The Department also does not believe that the contemplated restriction on overt communications with represented targets would significantly impede legitimate law enforcement activities. It is true that in certain types of cases and under certain exceptional circumstances, target interviews may be necessary for effective investigation; for that reason, the planned Manual provisions would allow that in such situations target interviews may be approved by a high-ranking Department official. However, as a general matter and in more routine circumstances, overt communications with targets have a more limited value to the investigative process, which is outweighed by the risk that they will interfere with the attorney-client relationship and place undue pressure on the target. Because an individual who is a target of a federal investigation is typically in a clearly adversarial relationship with the federal government, the Department believes that the principles underlying DR 7–104 and Rule 4.2 are implicated and that the

planned restrictions on overt communications with represented targets are appropriate.

### Certifications

In accordance with 5 U.S.C. 605(b), the Attorney General certifies that this rule will not have a significant economic impact on a substantial number of small entities. This rule was not reviewed by the Office of Management and Budget pursuant to Executive Order No. 12866.

### List of Subjects in 28 CFR Part 77

Government employees, Investigations, Law enforcement, Lawyers.

Accordingly, chapter I of title 28 of the Code of Federal Regulations is amended by adding a new part 77 to read as follows:

### PART 77—COMMUNICATIONS WITH REPRESENTED PERSONS

Sec.
77.1    Purpose and authority.
77.2    Definitions.
77.3    Represented party; represented person.
77.4    Constitutional and other limitations.
77.5    General rule for civil and criminal enforcement; represented parties.
77.6    Exceptions; represented parties.
77.7    Represented persons; investigations.
77.8    Represented persons and represented parties; plea negotiations and other specified legal agreements.
77.9    Represented persons and represented parties; respect for attorney-client relationships.
77.10    Organizations and employees.
77.11    Enforcement of this part.
77.12    Relationship to state and local regulation.

Authority: 5 U.S.C. 301; 28 U.S.C. 509, 510, 515(a), 516, 519, 533, 547.

### §77.1    Purpose and authority.

(a) The Department of Justice is committed to ensuring that its attorneys perform their duties in accordance with the highest ethical standards. The purpose of this part is to provide a comprehensive, clear, and uniform set of rules governing the circumstances under which Department of Justice attorneys may communicate or cause others to communicate with persons known to be represented by counsel in the course of law enforcement investigations and proceedings. This part ensures the Department's ability to enforce federal law effectively and ethically, consistent with the principles underlying Rule 4.2 of the American Bar Association Model Rules of Professional Conduct, while eliminating the uncertainty and confusion arising from the variety of interpretations given to that rule and analogous rules by state

**Attachment 7 - page 19 of 22**

and federal courts and by bar association organizations and committees. (Copies of the Bar rules are on file in most law libraries, and through on-line legal research services).

(b) This part is issued under the authority of the Attorney General to prescribe regulations for the government of the Department of Justice, the conduct of its employees, and the performance of its business, pursuant to 5 U.S.C. 301; to direct officers of the Department of Justice to secure evidence and conduct litigation, pursuant to 28 U.S.C. 516; to direct officers of the Department to conduct grand jury proceedings and other civil and criminal legal proceedings, pursuant to 28 U.S.C. 515(a); to supervise litigation and to direct Department officers in the discharge of their duties, pursuant to 28 U.S.C. 519; and otherwise to direct Department officers to detect and prosecute crimes, to prosecute offenses against the United States, to prosecute civil actions, suits, and proceedings in which the United States is concerned, and to perform such other functions in an appropriate and ethical manner as may be provided by law, pursuant to 28 U.S.C. 509, 510, 533, and 547.

**§ 77.2  Definitions.**

As used in this part, the following terms shall have the following meanings, unless the context indicates otherwise:

(a) *Attorney for the government* means the Attorney General; the Deputy Attorney General; the Associate Attorney General; the Solicitor General; the Assistant Attorneys General for, and any attorney employed in, the Antitrust Division, Civil Division, Civil Rights Division, Criminal Division, Environment and Natural Resources Division, or Tax Division; the Chief Counsel of the DEA and any attorney employed in that office, the General Counsel of the FBI and any attorney employed in that office or in the Legal Counsel Division of the FBI, and, in addition, any attorney employed in, or head of, any other legal office in a Department of Justice agency; any United States Attorney; any Assistant United States Attorney; any Special Assistant to the Attorney General or Special Attorney duly appointed pursuant to 28 U.S.C. 515; any Special Assistant United States Attorney duly appointed pursuant to 28 U.S.C. 543 who is authorized to conduct criminal or civil law enforcement investigations or proceedings on behalf of the United States; or any other attorney employed by the Department of Justice who is authorized to conduct criminal or civil law enforcement proceedings on behalf

of the United States. The term *attorney for the government* does not include any attorney employed by the Department of Justice as an investigator or other law enforcement agent who is not authorized to represent the United States in criminal or civil law enforcement litigation or to supervise such proceedings.

