Federal Register / Vol. 59, No. 149 / Thursday, August 4, 1994 / Rules and Regulations    **39911**

circumvent opposing counsel and employ superior skills and legal training to take advantage of the opposing party.

At the same time, the courts have long recognized that government law enforcement agents must be allowed broad powers, within constitutional limits, to investigate crime and civil violations of police and regulatory laws. These powers properly include the authority to conduct undercover operations and to interview witnesses, potential suspects, targets, and even those defendants who waive their right to remain silent. Although the Fifth and Sixth Amendments significantly restrict contacts with defendants after their initial appearance before a judge or after indictment, these constraints generally do not apply before a person has been taken into custody or charged in an adversary proceeding. Sound policies support this substantial power of police to investigate. The general public, victims of crime, and even potential suspects have a strong interest in vigorous inquiry by law enforcement officers before arrest or the filing of charges.

As long as investigations were treated as within the province of the police alone, the traditional rule forbidding counsel from directly contacting represented persons did not come into conflict with legitimate law enforcement activities. In recent years, however, the Department of Justice has encouraged federal prosecutors to play a larger role in preindictment, prearrest investigations. Some of this increased involvement stems from the wider use of law enforcement techniques, such as electronic surveillance, which require the preparation of legal filings. Also, complex white collar and organized crime investigations necessitate more intensive engagement of lawyers, who present such cases to grand juries. Most important, greater participation of lawyers at the preindictment stage of law enforcement has been regarded as helpful in assuring that police investigations comply with legal and ethical standards.

This extension of the traditional prosecutor's responsibility has been a salutary development. One by-product, however, has been uncertainty about whether the traditional professional limitation on attorney contacts with represented parties should be viewed as a restriction upon prosecutors engaged in investigations and, by extension, the agents with whom they work. The overwhelming preponderance of federal appellate courts have held that the restriction on contacts with represented persons does not apply at the preindictment investigation stage. See,

e.g., *United States* v. *Ryans*, 903 F.2d 731, 739 (10th Cir.), *cert. denied*, 498 U.S. 855 (1990); *United States* v. *Fitterer*, 710 F.2d 1328, 1333 (8th Cir.), *cert. denied*, 464 U.S. 852 (1983); *United States* v. *Kenny*, 645 F.2d 1323, 1339 (9th Cir.), *cert. denied*, 452 U.S. 920 (1981); *United States* v. *Weiss*, 599 F.2d 730, 739 (5th Cir. 1979); and *United States* v. *Lemonakis*, 485 F.2d 941, 955–56 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 989 (1974). Only the Second Circuit has suggested otherwise. *See United States* v. *Hammad*, 846 F.2d 854, *amended*, 858 F.2d 834 (2d Cir. 1988), *cert. denied*, 498 U.S. 871 (1990). However, that suggestion was muted significantly in a revised opinion by the Second Circuit that "urge[d] restraint in applying the rule to criminal investigations," 858 F.2d at 838, and ultimately concluded that "a prosecutor is 'authorized by law' to employ legitimate investigative techniques in conducting or supervising criminal investigations * * * " *Id.* at 839. By contrast, state courts and state bar organizations have varied widely in their interpretation of the scope of the prohibition on contacts embodied in DR 7–104, Model Rule 4.2, and their analogs. Some examples of the varying interpretations are detailed below.

Uncertainty about the scope and applicability of DR 7–104, Model Rule 4.2, and their state counterparts has directly affected the investigative activities of agents, including Federal Bureau of Investigation and Drug Enforcement Administration personnel, who work with prosecutors. The expansive application of these rules in some jurisdictions may have the effect of blocking preindictment interviews or undercover operations that most courts have held permissible under federal constitutional and statutory law. Additionally, the heightened threat of disciplinary action that accompanies the expansive application of these rules has created a chilling effect on prosecutors responsible for directing these legitimate investigative activities.

These problems are compounded when federal attorneys assigned to the same case are members of different state bars. Under federal law, a Department attorney must be a member in good standing of a state bar, but he or she need not belong to the bar in each state in which he or she is practicing for the government. Therefore, prosecution teams often comprise attorneys admitted to different bars. The application of different state disciplinary rules to these individuals creates uncertainty, confusion, and the possibility of unfairness. Indeed, one member of a two-member federal prosecution team

could receive a commendation for effective law enforcement while the other member, licensed in a different state, might be subject to state discipline for the same conduct.

In light of these circumstances, the Department has concluded that a compelling need exists that warrants a uniform federal rule to reconcile the traditional rule against contacts with a represented party with the obligation of the Department of Justice to enforce the law vigorously. Indeed, absent a uniform federal rule, prosecutors have been moved on occasion to reduce their participation in the investigative phase of law enforcement so as to leave federal agents unfettered by state disciplinary rules that were never intended to govern police behavior. Such a retreat from the field by prosecutors serves neither efficiency nor the interest in elevating legal compliance and ethical standards in all phases of law enforcement.

Furthermore, the disciplinary rules themselves invite promulgation of a regulation such as this one. Nearly all the states have adopted rules that include an "authorized by law" exception. This final rule, a duly promulgated regulation, is intended to constitute "law" within the meaning of those exceptions.

Finally, the Department has long maintained, and continues to maintain, that it has the authority to exempt its attorneys from the application of DR 7–104 and Model Rule 4.2 and their state counterparts. Furthermore, the Department maintains that whether, and to what extent, such prohibitions should apply to Department attorneys is a policy question. *See* Ethical Restraints of the ABA Code of Professional Responsibility on Federal Criminal Investigations, 4B Op. O.L.C. 576, 577 (1980). In light of the fact that all 50 states and the District of Columbia have adopted some form of a prohibition on contacts with represented parties, and in view of the long history of those rules, the Department believes that its attorneys should adhere to the principles underlying those rules to the maximum extent possible, consistent with the Department's law enforcement responsibilities. Therefore, even though the Department has the authority to exempt its attorneys from the reach of these rules, the Department has decided not to implement a wholesale exemption.

Rather, this regulation attempts to reconcile the purposes underlying DR 7–104 and Model Rule 4.2 with effective law enforcement. Recognizing the importance of the attorney-client relationship and the desirability that an individual who is represented by

**Attachment A3 - page 1 of 1**