counsel be fully advised by counsel before negotiating legal agreements, this regulation provides that federal attorneys may not negotiate plea bargains, settlement agreements, immunity agreements, or similar arrangements without the consent of the individual's attorney. There is a heightened risk in this context of the prosecutor's superior legal training and specialized knowledge being used to the detriment of the untutored layperson. Thus, the regulations comport with the principal purpose of DR 7–104 and Model Rule 4.2 by insisting that the individual's attorney participate in these types of negotiations. Further, even when contacts are allowed, the regulation is designed to minimize any intrusion into the attorney-client relationship. At the same time, this regulation does permit direct contacts at the preindictment, prearrest investigative stage with any individual, whether or not he or she is represented by counsel. The regulation is drafted to conform to the approach of most federal appellate courts that have considered the matter. *See, e.g., United States* v. *Ryans*, 903 F.2d 731 (10th Cir.) (discussing cases), *cert. denied*, 498 U.S. 855 (1990), and other cases cited previously in connection with the discussion of preindictment contacts. The Department believes that public policy and effective law enforcement would not be served if the simple act of retaining an attorney could serve to exempt a person from lawful, court-approved investigative techniques. The Department believes that it is inappropriate to alter investigative techniques based upon an individual's financial ability to retain counsel before the point at which an indigent would be afforded court-appointed counsel.

This regulation and the planned changes to the United States Attorneys' Manual also will give effect to other important aspects of the bar rules against contacts with represented parties. For example, the regulation precludes federal attorneys from disparaging an individual's counsel or from attempting to gain access to attorney-client confidences or lawful defense strategy. The guidelines that the Department intends to add to the Manual also will make clear that once an individual is in a likely adversarial situation with the government and has retained an attorney to represent himself or herself with respect to the particular subject matter under investigation, the government attorney must take greater care before making any *ex parte* contacts. While the regulation authorizes most communications before arrest, the planned Manual changes provide that, as a matter of internal policy guidance, federal prosecutors generally should not make overt contacts with represented targets of investigations. However, the planned Manual provisions permit overt contacts with a represented target when initiated by the target; when necessary to prevent death or physical injury; when the relevant investigation involves ongoing or additional crimes, or different crimes from that to which the representation relates; or when a United States Attorney or an Assistant Attorney General expressly concludes, under all of the circumstances, that the contact is needed for effective law enforcement.

Finally, the regulation and planned Manual provisions also address when a government attorney may communicate with an employee, officer, or director of a represented corporation or organization without the consent of counsel. The regulation generally prohibits a government attorney from communicating with a current, high-level employee of a represented organization who participates as a "decision maker in the determination of the organization's legal position in the proceeding or investigation of the subject matter" once the organization has been named as a defendant in a criminal or civil law enforcement proceeding. Further, the contemplated Manual provisions would generally prohibit contacts without the consent of counsel with controlling individuals of organizations that have not yet been named as defendants but are targets of federal criminal or civil law enforcement investigations.

This final rule recognizes that state courts and disciplinary bodies generally play the primary role in regulating the conduct of all attorneys, including those who work for the federal government. The Department also recognizes that with respect to most matters, Department attorneys are subject to the bar rules and disciplinary proceedings of the states in which they are licensed. However, the Department believes it must be the final arbiter of the scope of policing with respect to *ex parte* contacts involving federal prosecutors, subject to the Constitution and the laws of the United States. As noted above, because of the expanded participation of federal prosecutors in preindictment investigations, and the trend of state courts increasingly to apply DR 7–104 and Model Rule 4.2 expansively against federal prosecutors, these rules have affected and circumscribed the power of federal officials to carry out their legally mandated responsibilities. This regulation provides that the Attorney General shall have exclusive authority to determine these rules. Further, the Department's rules are intended fully to preempt and supersede the application of state and local court rules relating to contacts by Department of Justice attorneys when carrying out their federal law enforcement functions. Only if the Attorney General finds that a Department attorney has willfully violated these new rules would that attorney continue to be subject to the full measure of state disciplinary jurisdiction.

The Department is confident that, taken together, this regulation, the planned Manual amendments, and this supplemental information will promote the public interest in effective law enforcement in a manner that also conforms to the highest standards of legal ethics.

The procedures established by this rule apply to conduct occurring after the rule's publication.

II. Rulemaking History

On November 22, 1992, the Department of Justice published in the Federal Register a proposed rule regarding communications with represented persons. 57 FR 54737. By December 21, 1992, the close of the comment period, the Department had received comments from 20 sources.

The Department was concerned that not all interested parties had received sufficient opportunity to respond during the initial comment period. Noting "the complex and important nature of the rule to the criminal and civil justice systems and the licenses and livelihoods of its attorneys," on July 26, 1993, the Department reissued the proposed rule for an additional 30-day comment period. 58 FR 39976. The Department received 219 comments following this second publication of the proposed rule.

On March 3, 1994, the Department issued a new proposed rule governing the same subject matter for an additional 30-day comment period. 59 FR 10086. In response to concerns raised by bar organizations, bar counsel, state and federal judges, and others, that proposal reflected substantial changes from the earlier proposals. This publication of the proposed rule was accompanied by the issuance of companion provisions that the Department intends to include in the United States Attorneys' Manual, which set forth certain more restrictive policies with regard to overt investigatory communications. The discussion that follows summarizes the issues that were raised in response to the Department's latest publication of the proposed rule.