prescribed in section 3717 of title 31 of the United States Code and will accrue from the date of the billing.

(d) ONDCP may assess search charges where records are not located or where records are exempt from disclosure.

( ) ONDCP may aggregate individual requests and charge accordingly for requests seeking portions of a document or document sets.

### §1401.12   Fees to be charged—categories of requesters.

(a) There are four categories of FOIA requesters: commercial use requesters; educational and non-commercial scientific institutions; representatives of the news media; and all other requesters.

(b) The specific levels of fees for each of these categories are :

(1) *Commercial use requesters.* ONDCP will recover the full direct cost of providing search, review and duplication services. Commercial use requesters will not receive free search-time or free production of documents.

(2) *Educational and non-commercial scientific institution requesters.* ONDCP will charge the cost of reproduction, excluding charges for the first 100 pages. Requests must demonstrate the request is authorized by and under the auspices of a qualifying institution and that the records are acquired for scholarly or scientific research not a commercial use .

(3) *Requesters who are representatives of the news media.* ONDCP will charge the cost of reproduction, excluding charges for the first 100 pages. Requesters must meet the criteria in §1401.3(h), and the request must not be made for a commercial use . A request that supports the news dissemination function of the requester shall not be considered a commercial use .

(4) *All other requesters.* ONDCP will recover the full direct cost of the search and the reproduction of records, excluding the first 100 pages of reproduction and the first two hours of search time . Requests for records concerning the requester will be treated under the f provisions of the Privacy Act of 1974, 5 U.S.C. 552a, which permits f s only for reproduction.

### §1401.13   Waiver or reduction of fees.

F s chargeable in connection with a request may be waived or reduced wher ONDCP determines that disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the

Government and is not primarily in the commercial interest of the requester.

**Barry McCaffrey,**
*Director.*

[FR Doc. 99–32495 Filed 12–14–99; 8:45 am]
BILLING CODE 3180–02–U

## DEPARTMENT OF THE TREASURY

### Internal Revenue Service

### 26 CFR Parts 1 and 602

[TD 8847]

RIN 1545–AS39

### Adjustments Following Sales of Partnership Interests

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Final regulations.

**SUMMARY:** This document finalizes regulations relating to th optional adjustment to the basis of partnership property following certain transfers of partnership interests under section 743, the calculation of gain or loss under section 751(a) following the sale or exchange of a partnership interest, the allocation of basis adjustment among partnership assets under section 755, the allocation of a partner's basis in its partnership interest to property it distributed to the partner by the partnership under section 732(c), and the computation of a partner's proportionate share of the adjusted basis of depreciable property (or depreciable real property) under section 1017. The change s will affect partnerships and partners where there are transfers of partnership interest, sales, distributions of property, or elections under sections 108(b)(5) or (c). In addition, the final regulations under section 732(c) reflect changes to the law made by the Taxpayer Relief Act of 1997.

**DATES:** *Effective Dates:* The regulations are effective December 15, 1999.

*Applicability Date :* These regulations apply to transfers of partnership interests and distributions occurring on or after December 15, 1999.

**FOR FURTHER INFORMATION CONTACT:** Matthew Lay, (202) 622–3050.

**SUPPLEMENTARY INFORMATION:**

### Paperwork Reduction Act

The collections of information in these final regulations have been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act (44 U.S.C. 3507) under control number

1545–1588. Responses to these collections of information are mandatory for partnerships that have made an election under section 754 and for which a section 743 transfer has been made , and for partnerships which distribute property in a transaction subject to section 732(d).

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number assigned by the Office of Management and Budget.

The estimated annual burden per respondent varies from 1 hour to 300 hours, depending on the individual circumstances, with an estimated average of 4 hours.

Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be sent to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, OP:FS:FP, Washington, DC 20224, and to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503.

Books or records relating to these collections of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

### Background

This document (a) revises §§1.743–1 and 1.755–1 of the Income Tax Regulations (26 CFR part 1), and (b) amends §§1.732–1, 1.732–2, 1.734–1, 1.751–1, 1.754–1, and §1.1017–1 of the Income Tax Regulations.

On January 29, 1998, proposed regulations (REG 209682–94) were published in the **Federal Register** (63 FR 4408). Written comments were received in response to the notice of proposed rulemaking. On spoke r provided testimony at a public hearing held on September 10, 1998.

After consideration of all the comments, the proposed regulations under sections 732, 734, 743, 751, 755, and 1017 are adopted, as revised by this Treasury Decision.

### Explanation of Revisions and Summary of Contents

#### 1. Basis in Distributed Property

(a) Mandatory application of section 732(d). Section 1.732–1(d)(4) of the current regulations requires transferees to apply the special basis rule in certain

**69904**    Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations

cases. In the preamble to the proposed regulations, the IRS and the Treasury Department request comments on the proper scope of section 732(d), and specifically, under what circumstances, if any, the Secretary should continue to exercise his authority to mandate the application of section 732(d) to a transfer. Several commentators suggest that the mandatory application of section 732(d) no longer should be required, because the changes made to section 732(c) by the Taxpayer Relief Act of 1997, Public Law 105–34, 111 Stat. 788, 945–46 (1997), make the distortions targeted by the regulations less likely to occur. However, other commentators note that distortions caused by section 732(c) still may occur. Accordingly, the rule contained in § 1.732–1(d)(4), which requires the mandatory application of section 732(d) in certain cases, remains in effect.

(b) Statement required by partnership. Because partners, rather than partnerships, are required to report basis adjustments under section 732(d), the final regulations require partnerships to provide transferees with such information as is necessary for the transferees properly to compute basis adjustments made under section 732(d). This information must be provided if a transferee notifies a partnership that it plans to make the election under section 732(d) or if a partnership makes a distribution subject to the mandatory application of section 732(d).

(c) Effective date. One commentator asked for clarification regarding the application of the final regulations to section 732(d) adjustments. If section 732(d) applies to a distribution, it is necessary to calculate the basis adjustment into which would have been required under section 743(b) if a section 754 election were in effect for the partnership in the taxable year in which the partner interest was transferred to the partner. In calculating this basis adjustment, the partnership should apply the final regulations under section 743 and 755 if the distribution to which a section 732(d) applies occurs after December 15, 1999.

### 2. Basis Adjustments Under Section 743(b)

(a) Coordination with section 704(c). When a partnership adopts the remedial allocation method, the proposed regulations provide that the section 704(c) built-in gain portion of a basis adjustment under section 743(b) shall be recovered over the remaining cost recovery period for the section 704(c) built-in gain. Some commentators suggested that the final regulations should provide this treatment for the

section 704(c) built-in gain portion of the adjustment regardless of the method elected by the partnership for allocating section 704(c) built-in gain and loss. The IRS and the Treasury Department continue to believe that, except for partnerships which adopt the remedial allocation method, it is appropriate for sections 704(c) and 743(b) to operate independently. Accordingly, this change has not been adopted.

In the preamble to the proposed regulations, comments were requested concerning the application of the remedial allocation method to contribute property where there are no distortions caused by the ceiling rule at the time the property was contributed to the partnership. Even if it is not clear that the ceiling rule will apply at the time the property is contributed because the adjusted basis of the contributed property is sufficient so that the non-contributing partners will be allocated their appropriate share of depreciation or amortization attributable to the property, the partnership's adoption of the remedial method still may be relevant due to allocations resulting from a subsequent disposition of the property. For instance, suppose that partners A and B form a partnership and agree that each partner will be allocated a 50 percent share of all partnership items, and that the partnership will make allocations under section 704(c) using the traditional method. A contributes depreciable property with an adjusted tax basis of $40 and a book value of $50, and B contributes $50 in cash. At the time of the contribution, it is not readily apparent that the ceiling rule will have any application. However, if, for any federal income tax depreciation accrues with respect to the contributed property, the property's value declines to $40, and the property is sold for that amount, there will be no tax gain or loss. The book loss of $10 would be shared equally between A and B. In this situation, the ceiling rule would prevent B from being allocated the $5 tax loss to which it otherwise would be entitled. However, if the partnership elected to use the remedial method with respect to the contributed property, B would be allocated a $5 tax loss, and A would be allocated a corresponding $5 tax gain. In addition, if a contributing partner transfers its interest in a partnership during a period when a section 754 election is in effect, the section 704(c) method adopted by the partnership will determine the recovery period for the built-in gain portion of the transferee's section 743(b) adjustment. The IRS and the Treasury Department believe that under the

current regulations under section 704(c), a partnership may use the remedial method only if § 1.704–3, in which it is not readily apparent at the time the property is contributed that the ceiling rule will be applicable.

(b) Previously taxed capital. On commentator suggested that the second sentence in proposed § 1.743–1(d)(2), relating to the correlation between a partner's interest in previously taxed capital and the partnership's capital accounts, is redundant and should be deleted. This suggestion has been adopted; however, no substantive change is intended by the deletion.

(c) Common basis election. Some commentators suggested that the provision in the proposed regulations that permitted the partners to elect to apply negative basis adjustments under section 743(b) to the partnership's common basis should be deleted. The commentators argued that the provision was contrary to the purpose of section 743(b), because it permitted basis adjustments under section 743(b) to affect nontransferring partners. The commentators also argued that the provision would be used by a small number of partnerships and would add unnecessary complexity to the regulations. In response to these suggestions, the provision that permitted the partners to elect to apply negative basis adjustments under section 743(b) to the partnership's common basis has been deleted.

(d) Statements by partners. Some commentators suggested modifying the statements which partners are required to provide to the partnership in the case of transfers which result in basis adjustments under section 743(b). Many of these suggestions have been adopted. For example, the regulations specify that the transfer of a partnership interest is required to provide the name, address, and taxpayer identification number of the transferor only if that information is ascertainable by the transferee. The regulations also specify that if a partnership interest is transferred to a nominee which is required to furnish the statement under § 1.6031(c)–1T to the partnership, the nominee may satisfy the notice requirements of both the section 743 and 6031 regulations by providing a single statement with respect to that transfer, but only if the statement satisfies all requirements of both regulations.

The regulations require the transferee to sign the statement under penalties of perjury, and require the transferee to provide the amount of any liabilities assumed or taken subject to by the transferee, and any other information

**Federal Register / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations    69905**

necessary for the partnership to compute the transferee's basis in its partnership interest. In order to assist the partnership in properly calculating depreciation and amortization deductions which may be subject to anti-churning provisions, the regulations require the transferor to describe its relationship, if any, to the transferor. Finally, the statement required by a transfer that acquires an interest by death must include the date of the decedent's death.

One commentator suggested that the statement required by a transfer that acquire a partnership interest by sale or exchange should be provided within 30 days of the sale or exchange, regardless of when the transfer occurs at the end of the calendar year. This change has been adopted.

One commentator suggested that reference to the tax matters partner in § 1.743–1(k) of the proposed regulations (regarding the partnership's obligations when a partner's statement is clearly erroneous, or a partner fails to notify the partnership that an interest has been transferred and the partnership has actual knowledge of the transfer) should be changed. This commentator emphasized that while the tax matters partner has a specialized role with respect to consolidated administrative and judicial proceedings to determine the tax treatment of partnership items at the partnership level, the tax matters partner does not have any special responsibilities with respect to federal income tax reporting. The final regulations adopt this comment. Section 1.743–1(k) now refers to partners who are responsible for federal income tax reporting by the partnership.

( ) Oil and gas. One commentator suggested that the example described in § 1.743–1(j)(6) should be changed to describe a non-oil and gas property. This change has been made. The commentator also suggested that in the case of domestic oil and gas properties that are depleted at the partnership level, the transfer (rather than the partnership) should be required to make and allocate basis adjustments among such properties. The final regulations adopt this comment.

The same commentator suggested that the regulations should specify a method for adjusting the basis of a section 613A(c)(7)(D) properties in order to account for pre-reduction depletion made by a partner with respect to such properties. Under the principles of § 1.743–1(j), pre-reduction depletion should reduce first any carryover basis under § 1.613A–3( )(6)(iv). After the carryover basis has been recovered, any further pre-reduction depletion should

reduce the section 743 adjustment for the property.

### 3. Sales of Partnership Interests

One commentator suggested that reference to fair market value should specify when fair market value is determined taking into account section 7701(g), which generally provides that fair market value shall be treated as being not less than the amount of any nonrecourse indebtedness to which the property is subject. The regulations specify that for purposes of the hypothetical sale employed to determine the income or loss realized by a partner upon the sale or exchange of its interest in section 751 property, fair market value is determined taking into account section 7701(g). Basis adjustments under section 743(b) also are allocated by reference to a hypothetical transaction. The IRS and the Treasury Department intend not to issue guidance in any future which will provide rules for determining the fair market value of partnership assets in certain situations, including for purposes of allocating section 743(b) basis adjustments upon the transfer of a partnership interest. The IRS and the Treasury Department do not anticipate that this guidance will provide that a section 7701(g) will apply in determining the fair market value of partnership assets for purposes of allocating section 743(b) basis adjustments.

One commentator suggested that where a partnership interest is sold or exchanged, the transferor and the transfer of a partnership interest should be permitted jointly to assign value to partnership assets in a written agreement. Because this approach is inconsistent with the hypothetical sale approach of the regulations, this suggestion has not been adopted.

### 4. Elections Under Section 754

One commentator suggested that partnerships be granted a one-time right to revoke section 754 elections in effect for such partnerships. Given the significant changes to the rules made by the final regulations as compared to the regulations that were in effect at the time that a section 754 election previously were made, the IRS and the Treasury believe that it is appropriate to provide for a one-time revocation of such elections. Accordingly, a partnership having an election in effect under section 754 for its taxable year that includes December 15, 1999 may revoke such election by attaching a statement to the partnership's return for that year. The return must be filed on or before the due date (including extensions) for the return for that year.