(b) *Civil law enforcement investigation* means an investigation of possible civil violations of, or claims under, federal law that may form the basis for a civil law enforcement proceeding.

(c) (1) *Civil law enforcement proceeding* means a civil action or proceeding before any court or other tribunal brought by the Department of Justice under the police or regulatory powers of the United States to enforce federal laws, including, but not limited to, civil actions or proceedings brought to enforce the laws relating to:

(i) Antitrust;

(ii) Banking and financial institution regulation;

(iii) Bribery, kickbacks, and corruption;

(iv) Civil rights;

(v) Consumer protection;

(vi) Environment and natural resource protection;

(vii) False claims against the United States;

(viii) Food, drugs, and cosmetics regulation;

(ix) Forfeiture of property;

(x) Fraud;

(xi) Internal revenue;

(xii) Occupational safety and health;

(xiii) Racketeering; or

(xiv) Money-laundering.

(2) The term *civil law enforcement proceeding* shall not include proceedings related to the enforcement of an administrative subpoena or summons or a civil investigative demand. An action or proceeding shall be considered "brought by the United States" only if it involves a claim asserted by the Department of Justice on behalf of the United States, whether the claim is asserted by complaint, counterclaim, cross-claim, or otherwise.

(d) *Cooperating witness or individual* means any person, other than a law enforcement agent, who is acting to assist the government in an undercover or confidential capacity.

(e) *Employee* means any employee, officer, director, partner, member, or trustee.

(f) *Organization* means any corporation, partnership, association, joint-stock company, union, trust, pension fund, unincorporated association, state or local government or political subdivision thereof, or non-profit organization.

(g) *Person* means any individual or organization.

(h) *Undercover investigation* means any investigation undertaken in good faith to fulfill law enforcement objectives, in which a person communicates with a federal, state or local law enforcement agent or a cooperating witness or individual whose identity as an official of the government or a person acting at the behest thereof is concealed or is intended to be concealed.

**§ 77.3  Represented party; represented person.**

(a) A person shall be considered a "represented party" within the meaning of this part only if all three of the following circumstances exist:

(1) The person has retained counsel or accepted counsel by appointment or otherwise;

(2) The representation is ongoing and concerns the subject matter in question;

(3) The person has been arrested or charged in a federal criminal case or is a defendant in a civil law enforcement proceeding concerning the subject matter of the representation.

(b) A person shall be considered a "represented person" within the meaning of this part if circumstances set forth in paragraphs (a) (1) and (2) of this section exist, but the circumstance set forth in paragraph (a)(3) does not exist.

**§ 77.4  Constitutional and other limitations.**

Notwithstanding any other provision of this part, any communication that is prohibited by the Sixth Amendment right to counsel, by any other provision of the United States Constitution, by any federal statute, by the Federal Rules of Criminal Procedure (18 U.S.C. App.) or by the Federal Rules of Civil Procedure (28 U.S.C. App.) shall be likewise prohibited under this part.

**§ 77.5  General rule for civil and criminal enforcement; represented parties.**

Except as provided in this part or as otherwise authorized by law, an attorney for the government may not communicate, or cause another to communicate, with a represented party who the attorney for the government knows is represented by an attorney concerning the subject matter of the representation without the consent of the lawyer representing such party.

**§ 77.6  Exceptions; represented parties.**

An attorney for the government may communicate, or cause another to communicate, with a represented party without the consent of the lawyer representing such party concerning the subject matter of the representation if

**Attachment 7 - page 20 of 22**

one or more of the following circumstances exist:

(a) *Determination if representation exists.* The communication is to determine if the person is in fact represented by counsel concerning the subject matter of the investigation or proceeding.

(b) *Discovery or judicial or administrative process.* The communication is made pursuant to discovery procedures or judicial or administrative process in accordance with the orders or rules of the court or other tribunal where the matter is pending, including, but not limited to testimony before a grand jury, the taking of a deposition, or the service of a grand jury or trial subpoena, summons and complaint, notice of deposition, administrative summons or subpoena or civil investigative demand.