### 5. Allocation of Basis Adjustments Among Partnership Assets

(a) Income in respect of a decedent. One commentator requested that the final regulations illustrate the allocation of basis adjustments among partnership assets when one or more of such assets represents income in respect of a decedent. Where a partnership interest is transferred as a result of the death of a partner, and under section 1014(c) the transfer's basis in its partnership interest is not adjusted for that portion of the interest, if any, which is attributable to it ms r pr s nting income in respect of a decedent under section 691. Because the transfer's basis in its partnership interest does not include the value of assets which represent income in respect of a decedent, the section 743(b) adjustment not likewise do not reflect the value of such assets. *George Edward Quick's Trust*, 54 TC 1336 (1970) (acq.), *aff'd per curiam*, 444 F.2d 90 (8th Cir. 1971); *Chrissi H. Woodhall*, 28 T.C.M. 1438 (1969), *aff'd*, 454 F.2d 226 (9th Cir. 1972); R v. Rul. 66–325, 1966–2 C.B. 249. Where a partnership holds assets that represent income in respect of a decedent, the section 743(b) adjustment not should be allocated of such solely to oth r ass ts. Accordingly, the final regulations provide that if a partnership interest is transferred as a result of the death of a partner, and the partnership holds assets representing income in respect of a decedent, no part of the basis adjustment under section 743(b) is allocated to those assets.

(b) Transferred basis transactions. One commentator called for a revised system for allocating basis adjustments under section 743(b) which are triggered by exchanges in which the transfer's basis in the interest is determined in whole or in part by reference to the transfer or's basis in the interest. In many such cases, the section 743(b) adjustment will be zero. However, a positive or negative section 743(b) adjustment may result, because the transfer's basis in the interest may not be equal to the transfer's share of the partnership's basis in its assets.

The IRS and the Treasury Department believe that, although these transferred basis transactions involve transfers which are subject to section 743(b), the new, comprehensive basis allocation rules in the proposed regulations should not be available. For example, where a partnership interest is contributed to a corporation in a transaction to which section 351 applies, or to a partnership in a transaction to which section 721(a) applies, the transfer merely has changed the form of its investment. If

the allocation rules which apply to others section 743(b) transfers were applied to the s exchange, the partner could use the s exchange s to shift basis from capital gain assets to ordinary income assets, or vice versa.

The rfor, the final regulations contain special basis allocation rules for transferred basis exchanges. The special rules generally are modeled on the rules for allocating basis adjustments under section 734(b). The final regulations do not contain a specific anti-abuse rule regarding the special basis allocation rules which are applicable to such transfers. However, there may be situations where taxpayers will attempt to und rtak abusiv transactions using the s special rules. For instance, a partner could acquire a partnership interest during a year in which no section 754 election is in effect, and then (in a related transaction) contribute the property to a wholly-owned corporation in order to take advantage of the basis allocation rules applicable to transferred basis exchanges. In appropriate situations, the IRS may attack such abusive transactions und r a variety of judicial doctrines, including substance over form or step transaction, or under § 1.701–2 of the regulations.

(c) Unrealized receivables under section 751(c). One commentator requested that the final regulations illustrate the effect of depreciation recapture on the allocation of basis adjustments among partnership assets under section 755. For purposes of this section, the final regulations treat depreciation recapture, and any other property right s or potential gain treated as unrealized receivables under section 751(c) and the regulations thereunder, as a separate asset that are ordinary income property.

(d) Special rules for securities partnerships and tiered partnerships. One commentator suggested that the regulations permit securities partnerships to allocate basis adjustments among partnership assets using an aggregation method. Another commentator requested that the regulations clarify how the regulations would apply to tiered partnerships. The IRS and the Treasury Department believe that a method for allocating basis adjustments among partnership assets on an aggregate basis is not consistent with the hypothetical sale of individual assets, which is required by the regulations. In addition, the IRS and Treasury Department believe that special rules for tiered partnerships would make the regulations more complex. Therefore, the s changes have not been adopted.

### 6. Other Comments

One commentator suggested that for purposes of allocating basis adjustments among partnership assets, the value of all partnership assets should be determined by reference to the basis of the transferor or distributee partner in its partnership interest. This suggestion is being considered in connection with a separate project currently under review by the IRS and the Treasury Department.

One commentator suggested that the language of section 743 does not authorize regulations that permit both positive and negative adjustments as part of the same transaction. The IRS and the Treasury Department continue to believe that this aspect of the regulations is within the IRS's authority to administer s sections 743 and 755.

## Special Analyses

It has been determined that this final regulations are not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It has been determined that a final regulatory flexibility analysis is required for the collection of information in this Treasury decision under 5 U.S.C. 604. A summary of the analysis is set forth below under the heading "Summary of Final Regulatory Flexibility Act Analysis." Pursuant to section 7805(f) of the Internal Revenue Code, the s final regulations have been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on their impact on small business.

## Summary of Final Regulatory Flexibility Act Analysis

This analysis is required under the Regulatory Flexibility Act (5 U.S.C. chapter 6). In general, the regulations require a transferee that acquires an interest in a partnership with an election under section 754 in effect to notify the partnership of the transfer. This notification must include the name and taxpayer identification number of the transferee and the transferee's basis in the acquired partnership interest. The partnership is required to include a statement with its Form 1065, U.S. Partnership Return of Income, for the taxable year in which the partnership acquire s knowledge of the transfer. This statement must identify the name and taxpayer identification number of the transferor, the computation of the basis adjustment, and the allocation of that adjustment to partnership properties. The s requirements will ensure that the partnership has notice that a transfer has occurred and that the property has

adjustments are computed. The legal basis for the s requirements is contained in s sections 743(b), 6001, and 7805(a).

If an interest is transferred in a partnership holding domestic oil and gas property that is at or depleted at the partner level under section 613A(c)(7)(D), the regulations require the transferor partner (rather than the partnership) to make and allocate basis adjustments under section 743(b) among such properties.

There were approximately 1,494,000 partnerships in 1994. However, the s regulations apply only to partnerships that have made an election under section 754. The election under section 754 is generally not made unless there has been a transfer of a partnership interest or a distribution by the partnership. Moreover, the effects of the election attach to specific items of partnership property and may provide only temporary benefits for the partners. Except for the on-time revocation which is allowed in connection with the promulgation of the s final regulations, the election cannot be revoked without the consent of the Secretary. The IRS and the Treasury Department believe that most partnerships do not make the election under section 754. Therefore, most partnerships will not be affected by the regulations in any given year.

After a partner conveys information to the partnership concerning a transfer of a partnership interest, the partnership must adjust the partner's interest in the basis of partnership property. Because the s basis adjustment will affect the partner's share of depreciation or amortization deductions and amounts of gain or loss on the disposition of certain items of partnership property, the partnership must prepare and maintain special entries on its books. However, in many cases, partnership returns are prepared using computer software that can prepare and maintain the s special entries after the initial year.

The IRS and the Treasury Department are not aware of any federal rules that may duplicate, overlap, or conflict with the rule.

As an alternative to the disclosure described above, the IRS and the Treasury Department considered, but rejected, a rule that would have required the partners, and not the partnerships, to make the basis adjustments and to determine the effects of the basis adjustments on the partners' distributive share s. This alternative was rejected because the IRS and the Treasury Department believe that partnerships generally have better access to the information necessary to report section 743 basis adjustment s properly. To

require partners rather than the partnerships to bear the burden of reporting would require the partnerships to provide the partners with significant amounts of information not otherwise needed by the partners. There are no known alternative rules that are less burdensome to the partnerships than if the partners bear that burden but that accomplish the purpose of the statute.

Finally, because partners, rather than partnerships, are required to report basis adjustment under section 732(d), the final regulations require partnerships to provide transferees with such information as is necessary for the transferees properly to compute basis adjustments made under section 732(d). This information must be provided if a transferee notifies a partnership that it plans to make the election under section 732(d) or if a partnership makes a distribution subject to the mandatory application of section 732(d). The IRS and the Treasury Department believe that this requirement will apply under a limited circumstance to a small percentage of partnerships.

**Drafting Information**

The principal author of these regulations is Matthew Lay of the Office of the Assistant Chief Counsel (Passthroughs and Special Industries). However, other personnel from the IRS and the Treasury Department participated in their development.

**List of Subjects**

*26 CFR Part 1*

Income taxes, Reporting and recordkeeping requirements.

*26 CFR Part 602*

Reporting and recordkeeping requirements.

**Adoption of Amendments to the Regulations**

Accordingly, 26 CFR parts 1 and 602 are amended as follows:

**PART 1—INCOME TAXES**

**Paragraph 1.** The authority citation for part 1 is amended by adding entries in numerical order to read as follows:

**Authority:** 26 U.S.C. 7805 * * *
Section 1.732–1 also issued under 26 U.S.C. 732.
Section 1.732–2 also issued under 26 U.S.C. 732.
Section 1.734–1 also issued under 26 U.S.C. 734.
Section 1.743–1 also issued under 26 U.S.C. 743.
Section 1.751–1 also issued under 26 U.S.C. 751.
Section 1.755–1 also issued under 26 U.S.C. 755. * * *

Section 1.1017–1 also issued under 26 U.S.C. 1017. * * *

**Par. 2.** Section 1.732–1 is amended as follows:

1. Revise paragraph (c).
2. Revise paragraph (d)(1)(ii).
3. Revise the last sentence of paragraph (d)(1)(v).
4. Revise paragraph (d)(1)(vi).
5. Revise paragraph (d)(4)(iii).
6. Remove the flush text and *Example 1* and *2* following paragraph (d)(4)(iii).
7. Add paragraph (d)(5).

The additions and revisions read as follows:

**§ 1.732–1   Basis of distributed property other than money.**

* * * * *

(c) *Allocation of basis among properties distributed to a partner*—(1) *General rule*—(i) *Unrealized receivables and inventory items.* The basis to be allocated to properties distributed to a partner under section 732(a)(2) or (b) is allocated first to any unrealized receivables (as defined in section 751(c)) and inventory items (as defined in section 751(d)(2)) in an amount equal to the adjusted basis of each such property to the partnership immediately before the distribution. If the basis to be allocated is less than the sum of the adjusted bases to the partnership of the distributed unrealized receivables and inventory items, the adjusted basis of the distributed property must be decreased in the manner provided in paragraph (c)(2)(i) of this section.

(ii) *Other distributed property.* Any basis not allocated to unrealized receivables or inventory items and paragraph (c)(1)(i) of this section is allocated to any other property distributed to the partner in the same transaction by assigning to each distributed property an amount equal to the adjusted basis of the property to the partnership immediately before the distribution. However, if the sum of the adjusted bases to the partnership of such other distributed property do not equal the basis to be allocated among the distributed property, any increase or decrease required to make these amounts equal is allocated among the distributed property as provided in paragraph (c)(2) of this section.

(2) *Adjustment to basis allocation*—(i) *Decrease in basis.* Any decrease to the basis of distributed property required under paragraph (c)(1) of this section is allocated first to distributed property with unrealized depreciation in proportion to each property's respective amount of unrealized depreciation before any decrease is made (but only to the extent of each property's unrealized

depreciation). If the decrease exceeds the amount of unrealized depreciation in the distributed property, the excess is allocated to the distributed property in proportion to the adjusted bases of the distributed property, as adjusted pursuant to the immediately preceding sentence.

(ii) *Increase in basis.* Any increase to the basis of distributed property required under paragraph (c)(1)(ii) of this section is allocated first to distributed property (other than unrealized receivables and inventory items) with unrealized appreciation in proportion to each property's respective amount of unrealized appreciation before any increase is made (but only to the extent of each property's unrealized appreciation). If the increase exceeds the amount of unrealized appreciation in the distributed property, the excess is allocated to the distributed property (other than unrealized receivables or inventory items) in proportion to the fair market value of the distributed property.

(3) *Unrealized receivables and inventory items.* If the basis to be allocated upon a distribution in liquidation of the partner's entire interest in the partnership is greater than the adjusted basis to the partnership of the unrealized receivables and inventory items distributed to the partner, and if there is no other property distributed to which the excess can be allocated, the distributed partner sustains a capital loss under section 731(a)(2) to the extent of the unallocated basis of the partnership interest.

(4) *Examples.* The provisions of this paragraph (c) are illustrated by the following examples:

*Example 1.* A is a one-fourth partner in partnership PRS and has an adjusted basis in its partnership interest of $650. PRS distributes inventory items and Assets X and Y to A in liquidation of A's entire partnership interest. The distributed inventory items have a basis to the partnership of $100 and a fair market value of $200. Asset X has an adjusted basis to the partnership of $50 and a fair market value of $400. Asset Y has an adjusted basis to the partnership and a fair market value of $100. Neither Asset X nor Asset Y consists of inventory items or unrealized receivables. Under this paragraph (c), A's basis in its partnership interest is allocated first to the inventory items in an amount equal to their adjusted basis to the partnership. A, therefore, has an adjusted basis in the inventory items of $100. The remaining basis, $550, is allocated to the distributed property first in an amount equal to the property's adjusted basis to the partnership. Thus, Asset X is allocated $50 and Asset Y is allocated $100. Asset X is then allocated $350, the amount of unrealized appreciation in Asset

**69908**  **F d ral R gist r** / Vol. 64, No. 240 / W dn sday, D c mb r 15, 1999 / Rul s and R gulations

X. Finally, th r maining basis, $50, is allocat d to Ass ts X and Y in proportion to th ir fair mark t valu s: $40 to Ass t X (400/500 × $50), and $10 to Ass t Y (100/500 × $50). Th r for , aft r th distribution, A has an adjust d basis of $440 in Ass t X and $110 in Ass t Y.