(c) *Initiation of communication by represented party.* The represented party initiates the communication directly with the attorney for the government or through an intermediary and:

(1) Prior to the commencement of substantive discussions on the subject matter of the representation and after being advised by the attorney for the government of the client's right to speak through his or her attorney and/or to have the client's attorney present for the communication, manifests that his or her waiver of counsel for the communication is voluntary, knowing and informed and, if willing to do so, signs a written statement to this effect; and

(2) A federal district judge, magistrate judge or other court of competent jurisdiction has concluded that the represented party has:

(i) Waived the presence of counsel and that such waiver is voluntary, knowing, and informed; or

(ii) Obtained substitute counsel or has received substitute counsel appointment, and substitute has consented to the communication

(d) *Waivers at the time of arrest.* A communication is made at the time of the arrest of the represented party and he or she is advised of his or her rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and voluntarily and knowingly waives them.

(e) *Investigation of additional, different or ongoing crimes or civil violations.* The communication is made in the course of an investigation, whether undercover or overt, of additional, different or ongoing criminal activity or other unlawful conduct. Such additional, different or ongoing criminal activity or other unlawful conduct may

include, but is not limited to, the following:

(1) Additional, different or ongoing criminal activity or other unlawful conduct that is separate from or committed after the criminal activity for which the represented party has been arrested or charged or for which the represented party is a defendant in a civil law enforcement proceeding; or

(2) Criminal activity that is intended to impede or evade the administration of justice including, but not limited to, the administration of justice in the proceeding in which the represented party is a defendant, such as obstruction of justice, subornation of perjury, jury tampering, murder, assault, or intimidation of witnesses, bail jumping, or unlawful flight to avoid prosecution.

(f) *Threat to safety or life.* The attorney for the government in good faith believes that there may be a threat to the safety or life of any person; the purpose of the communication is to obtain or provide information to protect against the risk of injury or death; and the attorney for the government in good faith believes that the communication is necessary to protect against such risk.

**§ 77.7 Represented persons; investigations.**

Except as otherwise provided in this part, an attorney for the government may communicate, or cause another to communicate, with a represented person in the process of conducting an investigation, including, but not limited to, an undercover investigation.

**§ 77.8 Represented persons and represented parties; plea negotiations and other legal agreements.**

An attorney for the government may not initiate or engage in negotiations of a plea agreement, settlement, statutory or non-statutory immunity agreement, or other disposition of actual or potential criminal charges or civil enforcement claims, or sentences or penalties with a represented person or represented party who the attorney for the government knows is represented by an attorney without the consent of the attorney representing such person or party; provided, however, that this restriction will not apply if the communication satisfies § 77.6(c).

**§ 77.9 Represented persons and represented parties; respect for attorney-client relationships.**

When an attorney for the government communicates, or causes a law enforcement agent or cooperating witness to communicate, with a represented person or represented party pursuant to any provision of these regulations without the consent of

counsel, the following restrictions must be observed:

(a) *Deference to attorney-client relationship.* (1) An attorney for the government, or anyone acting at his or her direction may not, when communicating with a represented person or represented party:

(i) Inquire about information regarding lawful defense strategy or legal arguments of counsel;

(ii) Disparage counsel for a represented person or represented party or otherwise seek to induce the person to forego representation or to disregard the advice of the person's attorney; or

(iii) Otherwise improperly seek to disrupt the relationship between the represented person or represented party and counsel.

(2) Notwithstanding paragraph (a)(1) of this section, if the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General or a United States Attorney finds that there is a substantial likelihood that there exists a significant conflict of interest between a represented person or party and his or her attorney; and that it is not feasible to obtain a judicial order challenging the representation, then an attorney for the government with prior written authorization from an official identified above may apprise the person of the nature of the perceived conflict of interest, unless the exigencies of the situation permit only prior oral authorization, in which case such oral authorization shall be memorialized in writing as soon thereafter as possible.

(b) *Attorney-client meetings.* An attorney for the government may not direct or cause an undercover law enforcement agent or cooperating witness to attend or participate in lawful attorney-client meetings or communications, except when the agent or witness is requested to do so by the represented person or party, defense counsel, or another person affiliated or associated with the defense, and when reasonably necessary to protect the safety of the agent or witness or the confidentiality of an undercover operation. If the agent or witness attends or participates in such meetings, any information regarding lawful defense strategy or trial preparation imparted to the agent or witness shall not be communicated to attorneys for the government or to law enforcement agents who are directly participating in the ongoing investigation or in the prosecution of pending criminal charges, or used in any other way to the substantial detriment of the client.

**Attachment 7 - page 21 of 22**

**§ 77.10  Organizations and employees.**

This section applies when the communication involves a former or current employee of an organization that qualifies as a represented party or represented person, and the subject matter of the communication relates to the business or other affairs of the organization.