*Exampl 2.* B is a on -fourth partn r in partn rship PRS and has an adjust d basis in its partn rship int r st of $200. PRS distribut s Ass t X and Ass t Y to B in liquidation of its ntir partn rship int r st. Ass t X has an adjust d basis to th partn rship and fair mark t valu of $150. Ass t Y has an adjust d basis to th partn rship of $150 and a fair mark t valu of $50. N ith r of th ass ts consists of inv ntory it ms or unr aliz d r c ivabl s. Und r this paragraph (c), B's basis is first assign d to th distribut d prop rty to th xt nt of th partn rship's basis in ach distribut d prop rty. Thus, Ass t X and Ass t Y ar ach assign d $150. B caus th aggr gat adjust d basis of th distribut d prop rty, $300, xc ds th basis to b allocat d, $200, a d cr as of $100 in th basis of th distribut d prop rty is r quir d. Ass ts X and Y hav unr aliz d d pr ciation of z ro and $100, r sp ctiv ly. Thus, th ntir d cr as is allocat d to Ass t Y. Aft r th distribution, B has an adjust d basis of $150 in Ass t X and $50 in Ass t Y.

*Exampl 3.* C, a partn r in partn rship PRS, r c iv s a distribution in liquidation of its ntir partn rship int r st of $6,000 cash, inv ntory it ms having an adjust d basis to th partn rship of $6,000, and r al prop rty having an adjust d basis to th partn rship of $4,000. C's basis in its partn rship int r st is $9,000. Th cash distribution r duc s C's basis to $3,000, which is allocat d ntir ly to th inv ntory it ms. Th r al prop rty has a z ro basis in C's hands. Th partn rship bas s not carri d ov r to C for th distribut d prop rti s ar lost unl ss an l ction und r s ction 754 is in ff ct r quiring th partn rship to adjust th bas s of r maining partn rship prop rti s und r s ction 734(b).

*Exampl 4.* Assum th sam facts as in *Exampl 3* of this paragraph xc pt C r c iv s a distribution in liquidation of its ntir partn rship int r st of $1,000 cash and inv ntory it ms having a basis to th partn rship of $6,000. Th cash distribution r duc s C's basis to $8,000, which can b allocat d only to th xt nt of $6,000 to th inv ntory it ms. Th r maining $2,000 basis, not allocabl to th distribut d prop rty, constitut s a capital loss to partn r C und r s ction 731(a)(2). If th l ction und r s ction 754 is in ff ct, s s ction 734(b) for adjustm nt of th basis of undistribut d partn rship prop rty.

(5) *Eff ctiv dat .* This paragraph (c) appli s to distributions of prop rty from

a partn rship that occur on or aft r D c mb r 15, 1999.

(d) * * *
(1) * * *

(ii) Wh r an l ction und r s ction 754 is in ff ct, s s ction 743(b) and §§ 1.743–1 and 1.732–2.

* * * * *

(v) * * * (For a shift of transf r 's basis adjustm nt und r s ction 743(b) to lik prop rty, s § 1.743–1(g).)

(vi) Th provisions of this paragraph (d)(1) may b illustrat d by th following xampl :

*Exampl .* (i) Transf r partn r, T, purchas d a on -fourth int r st in partn rship PRS for $17,000. At th tim T purchas d th partn rship int r st, th l ction und r s ction 754 was not in ff ct and th partn rship inv ntory had a basis to th partn rship of $14,000 and a fair mark t valu of $16,000. T's purchas pric r fl ct d $500 of this diff r nc . Thus, $4,000 of th $17,000 paid by T for th partn rship int r st was attributabl to T's shar of partn rship inv ntory with a basis of $3,500. Within 2 y ars aft r T acquir d th partn rship int r st, T r tir d from th partn rship and r c iv d in liquidation of its ntir partn rship int r st th following prop rty:

| | Assets | |
|---|---|---|
| | Adjusted basis to PRS | Fair market value |
| Cash | $1,500 | $1,500 |
| Inventory | 3,500 | 4,000 |
| Asset X | 2,000 | 4,000 |
| Asset Y | 4,000 | 5,000 |

(ii) Th fair mark t valu of th inv ntory r c iv d by T was on -fourth of th fair mark t valu of all partn rship inv ntory and was T's shar of such prop rty. It is immat rial wh th r th inv ntory T r c iv d was on hand wh n T acquir d th int r st. In accordanc with T's l ction und r s ction 732(d), th amount of T's shar of partn rship basis that is attributabl to partn rship inv ntory is incr as d by $500 (on -fourth of th $2,000 diff r nc b tw n th fair mark t valu of th prop rty, $16,000, and its $14,000 basis to th partn rship at th tim T purchas d its int r st). This adjustm nt und r s ction 732(d) appli s only for purpos s of distributions to T, and not for purpos s of partn rship d pr ciation, d pl tion, or gain or loss on disposition. Thus, th amount to b allocat d among th prop rti s r c iv d by T in th liquidating distribution is $15,500 ($17,000, T's basis for th partn rship int r st, r duc d by th amount of cash r c iv d, $1,500). This amount is allocat d as follows: Th basis of th inv ntory it ms r c iv d is $4,000, consisting of th $3,500 common partn rship basis, plus th basis adjustm nt of $500 which T would hav had und r s ction 743(b). Th r maining basis of $11,500 ($15,500 minus $4,000) is allocat d among th r maining prop rty distribut d to

T by assigning to ach prop rty th adjust d basis to th partn rship of such prop rty and adjusting that basis by any r quir d incr as or d cr as . Thus, th adjust d basis to T of Ass t X is $5,111 ($2,000, th adjust d basis of Ass t X to th partn rship, plus $2,000, th amount of unr aliz d appr ciation in Ass t X, plus $1,111 ($4,000/$9,000 multipli d by $2,500)). Similarly, th adjust d basis of Ass t Y to T is $6,389 ($4,000, th adjust d basis of Ass t Y to th partn rship, plus $1,000, th amount of unr aliz d appr ciation in Ass t Y, plus $1,389 ($5,000/$9,000 multipli d by $2,500)).

* * * * *

(4) * * *
(iii) A basis adjustm nt und r s ction 743(b) would chang th basis to th transf r partn r of th prop rty actually distribut d.

(5) R quir d stat m nts. If a transf r partn r notifi s a partn rship that it plans to mak th l ction und r s ction 732(d) und r paragraph (d)(3) of this s ction, or if a partn rship mak s a distribution to which paragraph (d)(4) of this s ction appli s, th partn rship must provid th transf r with such information as is n c ssary for th

transf r prop rly to comput th transf r 's basis adjustm nts und r s ction 732(d).

* * * * *

**Par. 3.** S ction 1.732–2 is am nd d by r vising th s nt nc at th nd of th *Exampl* in paragraph (b) to r ad as follows:

**§1.732–2  Special partnership basis of distributed property.**

* * * * *

(b) * * *
*Exampl .* * * * S § 1.743–1(g).

* * * * *

**Par. 4.** In § 1.734–1, paragraph ( ) is add d to r ad as follows:

**§1.734–1  Optional adjustment to basis of undistributed partnership property.**

* * * * *

( ) R cov ry of adjustm nts to basis of partn rship prop rty—(1) Incr as s in basis. For purpos s of s ction 168, if th basis of a partn rship's r cov ry prop rty is incr as d as a r sult of th distribution of prop rty to a partn r, th n th incr as d portion of th basis

must be taken into account as if it were newly-purchased depreciable property placed in service when the distribution occurs. Consequently, any applicable recovery period and method may be used to determine the recovery allowance with respect to that increased portion of the basis. However, no change is made for purposes of determining the recovery allowance under section 168 for the portion of the basis for which there is no increase.

(2) *Decrease in basis.* For purposes of section 168, if the basis of a partnership's recovery property is decreased as a result of the distribution of property to a partner, then the decrease in basis must be accounted for over the remaining recovery period of the property beginning with the recovery period in which the basis is decreased.

(3) *Effective date.* This paragraph (e) applies to distributions of property from a partnership that occur on or after December 15, 1999.

Par. 5. Section 1.743–1 is revised to read as follows:

### §1.743–1 Optional adjustment to basis of partnership property.

(a) *In general.* The basis of partnership property is adjusted as a result of the transfer of an interest in a partnership by sale or exchange or on the death of a partner only if the election provided by section 754 (relating to optional adjustments to the basis of partnership property) is in effect with respect to the partnership. Whether or not the election provided in section 754 is in effect, the basis of partnership property is not adjusted as the result of a contribution of property, including money, to the partnership.

(b) *Determination of adjustment.* In the case of the transfer of an interest in a partnership, either by sale or exchange or as a result of the death of a partner, a partnership that has an election under section 754 in effect—

(1) Increases the adjusted basis of partnership property by the excess of the transferee's basis for the transferred partnership interest over the transferee's share of the adjusted basis to the partnership of the partnership's property; or

(2) Decreases the adjusted basis of partnership property by the excess of the transferee's share of the adjusted basis to the partnership of the partnership's property over the transferee's basis for the transferred partnership interest.

(c) *Determination of transferee's basis in the transferred partnership interest.* In the case of the transfer of a partnership interest by sale or exchange or as a result of the death of a partner, the transferee's basis in the transferred partnership interest is determined under section 742 and § 1.742–1. See also section 752 and §§ 1.752–1 through 1.752–5.

(d) *Determination of transferee's share of the adjusted basis to the partnership of the partnership's property*—(1) *In general.* A transferee's share of the adjusted basis to the partnership of partnership property is equal to the sum of the transferee's interest as a partner in the partnership's previously taxed capital, plus the transferee's share of partnership liabilities. Generally, a transferee's interest as a partner in the partnership's previously taxed capital is equal to—

(i) The amount of cash that the transferee would receive on a liquidation of the partnership following the hypothetical transaction, as defined in paragraph (d)(2) of this section (to the extent attributable to the acquired partnership interest); increased by

(ii) The amount of tax loss (including any remedial allocations under § 1.704–3(d)), that would be allocated to the transferee from the hypothetical transaction (to the extent attributable to the acquired partnership interest); and

(iii) The amount of tax gain (including any remedial allocations under § 1.704–3(d)), that would be allocated to the transferee from the hypothetical transaction (to the extent attributable to the acquired partnership interest).

(2) *Hypothetical transaction defined.* For purposes of paragraph (d)(1) of this section, the hypothetical transaction means the disposition by the partnership of all of the partnership's assets, immediately after the transfer of the partnership interest, in a fully taxable transaction for cash equal to the fair market value of the assets.

(3) *Examples.* The provisions of this paragraph (d) are illustrated by the following examples:

*Example 1.* (i) A is a member of partnership PRS in which the partners have equal interests in capital and profits. The partnership has made an election under section 754, relating to the optional adjustment to the basis of partnership property. A sells its interest to T for $22,000. The balance sheet of the partnership at the date of sale shows the following:

| | Assets | |
| --- | --- | --- |
| | Adjusted basis | Fair market value |
| Cash | $5,000 | $5,000 |
| Accounts receivable | 10,000 | 10,000 |
| Inventory | 20,000 | 21,000 |
| Depreciable assets | 20,000 | 40,000 |
| Total | 55,000 | 76,000 |

| | Liabilities and Capital | |
| --- | --- | --- |
| | Adjusted per books | Fair market value |
| Liabilities | $10,000 | $10,000 |
| Capital: | | |
| A | 15,000 | 22,000 |
| B | 15,000 | 22,000 |
| C | 15,000 | 22,000 |
| Total | 55,000 | 76,000 |

**69910**  **Federal Register**/Vol. 64, No. 240/Wednesday, December 15, 1999/Rules and Regulations

(ii) The amount of the basis adjustment under section 743(b) is the difference between the basis of T's interest in the partnership and T's share of the adjusted basis to the partnership of the partnership's property. Under section 742, the basis of T's interest is $25,333 (the cash paid for A's interest, $22,000, plus $3,333, T's share of partnership liabilities). T's interest in the partnership previously taxed capital is $15,000 ($22,000, the amount of cash T would receive if PRS liquidated immediately after the hypothetical transaction, decreased by $7,000, the amount of tax gain allocated to T from the hypothetical transaction). T's share of the adjusted basis to the partnership of the partnership's property is $18,333 ($15,000 share of previously taxed capital, plus $3,333 share of the partnership's liabilities). The amount of the basis adjustment under section 743(b) to partnership property therefore, is $7,000, the difference between $25,333 and $18,333.

*Example 2.* A, B, and C form partnership PRS, to which A contributes land (Asset 1) with a fair market value of $1,000 and an adjusted basis to A of $400, and B and C each contribute $1,000 cash. Each partner has $1,000 credited to it on the books of the partnership as its capital contribution. The partnership shares in profits equally. During the partnership's first taxable year, Asset 1 appreciates in value to $1,300. A sells its one-third interest in the partnership to T for $1,100, when an election under section 754 is in effect. The amount of tax gain that would be allocated to T from the hypothetical transaction is $700 ($600 section 704(c) built-in gain, plus one-third of the additional gain). Thus, T's interest in the partnership previously taxed capital is $400 ($1,100, the amount of cash T would receive if PRS liquidated immediately after the hypothetical transaction, decreased by $700, T's share of gain from the hypothetical transaction). The amount of T's basis adjustment under section 743(b) to partnership property is $700 (the excess of $1,100, T's cost basis for its interest, over $400, T's share of the adjusted basis to the partnership of partnership property).

( ) *Allocation of basis adjustment.* For the allocation of the basis adjustment under this section among the individual items of partnership property, see

section 755 and the regulations thereunder.

(f) *Subsequent transfers.* Where there has been more than one transfer of a partnership interest, a transfer's basis adjustment is determined without regard to any prior transfer's basis adjustment. In the case of a gift of an interest in a partnership, the donor is treated as transferring, and the donee as receiving, that portion of the basis adjustment attributable to the gifted partnership interest. The provisions of this paragraph (f) are illustrated by the following example:

*Example.* (i) A, B, and C form partnership PRS. A and B each contribute $1,000 cash, and C contributes land with a basis and fair market value of $1,000. When the land has appreciated in value to $1,300, A sells its interest to T1 for $1,100 (on -third of $3,300, the fair market value of the partnership property). An election under section 754 is in effect; therefore, T1 has a basis adjustment under section 743(b) of $100.