(a) *Communications with current employees; organizational representation.* A communication with a current employee of an organization that qualifies as a represented party or represented person shall be considered to be a communication with the organization for purposes of this part only if the employee is a controlling individual. A "controlling individual" is a current high level employee who is known by the government to be participating as a decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter.

(b) *Communications with former employees; organizational representation.* A communication with a former employee of an organization that is represented by counsel shall not be considered to be a communication with the organization for purposes of this part.

(c) *Communications with former or current employees; individual representation.* A communication with a former or current employee of an organization who is individually represented by counsel may occur only to the extent otherwise permitted by this part. However, a claim by an attorney that he or she represents all or a large number of individual current and/or former employees of an organization does not suffice to establish that those employees are represented persons or represented parties under this part. In such circumstances, prior to engaging in communications that would be prohibited under this part as a result of the individual representation, the attorney for the government shall communicate with the individual current or former employee to determine if in fact that employee is represented by counsel concerning the subject matter of the investigation or proceeding.

(d) *Communications with separately represented controlling individuals.* When this part would preclude discussions with a controlling individual as defined in § 77.10(a) and the controlling individual has retained

separate counsel on the relevant subject matter, an attorney for the government may communicate with such individual in the following circumstances:

(1) If the controlling individual's separate counsel consents;

(2) If the communication falls within one of the exceptions set forth in §§ 77.6 or 77.9; or

(3) In the case in which the individual does not qualify as a represented party, if the individual initiates the communication and states that he or she is communicating exclusively in his or her personal capacity and not on behalf of the represented organizational party, and manifests that his or her waiver of counsel for the communication is voluntary, knowing and informed, and, if willing to do so, signs a written statement to this effect.

(e) *Initiation of communication with unrepresented controlling individuals.* Notwithstanding any other provision of this part, an attorney for the government may communicate with a controlling individual who is not individually represented as to the subject matter of the communication when the controlling individual initiates the communication and states that he or she is communicating exclusively in his or her personal capacity and not on behalf of the represented organizational party, and manifests that his or her waiver of counsel for the communication is voluntary, knowing and informed, and, if willing to do so, signs a written statement to this effect.

(f) *Multiple representation.* Nothing in this section is intended or shall be construed to affect the requirements of Rule 44(c) of the Federal Rules of Criminal Procedure, or to permit the multiple representation of an organization and any of its employees, or the multiple representation of more than one such employee, if such representation is prohibited by any applicable law or rule of attorney ethics.

**§ 77.11  Enforcement of this part.**

(a) *Exclusive enforcement by Attorney General.* The Attorney General shall have exclusive authority over this part and any violations of it, except as provided in § 77.12. Allegations of violations of this part shall be reviewed exclusively by the Office of Professional Responsibility of the Department of Justice and shall be addressed when appropriate as matters of attorney discipline by the Department. The Office of Professional Responsibility

shall review any complaint alleging a violation of this part made by a state or federal judge, bar disciplinary board, official, or ethics committee, or by any other person or entity. The findings of the Attorney General or her designee as to an attorney's compliance or non-compliance with this part shall be final and conclusive except insofar as the attorney for the government is afforded a right of review by other provisions of law.

(b) *No private remedies.* This part is not intended to and does not create substantive rights on behalf of criminal or civil defendants, targets or subjects of investigations, witnesses, counsel for represented parties or represented persons, or any other person other than an attorney for the government, and shall not be a basis for dismissing criminal or civil charges or proceedings against represented parties or for excluding relevant evidence in any proceeding in any court of the United States.

**§ 77.12  Relationship to state and local regulation.**

Communications with represented parties and represented persons pursuant to this part are intended to constitute communications that are "authorized by law" within the meaning of Rule 4.2 of the American Bar Association Model Rules of Professional Conduct, DR 7–104(A)(1) of the ABA Code of Professional Responsibility, and analogous state and local federal court rules. In addition, this part is intended to preempt and supersede the application of state laws and rules and local federal court rules to the extent that they relate to contacts by attorneys for the government, and those acting at their direction or under their supervision, with represented parties or represented persons in criminal or civil law enforcement investigations or proceedings; it is designed to preempt the entire field of rules concerning such contacts. When the Attorney General finds a willful violation of any of the rules in this part, however, sanctions for the conduct that constituted a willful violation of this part may be applied, if warranted, by the appropriate state disciplinary authority.

Dated: July 30, 1994.

**Janet Reno,**

*Attorney General.*

[FR Doc. 94–19077 Filed 8–3–94; 8:45 am]

**BILLING CODE 4410-01-P**

**Attachment 7 - page 22 of 22**