(ii) After the land has further appreciated in value to $1,600, T1 sells its interest to T2 for $1,200 (one-third of $3,600, the fair market value of the partnership property). T2 has a basis adjustment under section 743(b) of $200. This amount is determined without regard to any basis adjustment under section 743(b) that T1 may have had in the partnership assets.

(iii) During the following year, T2 makes a gift to T3 of fifty percent of T2's interest in PRS. At the time of the transfer, T2 has a $200 basis adjustment under section 743(b). T2 is treated as transferring $100 of the basis adjustment to T3 with the gift of the partnership interest.

(g) *Distributions*—(1) *Distribution of adjusted property to the transferee*—(i) *Coordination with section 732.* If a partnership distributes property to a transferee and the transferee has a basis adjustment for the property, the basis adjustment is taken into account under section 732. See § 1.732–2(b).

(ii) *Coordination with section 734.* For certain adjustments to the common basis of remaining partnership property after the distribution of adjusted

property to a transferee, see § 1.734–2(b).

(2) *Distribution of adjusted property to another partner*—(i) *Coordination with section 732.* If a partnership distributes property with respect to which another partner has a basis adjustment, the distributee does not take the basis adjustment into account under section 732.

(ii) *Reallocation of basis.* A transferee with a basis adjustment in property that is distributed to another partner reallocates the basis adjustment among the remaining items of partnership property under § 1.755–1(c).

(3) *Distributions in complete liquidation of a partner's interest.* If a transferee receives a distribution of property (whether or not the transferee has a basis adjustment in such property) in liquidation of its interest in the partnership, the adjusted basis to the partnership of the distributed property immediately prior to the distribution includes the transferee's basis adjustment for the property in which the transferee relinquished an interest (if there has been a main element in the partnership or was distributed to another partner). Any basis adjustment for property in which the transferee is deemed to relinquish its interest is reallocated among the properties distributed to the transferee under § 1.755–1(c).

(4) *Coordination with other provisions.* The rules of sections 704(c)(1)(B), 731, 737, and 751 apply before the rules of this paragraph (g).

(5) *Example.* The provisions of this paragraph (g) are illustrated by the following example:

*Example.* (i) A, B, and C are equal partners in partnership PRS. Each partner originally contributed $10,000 in cash, and PRS used the contributions to purchase five nonde preciable capital assets. PRS has no liabilities. After five years, PRS's balance sheet appears as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Asset 1 | $10,000 | $10,000 |
| Asset 2 | 4,000 | 6,000 |
| Asset 3 | 6,000 | 6,000 |
| Asset 4 | 7,000 | 4,000 |
| Asset 5 | 3,000 | 13,000 |
| Total | 30,000 | 39,000 |

| | Capital | |
| --- | --- | --- |
| | Adjusted per books | Fair market value |
| Partner A ......................................... | $10,000 | $13,000 |
| Partner B ......................................... | 10,000 | 13,000 |
| Partner C ......................................... | 10,000 | 13,000 |
| Total ......................................... | 30,000 | 39,000 |

(ii) A sells its interest to T for $13,000 when PRS has an election in effect under section 754. T receives a basis adjustment under section 743(b) in the partnership property that is equal to $3,000 (the excess of T's basis in the partnership interest, $13,000, over T's share of the adjusted basis to the partnership of partnership property, $10,000). The basis adjustment is allocated under section 755, and the partnership's balance sheet appears as follows:

| | Assets | | |
| --- | --- | --- | --- |
| | Adjusted basis | Fair market value | Basis adjustment |
| Asset 1 ......................................... | $10,000 | $10,000 | $0.00 |
| Asset 2 ......................................... | 4,000 | 6,000 | 666.67 |
| Asset 3 ......................................... | 6,000 | 6,000 | 0.00 |
| Asset 4 ......................................... | 7,000 | 4,000 | (1,000.00) |
| Asset 5 ......................................... | 3,000 | 13,000 | 3,333.33 |
| Total ......................................... | 30,000 | 39,000 | 3,000.00 |

| | Capital | | |
| --- | --- | --- | --- |
| | Adjusted per books | Fair market value | Special basis |
| Partner T ......................................... | $10,000 | $13,000 | $3,000 |
| Partner B ......................................... | 10,000 | 13,000 | 0 |
| Partner C ......................................... | 10,000 | 13,000 | 0 |
| Total ......................................... | 30,000 | 39,000 | 3,000 |

(iii) Assume that PRS distributes Asset 2 to T in partial liquidation of T's interest in the partnership. T has a basis adjustment under section 743(b) of $666.67 in Asset 2. Under paragraph (g)(1)(i) of this section, T takes the basis adjustment into account under section 732. Therefore, T will have a basis in Asset 2 of $4,666.67 following the distribution.

(iv) Assume instead that PRS distributes Asset 5 to C in complete liquidation of C's interest in PRS. T has a basis adjustment under section 743(b) of $3,333.33 in Asset 5. Under paragraph (g)(2)(i) of this section, C does not take T's basis adjustment into account under section 732. Therefore, the partnership's basis for purposes of sections 732 and 734 is $3,000. Under paragraph (g)(2)(ii) of this section, T's $3,333.33 basis adjustment is reallocated among the remaining partnership assets under § 1.755–1(c).

(v) Assume instead that PRS distributes Asset 5 to T in complete liquidation of its interest in PRS. Under paragraph (g)(3) of this section, immediately prior to the distribution of Asset 5 to T, PRS must adjust the basis of Asset 5. Therefore, immediately prior to the distribution, PRS's basis in Asset 5 is equal to $6,000, which is the sum of (A) $3,000, PRS's common basis in Asset 5, plus (B) $3,333.33, T's basis adjustment to Asset 5, plus (C) ($333.33), the sum of T's basis adjustments in Assets 2 and 4. For purposes of sections 732 and 734, therefore, PRS will

be treated as having a basis in Asset 5 equal to $6,000.

(h) *Contributions of adjusted property*—(1) *Section 721(a) transactions.* If, in a transaction described in section 721(a), a partnership (the upper tier) contributes to another partnership (the lower tier) property with respect to which a basis adjustment has been made, the basis adjustment is treated as contributed to the lower-tier partnership, regardless of whether the lower-tier partnership makes a section 754 election. The lower tier's basis in the contributed asset and the upper tier's basis in the partnership interest received in the transaction are determined with reference to the basis adjustment. However, that portion of the basis of the upper tier's interest in the lower tier attributable to the basis adjustment must be segregated and allocated solely to the transferee partner for whom the basis adjustment was made. Similarly, that portion of the lower tier's basis in its assets attributable to the basis adjustment must be segregated and allocated solely to the upper tier and the transferee partner with a basis adjustment in property held by a partnership that terminates under

section 708(b)(1)(B) will continue to have the same basis adjustment with respect to property deemed contributed by the terminated partnership to the new partnership under § 1.708–1(b)(1)(iv), regardless of whether the new partnership makes a section 754 election.

(2) *Section 351 transactions*—(i) *Basis in transferred property.* A corporation's adjusted tax basis in property transferred to the corporation by a partnership in a transaction described in section 351 is determined with reference to any basis adjustments to the property under section 743(b) (other than any basis adjustment that reduces a partner's gain under paragraph (h)(2)(ii) of this section).

(ii) *Partnership gain.* The amount of gain, if any, recognized by the partnership on a transfer of property to a corporation in a transaction described in section 351 is determined without reference to any basis adjustment under section 743(b). The amount of gain, if any, recognized by the partnership from the transfer that is allocated to a partner with a basis adjustment in the transferred property is

adjust d to r fl ct th partn r's basis adjustm nt in th transf rr d prop rty.

(iii) *Basis in stock.* Th partn rship's adjust d tax basis in stock r c iv d from a corporation in a transf r d scrib d in s ction 351 is d t rmin d without r f r nc to th basis adjustm nt in prop rty transf rr d to th corporation in th s ction 351 xchang . A partn r with a basis adjustm nt in prop rty transf rr d to th corporation, how v r, has a basis adjustm nt in th stock r c iv d by th partn rship in th s ction 351 xchang in an amount qual to th partn r's basis adjustm nt in th transf rr d prop rty, r duc d by any basis adjustm nt that r duc d th partn r's gain und r paragraph (h)(2)(ii) of this s ction.

(iv) *Exampl .* Th following xampl illustrat s th principl s of this paragraph (h):

*Exampl .* (i) A, B, and C ar qual partn rs in partn rship PRS. Th partn rship's only ass t, Ass t 1, has an adjust d tax basis of $60 and a fair mark t valu of $120. Ass t 1 is a nond pr ciabl capital ass t and is not s ction 704(c) prop rty. A has a basis in its partn rship int r st of $40, and a positiv s ction 743(b) adjustm nt of $20 in Ass t 1. In a transaction to which s ction 351 appli s, PRS contribut s Ass t 1 to X, a corporation, in xchang for $15 in cash and X stock with a fair mark t valu of $105.

(ii) Und r paragraph (h)(2)(ii) of this s ction, PRS r aliz s $60 of gain on th transf r of Ass t 1 to X ($120, its amount r aliz d, minus $60, its adjust d basis), but r cogniz s only $15 of that gain und r s ction 351(b)(1). Of this amount, $5 is allocat d to ach partn r. A must us $5 of its basis adjustm nt in Ass t 1 to offs t A's shar of PRS's gain. Und r paragraph (h)(2)(iii) of this s ction, PRS's basis in th stock r c iv d from X is $60. How v r, A has a basis adjustm nt in th stock r c iv d by PRS qual to $15 (its basis adjustm nt in Ass t 1, $20, r duc d by th portion of th adjustm nt which r duc d A's gain, $5). Und r paragraph (h)(2)(i) of this s ction, X's basis in Ass t 1 quals $75 (PRS's common basis in th ass t, $60, plus A's basis adjustm nt und r s ction 743(b), $20, l ss th portion of th adjustm nt which r duc d A's gain, $5).

(i) [R s rv d].

(j) *Eff ct of basis adjustm nt—*(1) *In g n ral.* Th basis adjustm nt constitut s an adjustm nt to th basis of partn rship prop rty with r sp ct to th transf r only. No adjustm nt is mad to th common basis of partn rship prop rty. Thus, for purpos s of calculating incom , d duction, gain, and loss, th transf r will hav a sp cial basis for thos partn rship prop rti s th bas s of which ar adjust d und r s ction 743(b) and this s ction. Th adjustm nt to th basis of partn rship prop rty und r s ction 743(b) has no ff ct on th partn rship's

computation of any it m und r s ction 703.

(2) *Computation of partn r's distributiv shar of partn rship it ms.* Th partn rship first comput s its it ms of incom , d duction, gain, or loss at th partn rship l v l und r s ction 703. Th partn rship th n allocat s th partn rship it ms among th partn rs, including th transf r , in accordanc with s ction 704, and adjusts th partn rs' capital accounts accordingly. Th partn rship th n adjusts th transf r 's distributiv shar of th it ms of partn rship incom , d duction, gain, or loss, in accordanc with paragraphs (j)(3) and (4) of this s ction, to r fl ct th ff cts of th transf r 's basis adjustm nt und r s ction 743(b). Th s adjustm nts to th transf r 's distributiv shar s must b r fl ct d on Sch dul s K and K–1 of th partn rship's r turn (Form 1065). Th s adjustm nts to th transf r 's distributiv shar s do not aff ct th transf r 's capital account.

(3) *Eff ct of basis adjustm nt in d t rmining it ms of incom , gain, or loss*—(i) *In g n ral.* Th amount of a transf r 's incom , gain, or loss from th sal or xchang of a partn rship ass t in which th transf r has a basis adjustm nt is qual to th transf r 's shar of th partn rship's gain or loss from th sal of th ass t (including any r m dial allocations und r § 1.704– 3(d)), minus th amount of th transf r 's positiv basis adjustm nt for th partn rship ass t (d t rmin d by taking into account th r cov ry of th basis adjustm nt und r paragraph (j)(4)(i)(B) of this s ction) or plus th amount of th transf r 's n gativ basis adjustm nt for th partn rship ass t (d t rmin d by taking into th account th r cov ry of th basis adjustm nt und r paragraph (j)(4)(ii)(B) of this s ction).

(ii) *Exampl s.* Th following xampl s illustrat th principl s of this paragraph (j)(3):

*Exampl 1.* A and B form qual partn rship PRS. A contribut s nond pr ciabl prop rty with a fair mark t valu of $50 and an adjust d tax basis of $100. PRS will us th traditional allocation m thod und r § 1.704– 3(b). B contribut s $50 cash. A s lls its int r st to T for $50. PRS has an l ction in ff ct to adjust th basis of partn rship prop rty und r s ction 754. T r c iv s a n gativ $50 basis adjustm nt und r s ction 743(b) that, und r s ction 755, is allocat d to th nond pr ciabl prop rty. PRS th n s lls th prop rty for $60. PRS r cogniz s a book gain of $10 (allocat d qually b tw n T and B) and a tax loss of $40. T will r c iv an allocation of $40 of tax loss und r th principl s of s ction 704(c). How v r, b caus T has a n gativ $50 basis adjustm nt in th nond pr ciabl prop rty, T

r cogniz s a $10 gain from th partn rship's sal of th prop rty.

*Exampl 2.* A and B form qual partn rship PRS. A contribut s nond pr ciabl prop rty with a fair mark t valu of $100 and an adjust d tax basis of $50. B contribut s $100 cash. PRS will us th traditional allocation m thod und r § 1.704–3(b). A s lls its int r st to T for $100. PRS has an l ction in ff ct to adjust th basis of partn rship prop rty und r s ction 754. Th r for , T r c iv s a $50 basis adjustm nt und r s ction 743(b) that, und r s ction 755, is allocat d to th nond pr ciabl prop rty. PRS th n s lls th nond pr ciabl prop rty for $90. PRS r cogniz s a book loss of $10 (allocat d qually b tw n T and B) and a tax gain of $40. T will r c iv an allocation of th ntir $40 of tax gain und r th principl s of s ction 704(c). How v r, b caus T has a $50 basis adjustm nt in th prop rty, T r cogniz s a $10 loss from th partn rship's sal of th prop rty.

*Exampl 3.* A and B form qual partn rship PRS. PRS will mak allocations und r s ction 704(c) using th r m dial allocation m thod d scrib d in § 1.704–3(d). A contribut s nond pr ciabl prop rty with a fair mark t valu of $100 and an adjust d tax basis of $150. B contribut s $100 cash. A s lls its partn rship int r st to T for $100. PRS has an l ction in ff ct to adjust th basis of partn rship prop rty und r s ction 754. T r c iv s an gativ $50 basis adjustm nt und r s ction 743(b) that, und r s ction 755, is allocat d to th prop rty. Th partn rship th n s lls th prop rty for $120. Th partn rship r cogniz s a $20 book gain and a $30 tax loss. Th book gain will b allocat d qually b tw n th partn rs. Th ntir $30 tax loss will b allocat d to T und r th principl s of s ction 704(c). To match its $10 shar of book gain, B will b allocat d $10 of r m dial gain, and T will b allocat d an offs tting $10 of r m dial loss. T was allocat d a total of $40 of tax loss with r sp ct to th prop rty. How v r, b caus T has a n gativ $50 basis adjustm nt to th prop rty, T r cogniz s a $10 gain from th partn rship's sal of th prop rty.

(4) *Eff ct of basis adjustm nt in d t rmining it ms of d duction*—(i) *Incr as s*—(A) *Additional d duction.* Th amount of any positiv basis adjustm nt that is r cov r d by th transf r in any y ar is add d to th transf r 's distributiv shar of th partn rship's d pr ciation or amortization d ductions for th y ar. Th basis adjustm nt is adjust d und r s ction 1016(a)(2) to r fl ct th r cov ry of th basis adjustm nt.

(B) *R cov ry p riod*—(1) *In g n ral.* Exc pt as provid d in paragraph (j)(4)(i)(B)(2) of this s ction, for purpos s of s ction 168, if th basis of a partn rship's r cov ry prop rty is incr as d as a r sult of th transf r of a partn rship int r st, th n th incr as d portion of th basis is tak n into account as if it w r n wly-purchas d r cov ry

**Attachment Z - page 10 of 20**

*14 14*

**Federal Register** / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations  **69913**

property placed in service when the transfer occurs. Consequently, any applicable recovery period and method may be used to determine the recovery allowance with respect to the incr eased portion of the basis. However, no change is made for purposes of determining the recovery allowance under section 168 for the portion of the basis for which there is no increase.

*(2) Remedial allocation method.* If a partnership elects to use the remedial allocation method described in § 1.704–3(d) with respect to an item of the partnership's recovery property, then the portion of any increase in the basis of the item of the partnership's recovery property under section 743(b) that is attributable to section 704(c) built-in gain is recovered over the remaining recovery period for the partnership's excess book basis in the property as determined in the final sentence of § 1.704–3(d)(2). Any remaining portion

of the basis increase is recovered under paragraph (j)(4)(i)(B)(*1*) of this section.

*(C) Examples.* The provisions of this paragraph (j)(4)(i) are illustrated by the following examples:

*Example 1.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 1, an item of depreciable property that has a fair market value in excess of its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, increases the basis of Asset 1 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 1 is $1,000. Also assume that, under paragraph (j)(4)(i)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation deductions from Asset 1 reported by T is equal to $1,500.

*Example 2.* (i) A and B form equal partnership PRS. A contributes property with

an adjusted basis of $100,000 and a fair market value of $500,000. B contributes $500,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, therefore, be recovered over the five years remaining in the property's recovery period. PRS elects to use the remedial allocation method under § 1.704–3(d) with respect to the property. If PRS had purchased the property at the time of the partnership's formation, the basis of the property would have been recovered over a 10-year period. The $400,000 of section 704(c) built-in gain will, therefore, be amortized under § 1.704–3(d) over a 10-year period beginning at the time of the partnership's formation.

(ii)(A) Except for the depreciation deductions, PRS's expenses equal its income in each year of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $120,000, while B's is $440,000:

| | | Capital accounts | | |
|---|---|---|---|---|
| | A | | B | |
| | Book | Tax | Book | Tax |
| Initial Contribution ................................................................ | $500,000 | $100,000 | $500,000 | $500,000 |
| Depreciation Year 1 ................................................................ | (30,000) | ................ | (30,000) | (20,000) |
| Remedial ................................................................................ | ................ | 10,000 | ................ | (10,000) |
| Depreciation Year 2 ................................................................ | 470,000 | 110,000 | 470,000 | 470,000 |
| | (30,000) | ................ | (30,000) | (20,000) |
| Remedial ................................................................................ | ................ | 10,000 | ................ | (10,000) |
| | 440,000 | 120,000 | 440,000 | 440,000 |

(B) A sells its interest in PRS to T for its fair market value of $440,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment, pursuant to section 743(b), to increase the basis of partnership property. Under section 743(b), the amount of the basis adjustment is equal to $320,000. Under section 755, the entire basis adjustment is allocated to the property.

(iii) At the time of the transfer, $320,000 of section 704(c) built-in gain from the property was still reflected on the partnership's books, and all of the basis adjustment is attributable to section 704(c) built-in gain. Therefore, the basis adjustment will be recovered over the remaining recovery period for the section 704(c) built-in gain under § 1.704–3(d).

*(ii) Decreases—(A) Reduced deduction.* The amount of any negative basis adjustment allocated to an item of depreciable or amortizable property that is recovered in any year at first decreases the transferee's distributive share of the partnership's depreciation or amortization deductions from that item of property for the year. If the amount of the basis adjustment recovered in any

year exceeds the transferee's distributive share of the partnership's depreciation or amortization deductions from the item of property, then the excess decreases the transferee's distributive share of the partnership's depreciation or amortization deductions from other items of partnership property that is decreased. The transferee then recognizes ordinary income to the extent of the excess, if any, of the amount of the basis adjustment recovered in any year over the transferee's distributive share of the partnership's depreciation or amortization deductions from all items of property.

*(B) Recovery period.* For purposes of section 168, if the basis of an item of a partnership's recovery property is decreased as the result of the transfer of an interest in the partnership, then the decrease is recovered over the remaining useful life of the item of the partnership's recovery property. The portion of the decrease that is recovered in any year during the recovery period is equal to the product of—

*(1)* The amount of the decrease to the item's adjusted basis (determined as of the date of the transfer); multiplied by

*(2)* A fraction, the numerator of which is the portion of the adjusted basis of the item recovered by the partnership in that year, and the denominator of which is the adjusted basis of the item on the date of the transfer (determined prior to any basis adjustments).

*(C) Examples.* The provisions of this paragraph (j)(4)(ii) are illustrated by the following examples:

*Example 1.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value that is less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis depreciation deductions from Asset 2 is $1,000. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the basis adjustment under section 743(b) that T recovers during the year is $500. The total amount of depreciation

deductions from Asset 2 report by T is equal to $500.

*Example 2.* (i) A and B form equal partnership PRS. A contributes property with an adjusted basis of $100,000 and a fair market value of $50,000. B contributes $50,000 cash. When PRS is formed, the property has five years remaining in its recovery period. The partnership's adjusted basis of $100,000 will, the refor, be recovered over the five years remaining in the property's recovery period. PRS uses the traditional allocation method under § 1.704–3(b) with respect to the property. As a result, B will receive $5,000 of depreciation deductions from the property in each of years 1–5, and A, as the contributing partner, will receive $15,000 of depreciation deductions in each of those years.

(ii) Except for the depreciation deductions, PRS's expenses equal its income in each of the first two years commencing with the year the partnership is formed. After two years, A's share of the adjusted basis of partnership property is $70,000, while B's is $40,000. A sells its interest in PRS to T for its fair market value of $40,000. A valid election under section 754 is in effect with respect to the sale of the partnership interest. Accordingly, PRS makes an adjustment to, pursuant to section 743(b), to decrease the basis of partnership property. Under section 743(b), the amount of the adjustment is equal to ($30,000). Under section 755, the entire adjustment is allocated to the property.

(iii) The basis of the property at the time of the transfer of the partnership interest was $60,000. In each of years 3 through 5, the partnership will realize depreciation deductions of $20,000 from the property. Thus, on third of the negative basis adjustment (($10,000)) will be recovered in each of years 3 through 5. Consequently, T will be allocated, for tax purposes, depreciation of $15,000 each year from the partnership and will recover $10,000 of its negative basis adjustment. Thus, T's net depreciation deduction from the partnership in each year is $5,000.

*Example 3.* (i) A, B, and C are equal partners in partnership PRS, which owns Asset 2, an item of depreciable property that has a fair market value less than its adjusted tax basis. C sells its interest in PRS to T while PRS has an election in effect under section 754. PRS, therefore, decreases the basis of Asset 2 with respect to T.

(ii) Assume that in the year following the transfer of the partnership interest to T, T's distributive share of the partnership's common basis of depreciation deductions from Asset 2 is $500. PRS allocates no other depreciation to T. Also assume that, under paragraph (j)(4)(ii)(B) of this section, the amount of the negative basis adjustment that T recovers during the year is $1,000. T will report $500 of ordinary income because the amount of the negative basis adjustment recovered during the year exceeds T's distributive share of the partnership's common basis of depreciation deductions from Asset 2.

(5) *Depletion.* Where an adjustment is made under section 743(b) to the basis of partnership property subject to depletion, any depletion allowance is determined separately for each partner, including the transferee partner, based on the partner's interest in such property. § 1.702–1(a)(8). For partnerships that hold oil and gas property is that are subject to depletion under section 613A(c)(7)(D), the transferee partner (and not the partnership) must make the basis adjustments, if any, required under section 743(b) with respect to such property. § 1.613A–3(j)(6)(iv).

(6) *Example.* The provisions of paragraph (j)(5) of this section are illustrated by the following example:

*Example.* A, B, and C each contribute $5,000 cash to form partnership PRS, which purchases a coal property for $15,000. A, B, and C have equal interests in capital and profits. C subsequently sells its partnership interest to T for $100,000 when the election under section 754 is in effect. T has a basis adjustment under section 743(b) for the coal property of $95,000 (the difference between T's basis, $100,000, and its share of the basis of partnership property, $5,000). Assume that the depletion allowance computed under the percentage method would be $21,000 for the taxable year so that each partner would be entitled to $7,000 as its share of the deduction for depletion. However, under the cost depletion method, at an assumed rate of 10 percent, the allowance with respect to T's on -third interest which has a basis to him of $100,000 ($5,000, plus its basis adjustment of $95,000) is $10,000, although the cost depletion allowance with respect to the one -third interest of A and B in the coal property, each of which has a basis of $5,000, is only $500. For partners A and B, the percentage depletion is greater than cost depletion and each will deduct $7,000 base on the percentage depletion method. However, T, as to T, the transferee partner, the cost depletion method results in a greater allowance and T will, therefore, deduct $10,000 based on cost depletion. See section 613(a).

(k) *Returns*—(1) *Statement of adjustments*—(i) *In general.* A partnership that must adjust the bases of partnership properties under section 743(b) must attach a statement to the partnership return for the year of the transfer setting forth the name and taxpayer identification number of the transferee as well as the computation of the adjustment and the partnership property to which the adjustment has been allocated.

(ii) *Special rule.* Where an interest is transferred in a partnership which holds oil and gas property that are subject to depletion under section 613A(c)(7)(D), the transferee must attach a statement to its return for the year of the transfer, setting forth the computation of the basis adjustment under section 743(b) which is allocable to such properties and the specific

property to which the adjustment has been allocated.

(iii) *Example.* The provisions of paragraph (k)(1)(ii) of this section are illustrated by the following example:

*Example.* (i) Partnership XYZ owns a single section 613A(c)(7)(D) domestic oil and gas property (Prop rty) and other nondepletable assets. A, a partner in XYZ with an adjusted tax basis in Property of $100 (excluding any prior adjustments under section 743(b)), sells its partnership interest to B for $800 cash. Under § 1.613A–3(j)(6)(iv), A's adjusted basis of $100 in Property carries over to B.

(ii) Under section 755, XYZ determines that Property accounts for 50% of the fair market value of all partnership assets. The remaining 50% of B's purchase price ($400) is attributable to non-depletable property. XYZ must provide a statement to B containing the portion of B's adjusted basis attributable to non-depletable property ($400). Under this paragraph (k)(1), XYZ must report basis adjustments under section 743(b) to non-depletable property. B must report basis adjustments under section 743(b) to Property.

(2) *Requirement that transferee notify partnership*—(i) *Sale or exchange.* A transferee that acquires, by sale or exchange, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within 30 days of the sale or exchange. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the transferee and (if ascertainable) of the transferor, the taxpayer identification numbers of the transferee and (if ascertainable) of the transferor, the relationship (if any) between the transferee and the transferor, the date of the transfer, the amount of any liabilities assumed or taken subject to by the transferee, and the amount of any money, the fair market value of any other property delivered or to be delivered for the transferred interest in the partnership, and any other information necessary for the partnership to compute the transferee's basis.

(ii) *Transfer on death.* A transferee that acquires, on the death of a partner, an interest in a partnership with an election under section 754 in effect for the taxable year of the transfer, must notify the partnership, in writing, within one year of the death of the deceased partner. The written notice to the partnership must be signed under penalties of perjury and must include the names and addresses of the deceased partner and the transferee, the taxpayer identification numbers of the deceased partner and the transferee, the relationship (if any) between the

transferor and the transferor, the decrease as if a partner's date of death, the date on which the transferor became the owner of the partnership interest, the fair market value of the partnership interest on the applicable date of valuation set forth in section 1014, and the manner in which the fair market value of the partnership interest was determined.

(iii) *Nominee reporting.* If a partnership interest is transferred to a nominee which is required to furnish the statement under section 6031(c)(1) to the partnership, the nominee may satisfy the notice requirement contained in this paragraph (k)(2) by providing the statement required under § 1.6031(c)–1T, provided that the statement satisfies all requirements of § 1.6031(c)–1T and this paragraph (k)(2).

(3) *Reliance.* In making the adjustments under section 743(b) and any statement or return relating to such adjustments under this section, a partnership may rely on the written notice provided by a transferee pursuant to paragraph (k)(2) of this section to determine the transferee's basis in a partnership interest. The previous sentence shall not apply if any partner who has responsibility for federal income tax reporting by the partnership has knowledge of facts indicating that the statement is clearly erroneous.

(4) *Partnership not required to make or report adjustments under section 743(b) until it has notice of the transfer.* A partnership is not required to make the adjustments under section 743(b) (or any statement or return relating to those adjustments) with respect to any transfer until it has been notified of the transfer. For purposes of this section, a partnership is notified of a transfer when it either r—

(i) The partnership receives a written notice from the transferee required under paragraph (k)(2) of this section; or

(ii) Any partner who has responsibility for federal income tax reporting by the partnership has knowledge that there has been a transfer of a partnership interest.

(5) *Effect on partnership of the failure of the transferee to comply.* If the transferee fails to provide the partnership with the written notice required by paragraph (k)(2) of this section, the partnership must attach a statement to its return in the year that the partnership is otherwise notified of

the transfer. This statement must set forth the name and taxpayer identification number (if ascertainable) of the transferee. In addition, the following statement must be prominently displayed in capital letters on the first page of the partnership's return for such year, and on the first page of any schedule or information statement relating to such transferee's share of income, credits, deductions, etc.: "RETURN FILED PURSUANT TO § 1.743–1(k)(5)." The partnership will then be entitled to report the transferee's share of partnership items without adjustment to reflect the transferee's basis adjustment in partnership property. If, following the filing of a return pursuant to this paragraph (k)(5), the transferee provides the applicable written notice to the partnership, the partnership must make such adjustments as are necessary to adjust the basis of partnership property (as of the date of the transfer) in any amount needed to conform with rules to be filed by the partnership or in the next annual partnership return of income to be regularly filed by the partnership. At such time, the partnership must also provide the transferee with such information as is necessary for the transferee to amend its prior returns to properly reflect the adjustment under section 743(b).

(l) *Effective date.* This section applies to transfers of partnership interests that occur on or after December 15, 1999.

**Par. 6.** Section 1.751–1 is amended by:

1. Revising paragraphs (a)(2) and (a)(3).
2. Revising paragraph (c)(3).
3. Removing paragraph (c)(4)(x).
4. Adding a sentence at the end of paragraph (f).
5. Revising *Example 1* of paragraph (g).

The addition and revisions read as follows:

### §1.751–1  Unrealized receivables and inventory items.

* * * * *

(a) * * *

(2) *Determination of gain or loss.* The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property (including any remedial allocations under § 1.704–3(d)) that would have been allocated to the

partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had sold all of its property in a fully taxable transaction for cash in an amount equal to the fair market value of such property (taking into account section 7701(g)) immediately prior to the partner's transfer of the interest in the partnership. Any gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 and the amount of ordinary income or loss determined under this paragraph (a)(2) is the transferor's capital gain or loss on the sale of its partnership interest.

(3) *Statement required.* A partner selling or exchanging any part of an interest in a partnership that has any section 751 property at the time of sale or exchange must submit with its income tax return for the taxable year in which the sale or exchange occurs a statement setting forth separately the following information—

(i) The date of the sale or exchange;

(ii) The amount of any gain or loss attributable to the section 751 property; and

(iii) The amount of any gain or loss attributable to capital gain or loss on the sale of the partnership interest.

* * * * *

(c) *Unrealized receivables.* * * *

(3) In determining the amount of the sale price attributable to such unrealized receivables, or the fair value in a distribution treated as a sale or exchange, full account shall be taken not only of the estimated cost of completing performance of the contract or agreement, but also of the time between the sale or distribution and the time of payment.

* * * * *

(f) * * * The rules contained in paragraphs (a)(2) and (a)(3) of this section apply to transfers of partnership interests that occur on or after December 15, 1999.

(g) * * *

*Example 1.* (i)(A) A and B are equal partners in personal service partnership PRS. B transfers its interest in PRS to T for $15,000 when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets | |
|---|---|---|
|  | Adjusted basis | Fair market value |
| Cash | $3,000 | $3,000 |
| Loans Receivable | 10,000 | 10,000 |
| Capital Assets | 7,000 | 5,000 |
| Unrealized Receivables | 0 | 14,000 |
| Total | 20,000 | 32,000 |

|  | Liabilities and Capital | |
|---|---|---|
|  | Adjusted per books | Fair market value |
| Liabilities | $2,000 | $2,000 |
| Capital: | | |
|    A | 9,000 | 15,000 |
|    B | 9,000 | 15,000 |
| Total | 20,000 | 32,000 |

(B) Non of th ass ts own d by PRS is s ction 704(c) prop rty, and th capital ass ts ar nond pr ciabl . Th total amount r aliz d by B is $16,000, consisting of th cash r c iv d, $15,000, plus $1,000, B's shar of th partn rship liabiliti s assum d by T. S s ction 752. B's undivid d half-int r st in th partn rship prop rty includ s a half-int r st in th partn rship's unr aliz d r c ivabl s it ms. B's basis for its partn rship int r st is $10,000 ($9,000, plus $1,000, B's shar of partn rship liabiliti s). If s ction 751(a) did not apply to th sal , B would r cogniz $6,000 of capital gain from th sal of th int r st in PRS. How v r, s ction 751(a) do s apply to th sal .

(ii) If PRS sold all of its s ction 751 prop rty in a fully taxabl transaction imm diat ly prior to th transf r of B's partn rship int r st to T, B would hav b n allocat d $7,000 of ordinary incom from th sal of PRS's unr aliz d r c ivabl s. Th r for , B will r cogniz $7,000 of ordinary incom with r sp ct to th unr aliz d r c ivabl s. Th diff r nc b tw n th amount of capital gain or loss that th partn r would r aliz in th abs nc of s ction 751 ($6,000) and th amount of ordinary incom or loss d t rmin d und r paragraph (a)(2) of this s ction ($7,000) is th transf ror's capital gain or loss on th sal of its partn rship int r st. In this cas , B will r cogniz a $1,000 capital loss.

* * * * *

**Par. 7.** S ction 1.754–1 is am nd d as follows:

1. D signat th t xt following th h ading of paragraph (c) as paragraph (c)(1).

2. Add a h ading to n wly d signat d paragraph (c)(1).

3. Add paragraph (c)(2).

Th additions r ad as follows:

**§ 1.754–1  Time and manner of making election to adjust basis of partnership property.**

* * * * *

(c) R vocation of l ction—(1) In g n ral. * * *

(2) R vocations mad for first taxabl y ar nding aft r D c mb r 15, 1999. Notwithstanding paragraph (c)(1) of this s ction, any partn rship having an l ction in ff ct und r this s ction for its taxabl y ar that includ s D c mb r 15, 1999 may r vok such l ction by attaching a stat m nt to th partn rship's r turn for such y ar. For th r vocation to b valid, th stat m nt must b fil d not lat r than th tim pr scrib d by § 1.6031(a)-1( ) (including xt nsions th r of) for filing th r turn for such taxabl y ar, and must s t forth th nam and addr ss of th partn rship r voking th l ction, b sign d by any on of th partn rs who is authoriz d to sign th partn rship's f d ral incom tax r turn, and contain a d claration that th partn rship r vok s its l ction und r s ction 754 to apply th provisions of s ction 734(b) and 743(b). In addition, th following stat m nt must b promin ntly display d in capital l tt rs on th first pag of th partn rship's r turn for such y ar: "RETURN FILED PURSUANT TO 1.754–1(c)(2)."

**Par. 8.** S ction 1.755–1 is r vis d to r ad as follows:

**§ 1.755–1  Rules for allocation of basis.**

(a) G n rally. A partn rship that has an l ction in ff ct und r s ction 754 must adjust th basis of partn rship prop rty und r th provisions of s ction 734(b) and s ction 743(b) pursuant to th provisions of this s ction. This basis adjustm nt is first allocat d b tw n th two class s of prop rty d scrib d in s ction 755(b). Th s class s of prop rty consist of capital ass ts and s ction 1231(b) prop rty (capital gain prop rty)

and any oth r prop rty of th partn rship (ordinary incom prop rty). For purpos s of this s ction, prop rti s and pot ntial gain tr at d as unr aliz d r c ivabl s und r s ction 751(c) and th r gulations th r und r shall b tr at d as s parat ass ts that ar ordinary incom prop rty. Th portion of th basis adjustm nt allocat d to ach class is th n allocat d among th it ms within th class. Adjustm nts und r s ction 743(b) ar allocat d und r paragraph (b) of this s ction. Adjustm nts und r s ction 734(b) ar allocat d und r paragraph (c) of this s ction.

(b) Adjustm nts und r s ction 743(b)—(1) G n rally. (i) For xchang s in which th transf r 's basis in th int r st is d t rmin d in whol or in part by r f r nc to th transf ror's basis in th int r st, paragraph (b)(5) of this s ction shall apply. For all oth r transf rs which r sult in a basis adjustm nt und r s ction 743(b), paragraphs (b)(2) through (b)(4) of this s ction shall apply. Exc pt as provid d in paragraph (b)(5) of this s ction, th portion of th basis adjustm nt allocat d to on class of prop rty may b an incr as whil th portion allocat d to th oth r class is a d cr as . This would b th cas v n though th total amount of th basis adjustm nt is z ro. Exc pt as provid d in paragraph (b)(5) of this s ction, th portion of th basis adjustm nt allocat d to on it m of prop rty within a class may b an incr as whil th portion allocat d to anoth r is a d cr as . This would b th cas v n though th basis adjustm nt allocat d to th class is z ro.

(ii) Hypoth tical transaction. For purpos s of paragraphs (b)(2) through (b)(4) of this s ction, th allocation of

**Attachment 4 - page 14 of 20**
MH  14

**Federal Register** / Vol. 64, No. 240 / Wednesday, December 15, 1999 / Rules and Regulations    **69917**

the basis adjustment under section 743(b) between the classes of property and among the items of property within each class are made based on the allocations of income, gain, or loss (including remedial allocations under §1.704–3(d)) that the transferee partner would receive (to the extent attributable to the acquired partnership interest) from the sale of all partnership property water disposed of in a fully taxable transaction for cash in an amount equal to the fair market value of such property (the hypothetical transaction).

(2) *Allocations between classes of property*—(i) *In general.* The amount of the basis adjustment allocated to the class of ordinary income property is equal to the total amount of income, gain, or loss (including any remedial allocations under §1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the ordinary income property. The amount of the basis adjustment to capital gain property is equal to—

(A) The total amount of the basis adjustment under section 743(b); less

(B) The amount of the basis adjustment allocated to ordinary income property under the preceding sentence; provided, however, that in no event may the amount of any decrease in basis allocated to capital gain property exceed the partnership's basis (or in the case of property subject to the remedial allocation method, the transferee's share of any remedial loss under §1.704–3(d) from the hypothetical transaction) in capital gain property. In the event that a decrease in basis allocated to capital gain property would otherwise exceed the partnership's basis in capital gain property, the excess must be applied to reduce the basis of ordinary income property.

(ii) *Examples.* The provisions of this paragraph (b)(2) are illustrated by the following examples:

*Example 1.* (i) A and B form equal partnership PRS. A contributes $50,000 and Asset 1, a nondepreciable capital asset with a fair market value of $50,000 and an adjusted tax basis of $25,000. B contributes $100,000. PRS uses the cash to purchase Assets 2, 3, and 4. After a year, A sells its interest in PRS to T for $120,000. At the time of the transfer, A's share of the partnership's basis in partnership assets is $75,000. Therefore, T receives a $45,000 basis adjustment.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
| --- | --- | --- |
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $25,000 | $75,000 |
| Asset 2 | 100,000 | 117,500 |
| Ordinary Income Property: |  |  |
| Asset 3 | 40,000 | 45,000 |
| Asset 4 | 10,000 | 2,500 |
| Total | 175,000 | 240,000 |

(iii) If PRS sold all of its assets in a fully taxable transaction at fair market value immediately after the transfer of the partnership interest to T, the total amount of capital gain that would be allocated to T is equal to $46,250 ($25,000 section 704(c) built-in gain from Asset 1, plus fifty percent of the $42,500 appreciation in capital gain property). T would also be allocated a $1,250 ordinary loss from the sale of the ordinary income property.

(iv) The amount of the basis adjustment that is allocated to ordinary income property is equal to ($1,250) (the amount of the loss allocated to T from the hypothetical sale of the ordinary income property).

(v) The amount of the basis adjustment that is allocated to capital gain property is equal to $46,250 (the amount of the basis adjustment, $45,000, less ($1,250), the amount of loss allocated to T from the hypothetical sale of the ordinary income property).

*Example 2.* (i) A and B form equal partnership PRS. A and B each contribute $1,000 cash which the partnership uses to purchase Assets 1, 2, 3, and 4. After a year, A sells its partnership interest to T for $1,000. T's basis adjustment under section 743(b) is zero.

(ii) Immediately after the transfer of the partnership interest to T, the adjusted basis and fair market value of PRS's assets are as follows:

|  | Assets | |
| --- | --- | --- |
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
| Asset 1 | $500 | $750 |
| Asset 2 | 500 | 500 |
| Ordinary Income Property: |  |  |
| Asset 3 | 500 | 250 |
| Asset 4 | 500 | 500 |
| Total | 2,000 | 2,000 |

(iii) If, immediately after the transfer of the partnership interest to T, PRS sold all of its assets in a fully taxable transaction at fair market value, T would be allocated a loss of $125 from the sale of the ordinary income property. Thus, the amount of the basis adjustment to ordinary income property is

($125). The amount of the basis adjustment to capital gain property is $125 (zero, the amount of the basis adjustment under section 743(b), less ($125), amount of the basis adjustment allocated to ordinary income property).

(3) *Allocation within the class*—(i) *Ordinary income property.* The amount of the basis adjustment to each item of property within the class of ordinary income property is equal to—

**69918** Federal Register/Vol. 64, No. 240/Wednesday, December 15, 1999/Rules and Regulations

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; reduced by

(B) The product of—

(1) Any decrease to the amount of the basis adjustment to ordinary income property required pursuant to the last sentence of paragraph (b)(2)(i) of this section; multiplied by

(2) A fraction, the numerator of which is the fair market value of the item of property to the partnership and the denominator of which is the total fair market value of all of the partnership's items of ordinary income property.

(ii) *Capital gain property.* The amount of the basis adjustment to each item of property within its class of capital gain property is equal to—

(A) The amount of income, gain, or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of the item; minus

(B) The product of—

(1) The total amount of gain or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all items of capital gain property, minus the amount of the positive basis adjustment to all items of capital gain property or plus the amount of the negative basis adjustment to capital gain property; multiplied by

(2) A fraction, the numerator of which is the fair market value of the item of property to the partnership, and the denominator of which is the fair market value of all of the partnership's items of capital gain property.

(iii) *Examples.* The provisions of this paragraph (b)(3) are illustrated by the following examples:

*Example 1.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section. Of the $45,000 basis adjustment, $46,250 was allocated to capital gain property. The amount allocated to ordinary income property was ($1,250).

(ii) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 1 is $37,500.

(iii) Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 2 is $8,750.

(iv) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(v) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

*Example 2.* (i) Assume the same facts as Example 1 in paragraph (b)(2)(ii) of this section, except that A sold its interest in PRS to T for $110,000 rather than $120,000. T, therefore, receives a basis adjustment under section 743(b) of $35,000. Of the $35,000 basis adjustment, ($1,250) is allocated to ordinary income property, and $36,250 is allocated to capital gain property.

(ii) Asset 3 is ordinary income property, and T would be allocated $2,500 from the sale of Asset 3 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 3 is $2,500.

(iii) Asset 4 is ordinary income property, and T would be allocated ($3,750) from the sale of Asset 4 in the hypothetical transaction. Therefore, the amount of the adjustment to Asset 4 is ($3,750).

(iv) Asset 1 is a capital gain asset, and T would be allocated $37,500 from the sale of Asset 1 in the hypothetical transaction. Asset 2 is a capital gain asset, and T would be allocated $8,750 from the sale of Asset 2 in the hypothetical transaction. The total amount of gain that would be allocated to T from the sale of the capital gain assets in the hypothetical transaction is $46,250, which exceeds the amount of the basis adjustment allocated to capital gain property by $10,000. The amount of the adjustment to Asset 1 is $33,604 ($37,500 minus $3,896 ($10,000 × $75,000/192,500)). The amount of the basis adjustment to Asset 2 is $2,646 ($8,750 minus $6,104 ($10,000 × $117,500/192,500)).

(4) *Income in respect of a decedent*—(i) *In general.* Where a partnership interest is transferred as a result of the death of a partner, under section 1014(c) the transferee's basis in its partnership interest is not adjusted for that portion of the interest, if any, which is attributable to items representing income in respect of a decedent under section 691. See § 1.742–1. Accordingly, if a partnership interest is transferred as a result of the death of a partner, and the partnership holds assets representing income in respect of a decedent, no part of the basis adjustment under section 743(b) is allocated to these assets. See § 1.743–1(b).

(ii) The provisions of this paragraph (b)(4) are illustrated by the following example:

*Example.* (i) A and B are equal partners in personal service partnership PRS. As a result of B's death, B's partnership interest is transferred to T who in PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

| | Assets | |
|---|---|---|
| | Adjusted basis | Fair market value |
| Capital Asset | $2,000 | $5,000 |
| Unrealized Receivables | 0 | 15,000 |
| Total | 2,000 | 20,000 |

| | Liabilities and Capital | |
|---|---|---|
| | Adjusted per books | Fair market value |
| Capital: | | |
| A | 1,000 | 10,000 |
| B | 1,000 | 10,000 |
| Total | 2,000 | 20,000 |

(ii) None of the assets owned by PRS is section 704(c) property, and the capital asset is nondepreciable. The fair market value of T's partnership interest on the applicable date of valuation set forth in section 1014 is $10,000. Of this amount, $2,500 is

attributable to T's share of the partnership's capital assets, and $7,500 is attributable to T's 50% share of the partnership's unrealized receivables. The partnership's unrealized receivables represent income in respect of a decedent. Accordingly, under section 1014(c), T's basis in its partnership interest is not adjusted for that portion of the interest which is attributable to the unrealized receivables. Therefore, T's basis in its partnership interest is $2,500.

(iii) At the time of transfer, B's share of the partnership's basis in partnership assets is $1,000. Accordingly, T receives a $1,500 basis adjustment under section 743(b). Under this paragraph (b)(4), the entire basis adjustment is allocated to the partnership's capital asset 1.

(5) *Transferred basis exchanges*—(i) *In general.* This paragraph (b)(5) applies to basis adjustments under section 743(b) which result from exchanges in which the transferor's basis in the interest is determined in whole or in part by reference to the transferor's basis in the interest. For example, this paragraph applies if a partnership interest is contributed to a corporation in a transaction to which section 351 applies or to a partnership in a transaction to which section 721(a) applies.

(ii) *Allocations between classes of property.* If the total amount of the basis adjustment under section 743(b) is zero, then no adjustment to the basis of partnership property will be made under this paragraph (b)(5). If there is an increase in basis to be allocated to partnership assets, such increase must be allocated to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net gain or net income, as the case may be, to the transferee. Where, under the preceding sentence, an increase in basis may be allocated to both capital gain assets and ordinary income assets, the increase shall be allocated to each class in proportion to the net gain or net income, respectively, which would be allocated to the transferee from the sale of all assets in each class. If there is a decrease in basis to be allocated to partnership assets, such decrease must be allocated

to capital gain property or ordinary income property, respectively, only if the total amount of gain or loss (including any remedial allocations under § 1.704–3(d)) that would be allocated to the transferee (to the extent attributable to the acquired partnership interest) from the hypothetical sale of all such property would result in a net loss to the transferee. Where, under the preceding sentence, a decrease in basis may be allocated to both capital gain assets and ordinary income assets, the decrease shall be allocated to each class in proportion to the net loss which would be allocated to the transferee from the sale of all assets in each class.

(iii) *Allocations within the classes*—(A) *Increases.* If there is an increase in basis to be allocated within a class, the increase must be allocated first to properties with unrealized appreciation in proportion to the transferee's share of the respective amounts of unrealized appreciation before such increase is made (but only to the extent of the transferee's share of each property's unrealized appreciation). Any remaining increase must be allocated among the properties within the class in proportion to the transferee's share of the amount that would be realized by the partnership upon the hypothetical sale of each asset in the class.

(B) *Decreases.* If there is a decrease in basis to be allocated within a class, the decrease must be allocated first to properties with unrealized depreciation in proportion to the transferee's share of the respective amounts of unrealized depreciation before such decrease is made (but only to the extent of the transferee's share of each property's unrealized depreciation). Any remaining decrease must be allocated among the properties within the class in proportion to the transferee's share of each property's adjusted basis (as adjusted under the preceding sentence).

(C) *Limitation in decrease of basis.* Where, as the result of a transaction to which this paragraph (b)(5) applies, a decrease in basis must be allocated to capital gain assets, ordinary income assets, or both, and the amount of the decrease allocated to a particular class exceeds the transferee's share of the adjusted basis to the partnership of all depreciated assets in that class, the transferee's negative basis

adjustment is limited to the transferee's share of the partnership's adjusted basis in all depreciated assets in that class.

(D) *Carryover adjustment.* Where a transferee's negative basis adjustment under section 743(b) cannot be allocated to any asset, because the adjustment would exceed the transferee's share of the adjusted basis to the partnership of all depreciated assets in a particular class, the adjustment is made when the partnership subsequently acquires property of a like character to which an adjustment can be made.

(iv) *Examples.* The provisions of this paragraph (b)(5) are illustrated by the following examples:

*Example 1.* A is a member of partnership LTP, which has made an election under section 754. The three partners in LTP have equal interests in capital and profits. Solely in exchange for a partnership interest in UTP, A contributes its interest in LTP to UTP in a transaction described in section 721. At the time of the transfer, A's basis in its partnership interest ($5,000) equals its share of inside basis (also $5,000). Under section 723, UTP's basis in its interest in LTP is $5,000. LTP's only two assets on the date of contribution are inventory with a basis of $5,000 and a fair market value of $7,500, and a nondepreciable capital asset with a basis of $10,000 and a fair market value of $7,500. The amount of the basis adjustment under section 743(b) to partnership property is $0 ($5,000, UTP's basis in its interest in LTP, minus $5,000, UTP's share of LTP's basis in partnership assets). Because UTP acquired its interest in LTP in a transferred basis exchange, and the total amount of the basis adjustment under section 743(b) is zero, UTP receives no special basis adjustments and no section 743(b) with respect to the partnership property of LTP.

*Example 2.* (i) A purchases a partnership interest in LTP at a time when an election under section 754 is not in effect. The three partners in LTP have equal interests in capital and profits. During a later year for which LTP has an election under section 754 in effect, and in a transaction that is unrelated to A's purchase of the LTP interest, A contributes its interest in LTP to UTP in a transaction described in section 721 (solely in exchange for a partnership interest in UTP). At the time of the transfer, A's adjusted basis in its interest in LTP is $20,433. Under section 721, A recognizes no gain or loss as a result of the contribution of its partnership interest to UTP. Under section 723, UTP's basis in its partnership interest in LTP is $20,433. The balance sheet of LTP on the date of the contribution shows the following:

| | Assets | |
| --- | --- | --- |
| | Adjusted basis | Fair market value |
| Cash | $5,000 | $5,000 |
| Accounts receivable | 10,000 | 10,000 |
| Inventory | 20,000 | 21,000 |

69920   F d ral R gist r / Vol. 64, No. 240 / W dn sday, D c mb r 15, 1999 / Rul s and R gulations

| | Assets | |
|---|---|---|
| | Adjusted basis | Fair market value |
| Nondepreciable capital asset ............................................................................... | 20,000 | 40,000 |
| Total ................................................................................................ | 55,000 | 76,000 |

| | Liabilities and Capital | |
|---|---|---|
| | Adjusted per books | Fair market value |
| Liabilities ................................................................................................ | $10,000 | $10,000 |
| Capital: | | |
| A ................................................................................................ | 15,000 | 22,000 |
| B ................................................................................................ | 15,000 | 22,000 |
| C ................................................................................................ | 15,000 | 22,000 |
| Total ................................................................................................ | 55,000 | 76,000 |

(ii) Th amount of th basis adjustm nt und r s ction 743(b) is th diff r nc b tw n th basis of UTP's int r st in LTP and UTP's shar of th adjust d basis to LTP of partn rship prop rty. UTP's int r st in th pr viously tax d capital of LTP is $15,000 ($22,000, th amount of cash UTP would r c iv if LTP liquidat d imm diat ly aft r th hypoth tical transaction, d cr as d by $7,000, th amount of tax gain allocat d to UTP from th hypoth tical transaction). UTP's shar of th adjust d basis to LTP of partn rship prop rty is $18,333 ($15,000 shar of pr viously tax d capital, plus $3,333 shar of LTP's liabiliti s). Th amount of th basis adjustm nt und r s ction 743(b) to partn rship prop rty th r for , is $2,100 ($20,433 minus $18,333).

(iii) Th total amount of gain that would b allocat d to UTP from th hypoth tical sal of capital gain prop rty is $6,666.67 (on -third of th xc ss of th fair mark t valu of LTP's nond pr ciabl capital ass t, $40,000, ov r its basis, $20,000). Th total amount of gain that would b allocat d to UTP from th hypoth tical sal of ordinary incom prop rty is $333.33 (on -third of th xc ss of th fair mark t valu of LTP's inv ntory, $21,000, ov r its basis, $20,000). Und r paragraph (b)(5), LTP must allocat $2,000 ($6,666.67 divid d by $7,000 tim s $2,100) of UTP's basis adjustm nt to th nond pr ciabl capital ass t. LTP must allocat $100 ($333.33 divid d by $7,000 tim s $2,100) of UTP's basis adjustm nt to th inv ntory.

(c) *Adjustm nts und r s ction 734(b)*—(1) *Allocations b tw n class s of prop rty*—(i) *G n ral rul* . Wh r th r is a distribution of partn rship prop rty r sulting in an adjustm nt to th basis of undistribut d partn rship prop rty und r s ction 734(b)(1)(B) or (b)(2)(B), th adjustm nt must b allocat d to r maining partn rship prop rty of a charact r similar to that of th distribut d prop rty with r sp ct to which th adjustm nt aros . Thus, wh n th partn rship's adjust d basis of distribut d capital gain prop rty

imm diat ly prior to distribution xc ds th basis of th prop rty to th distribut partn r (as d t rmin d und r s ction 732), th basis of th undistribut d capital gain prop rty r maining in th partn rship is incr as d by an amount qual to th xc ss. Conv rs ly, wh n th basis to th distribut partn r (as d t rmin d und r s ction 732) of distribut d capital gain prop rty xc ds th partn rship's adjust d basis of such prop rty imm diat ly prior to th distribution, th basis of th undistribut d capital gain prop rty r maining in th partn rship is d cr as d by an amount qual to such xc ss. Similarly, wh r th r is a distribution of ordinary incom prop rty, and th basis of th prop rty to th distribut partn r (as d t rmin d und r s ction 732) is not th sam as th partn rship's adjust d basis of th prop rty imm diat ly prior to distribution, th adjustm nt is mad only to undistribut d prop rty of th sam class r maining in th partn rship.

(ii) *Sp cial rul* . Wh r th r is a distribution r sulting in an adjustm nt und r s ction 734(b)(1)(A) or (b)(2)(A) to th basis of undistribut d partn rship prop rty, th adjustm nt is allocat d only to capital gain prop rty.

(2) *Allocations within th class s*—(i) *Incr as s.* If th r is an incr as in basis to b allocat d within a class, th incr as must b allocat d first to prop rti s with unr aliz d appr ciation in proportion to th ir r sp ctiv amounts of unr aliz d appr ciation b for such incr as (but only to th xt nt of ach prop rty's unr aliz d appr ciation). Any r maining incr as must b allocat d among th prop rti s within th class in proportion to th ir fair mark t valu s.

(ii) *D cr as s.* If th r is a d cr as in basis to b allocat d within a class, th

d cr as must b allocat d first to prop rti s with unr aliz d d pr ciation in proportion to th ir r sp ctiv amounts of unr aliz d d pr ciation b for such d cr as (but only to th xt nt of ach prop rty's unr aliz d d pr ciation). Any r maining d cr as must b allocat d among th prop rti s within th class in proportion to th ir adjust d bas s (as adjust d und r th pr c ding s nt nc ).

(3) *Limitation in d cr as of basis.* Wh r a d cr as in th basis of partn rship ass ts is r quir d und r s ction 734(b)(2) and th amount of th d cr as xc ds th adjust d basis to th partn rship of prop rty of th r quir d charact r, th basis of such prop rty is r duc d to z ro (but not b low z ro).

(4) *Carryov r adjustm nt.* Wh r , in th cas of a distribution, an incr as or a d cr as in th basis of undistribut d prop rty cannot b mad b caus th partn rship owns no prop rty of th charact r r quir d to b adjust d, or b caus th basis of all th prop rty of a lik charact r has b n r duc d to z ro, th adjustm nt is mad wh n th partn rship subs qu ntly acquir s prop rty of a lik charact r to which an adjustm nt can b mad .

(5) *Exampl* . Th following xampl illustrat s this paragraph (c):

*Exampl* . (i) A, B, and C form qual partn rship PRS. A contribut s $50,000 and Ass t 1, capital gain prop rty with a fair mark t valu of $50,000 and an adjust d tax basis of $25,000. B and C ach contribut s $100,000. PRS us s th cash to purchas Ass ts 2, 3, 4, 5, and 6. Ass ts 4, 5, and 6 ar th only ass ts h ld by th partn rship which ar subj ct to s ction 751. Th partn rship has an l ction in ff ct und r s ction 754. Aft r s v n y ars, th adjust d basis and fair mark t valu of PRS's ass ts ar as follows:

*AM*

|  | Assets | |
| --- | --- | --- |
|  | Adjusted basis | Fair market value |
| Capital Gain Property: |  |  |
|    Asset 1 .............................................................. | $ 25,000 | $ 75,000 |
|    Asset 2 .............................................................. | 100,000 | 117,500 |
|    Asset 3 .............................................................. | 50,000 | 60,000 |
| Ordinary Income Property: |  |  |
|    Asset 4 .............................................................. | $ 40,000 | $ 45,000 |
|    Asset 5 .............................................................. | 50,000 | 60,000 |
|    Asset 6 .............................................................. | 10,000 | 2,500 |
|    Total .............................................................. | 275,000 | 360,000 |

(ii) *Allocation between classes.* Assume that PRS distributes Assets 3 and 5 to A in complete liquidation of A's interest in the partnership. A's basis in the partnership interest was $75,000. The partnership's basis in Assets 3 and 5 was $50,000 each. A's $75,000 basis in its partnership interest is allocated between Assets 3 and 5 under sections 732(b) and (c). A will, therefore, have a basis of $25,000 in Asset 3 (capital gain property), and a basis of $50,000 in Asset 5 (section 751 property). The distribution results in a $25,000 increase in the basis of capital gain property. There is no change in the basis of ordinary income property.

(iii) *Allocation within class.* The amount of the basis increase to capital gain property is $25,000 and must be allocated among the remaining capital gain asset in proportion to the difference between the fair market value and basis of each. The fair market value of Asset 1 exceeds its basis by $50,000. The fair market value of Asset 2 exceeds its basis by $17,500. Therefore, the basis of Asset 1 will be increased by $18,519 ($25,000, multiplied by $50,000, divided by $67,500), and the basis of Asset 2 will be increased by $6,481 ($25,000 multiplied by $17,500, divided by $67,500).

(d) *Effective date.* This section applies to transfers of partnership interests and distributions of property from a partnership that occur on or after December 15, 1999.

**Par. 9.** Section 1.1017–1 is amended by:

1. Revising paragraph (g)(2)(iv).
2. Adding paragraph (g)(2)(v).

The addition and revision read as follows:

**§1.1017–1 Basis reductions following a discharge of indebtedness.**

\* \* \* \* \*

(g) \* \* \*

(2) \* \* \*

(iv) *Partner's share of partnership basis.*—(A) *In general.* For purposes of this paragraph (g), a partner's proportionate share of the partnership's basis in depreciable property (or depreciable real property) is equal to the sum of—

(1) The partner's section 743(b) basis adjustments to items of partnership

depreciable property (or depreciable real property); and

(2) The common basis depreciation deductions (but not including remedial allocations of depreciation deductions under § 1.704–3(d)) that, under the terms of the partnership agreement or otherwise, for the taxable year in which the discharge of indebtedness occurs, are reasonably expected to be allocated to the partner over the remaining property's remaining useful life. The assumptions made by a partnership in determining the reasonably expected allocation of depreciation deductions must be consistent for each partner. For example, a partnership may not treat the same depreciation deductions as being reasonably expected to be allocated by more than one partner.

(B) *Effective date.* This paragraph (g)(2)(iv) applies to l ctions made under rules sections 108(b)(5) and 108(c) on or after December 15, 1999.

(v) *Treatment of basis reduction.*—(A) *Basis adjustment.* The amount of the reduction to the basis of depreciable partnership property constitutes an adjustment to the basis of partnership property with respect to the partner only. No adjustment is made to the common basis of partnership property. Thus, for purposes of income, deduction, gain, loss, and distribution, the partner will have a special basis for those partnership properties the basis of which are adjusted under section 1017 and this section.

(B) *Recovery of adjustments to basis of partnership property.* Adjustments to the basis of partnership property and any this section are recovered in the manner described in § 1.743–1.

(C) *Effect of basis reduction.* Adjustments to the basis of partnership property under this section are treated in the same manner and have the same effect as an adjustment to the basis of partnership property under section 743(b). The following example illustrates this paragraph (g)(2)(v):

*Example.* (i) A, B, and C are equal partners in partnership PRS, which owns

other things) Asset 1, an item of depreciable property with a basis of $30,000. A's basis in its partnership interest is $20,000. Under the terms of the partnership agreement, A's share of the depreciation deductions from Asset 1 over its remaining useful life will be $10,000. Under section 1017, A requests, and PRS agrees, to decrease the basis of Asset 1 with respect to A by $10,000.

(ii) In the year following the reduction of basis under section 1017, PRS amends its partnership agreement to provide that it means of depreciation and loss from Asset 1 will be allocated equally between B and C. In that year, A's distributive share of the partnership's common basis depreciation deductions from Asset 1 is now $0. Under § 1.743–1(j)(4)(ii)(B), the amount of the section 1017 basis adjustment that A recovers during the year is $1,000. A will report $1,000 of ordinary income because A's distributive share of the partnership's common basis depreciation deductions from Asset 1 ($0) is insufficient to offset the amount of the section 1017 basis adjustment recover d by A during the year ($1,000).

(iii) In the following year, PRS sells Asset 1 for $15,000 and recognizes a $12,000 loss. This loss is allocated equally between B and C, and A's share of the loss is $0. Upon the sale of Asset 1, A recovers its entire remaining section 1017 basis adjustment ($9,000). A will report $9,000 of ordinary income.

(D) *Effective date.* This paragraph (g)(2)(v) applies to elections made under sections 108(b)(5) and 108(c) on or after December 15, 1999.

**PART 602—OMB CONTROL NUMBERS UNDER THE PAPERWORK REDUCTION ACT**

**Par. 10.** The authority citation for part 602 continues to read as follows:

**Authority:** 26 U.S.C. 7805.

**Par. 11.** In § 602.101, paragraph (b) is amended by revising the entries for 1.732–1 and 1.743–1 in the table to read as follows:

**§ 602.101 OMB Control numbers.**

\* \* \* \* \*

(b) \* \* \*

| CFR part or section where identified and described | Current OMB control No. |
|---|---|
| * * * * * | |
| 1.732–1 ...................................... | 1545–0099 1545–1588 |
| * * * * * | |
| 1.743–1 ...................................... | 1545–0074 1545–1588 |
| * * * * * | |

**David A. Mader,**

*Acting Deputy Commissioner of Internal Revenue.*

Approved November 29, 1999.

**Jonathan Talisman,**

*Acting Assistant Secretary of the Treasury.*

[FR Doc. 99–32400 Filed 12–14–99; 8:45 am]

BILLING CODE 4830–01–U

## PENSION BENEFIT GUARANTY CORPORATION

### 29 CFR Part 4044

**Allocation of Assets in Single-Employer Plans; Interest Assumptions for Valuing Benefits**

**AGENCY:** Pension Benefit Guaranty Corporation.

**ACTION:** Final rule.

**SUMMARY:** The Pension Benefit Guaranty Corporation's regulation on Allocation of Assets in Single-Employer Plans prescribes interest assumptions for valuing benefits under terminating single-employer plans. This final rule amends the regulation to adopt interest assumptions for plans with valuation dates in January 2000. Interest assumptions are also published on the PBGC's web site (http://www.pbgc.gov).

**EFFECTIVE DATE:** January 1, 2000.

**FOR FURTHER INFORMATION CONTACT:** Harold J. Ashner, Assistant General Counsel, Office of the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW., Washington, DC 20005, 202–326–4024. (For TTY/TDD users, call the Federal relay service toll-free at 1–800–877–8339 and ask to be connected to 202–326–4024.)

**SUPPLEMENTARY INFORMATION:** The PBGC's regulation on Allocation of Assets in Single-Employer Plans (29 CFR part 4044) prescribes actuarial assumptions for valuing plan benefits of terminating single-employer plans covered by title IV of the Employee Retirement Income Security Act of 1974.

Among the actuarial assumptions prescribed in part 4044 are interest assumptions. These interest assumptions are intended to reflect current conditions in the financial and annuity markets.

Two sets of interest assumptions are prescribed, one set for the valuation of benefits to be paid as annuities and one set for the valuation of benefits to be paid as lump sums. This amendment adds to appendix B to part 4044 the annuity and lump sum interest assumptions for valuing benefits in plans with valuation dates during January 2000.

For annuity benefits, the interest assumptions will be 6.90 percent for the first 25 years following the valuation date and 6.25 percent thereafter. The annuity interest assumptions (in comparison with those in effect during December 1999) reflect a 5-year average increase as in the period during which the initial rate applies (from a period of 20 years following the valuation date to a period of 25 years following the valuation date). The initial rate, in effect for the first 25 years following the valuation date, represents an increase (from the initial rate in effect for December 1999) of 0.40 percent. The ultimate rate, in effect thereafter, represents an increase (from the ultimate rate in effect for December 1999) of 1.00 percent.

For benefits to be paid as lump sums, the interest assumptions to be used by the PBGC will be 5.00 percent for the period during which a benefit is in pay status, 4.25 percent during the seven-year period directly or preceding the benefit's placement in pay status, and 4.00 percent during any other year preceding the benefit's placement in pay status. The lump sum interest assumptions represented are as (from those in effect for December 1999) of 0.25 percent for the period during which a benefit is in pay status and for the seven-year period directly preceding the benefit's placement in pay status; they are both rates unchanged.

The PBGC has determined that notice and public comment on this amendment are impracticable and contrary to the public interest. This finding is based on the need to determine and issue new interest assumptions promptly so that the assumptions can reflect, as accurately as possible, current market conditions.

Because of the need to provide immediate guidance for the valuation of benefits in plans with valuation dates during January 2000, the PBGC finds that good cause exists for making this amendment effective less than 30 days after publication.

The PBGC has determined that this action is not a "significant regulatory action" and the criteria set forth in Executive Order 12866.

Because no general notice of proposed rulemaking is required for this amendment, the Regulatory Flexibility Act of 1980 does not apply. See 5 U.S.C. 601(2).

List of Subjects in 29 CFR Part 4044

Pension insurance, Pensions.

In consideration of the foregoing, 29 CFR part 4044 is amended as follows:

## PART 4044—ALLOCATION OF ASSETS IN SINGLE-EMPLOYER PLANS

1. The authority citation for part 4044 continues to read as follows:

**Authority:** 29 U.S.C. 1301(a), 1302(b)(3), 1341, 1344, 1362.

2. In appendix B, a new entry is added to Table I, and Rate Set 75 is added to Table II, as set forth below. The introductory text of each table is republished for the convenience of the reader and remains unchanged.

**Appendix B to Part 4044—Interest Rates Used to Value Annuities and Lump Sums**

**TABLE I.—Annuity Valuations:**

[This table sets forth, for each indicated calendar month, the interest rates (denoted by $i_1$, $i_2$, . . ., and referred to generally as $i_t$) assumed to be in effect between specified anniversaries of a valuation date that occurs within that calendar month; those anniversaries are specified in the columns adjacent to the rates. The last listed rate is assumed to be in effect after the last listed anniversary date.]

| For valuation dates occurring in the month— | The values of $i_t$ are: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | $i_t$ | for | $t =$ | $i_t$ | for | $t =$ | $i_t$ | for | $t =$ |
| * * | * | | * | | * | | * | | * |
| January 2000 ................................ | .0690 | 1–25 | .0625 | >25 | N/A | N/A | | | |