**RULES AND REGULATIONS**

the deposit fee shall be the greater of either $200 or the amount obtained by multiplying the aggregate quantity in tons of prune plums proposed to be diverted by the group by $3.50.

3. Paragraph (d) of § 993.162 is amended by redesignating subparagraph (3) thereof as subparagraph (4) and inserting a new subparagraph (3) reading as follows:

(3) The Committee shall establish, and give prompt notice of a final date by which a producer may modify his approved application including changing the proposed method of diversion and the quantity of prune plums proposed to be diverted: *Provided,* That any change in the proposed method of diversion shall include information on the location where such diversion is to take place and shall be accompanied by a payment of $50 as a service charge, and any increase in the quantity of prune plums proposed to be diverted shall be accompanied by a payment of $4.50 per ton for such increase, of which $3.50 shall be the deposit fee and $1 shall be a service charge.

4. Paragraph (e) of § 993.162 is amended to read as follows:

(e) *Report of diversion.* (1) When diversion of prune plums has been completed, the diverter (whether producer or dehydrator as agent of a producer) shall submit the required proof of such diversion to the Committee. When the Committee concludes that diversion has been completed pursuant to the requirements of this section, it shall furnish the producer whose prune plums were diverted with a listing of the total quantity of prune plums concluded to be so diverted: *Provided,* That a producer shall be given credit for any quantity of his prune plums diverted in excess of the quantity approved by the Committee pursuant to paragraph (d) of this section but not in excess of 120 percent of such approved quantity and then only to the extent that such creditable excess is already covered by his applicable deposit fee or such fee is increased by an additional deposit to cover such excess.

(2) Upon completion of the computation of dryaway pursuant to paragraph (a) of this section applicable to the diverter's diversion of prune plums, the Committee shall issue a report of diversion to the producer whose prune plums were diverted for the total quantity, dried weight equivalent, credited for diversion setting forth the computations by which such total quantity was derived.

5. Paragraph (f) of § 993.162 is amended as follows:

a. The last sentence in subparagraph (1) thereof is revised to read: "If the Committee determines that effective administration of diversion operations requires establishment of a final date for submission of transferable certificates of diversion by producers to handlers, or a final date for return of such certificates by handlers to the Committee for crediting against their reserve obligations, or both, it shall establish such dates."

b. In subparagraphs (2) and (3) thereof, references to "nontransferable certificate of diversion" are revised to "report of diversion".

c. In the second sentence of subparagraph (3) thereof, "or annexed to" is inserted immediately after "shall be entered on".

6. Paragraph (g) of § 993.162 is revised to read as follows:

(g) *Costs.* Pursuant to § 993.62(g), the costs pertaining to diversion are to be defrayed by payment of fees by the producer or cooperative marketing association to whom a diversion certificate is issued. After authorized diversion operations for a crop year are completed, the Committee shall ascertain its costs of diversion operations during such crop year. If the total amount represented by the deposit fees which accompanied the applications for diversion exceeds such costs, each producer, and each cooperative marketing association, entitled thereto shall receive a proportionate refund of the net amount. Such refund shall be calculated in the same proportion as the quantity of prune plums diverted by each such producer, and each such cooperative marketing association, is to the total quantity of prune plums diverted: *Provided,* That the Committee may prescribe a minimum charge to cover costs of processing each application for diversion submitted to it.

It is further found that good cause exists for not postponing the effective time of this action until 30 days after publication in the FEDERAL REGISTER and for making the provisions hereof effective upon publication (5 U.S.C. 553) in that: (1) This action prescribes changes in the rules and procedures governing producer diversion operations, including the issuance of diversion certificates, as contemplated by § 993.62; (2) the Prune Administrative Committee has recommended that diversion operations be authorized with respect to the 1971–72 crop year; (3) harvest of California's prune plums will begin soon at which time diversion could begin; (4) the Committee must make necessary preparations before such diversion operations commence in accordance with these amended rules and procedures; and (5) producers should be afforded the maximum advance notice that is practical of these amended rules and procedures so as to conduct their operations accordingly.

(Secs. 1–19, 48 Stat. 31, as amended; 7 U.S.C. 601–674)

Dated: August 9, 1971, to become effective upon publication in the FEDERAL REGISTER (8–12–71).

FLOYD F. HEDLUND,
*Director, Fruit and Vegetable Division, Consumer and Marketing Service.*

[FR Doc.71–11660 Filed 8–11–71;8:50 am]

# Title 15—COMMERCE AND FOREIGN TRADE

**Chapter I—Bureau of the Census, Department of Commerce**

PART 50—SPECIAL SERVICES AND STUDIES BY THE BUREAU OF THE CENSUS

**Fee Structure for Age Search and Citizenship Information**

The fee structure for age search and citizenship information is hereby amended as set forth below to change the fee for a regular search in turn from $4 to $5 and for a priority search from $5 to $6, effective January 1, 1972. No transcript of any record will be furnished which would violate existing laws requiring that information furnished be held confidential and not used to the detriment of the person to whom it relates. Requests for searches and application forms should be directed to the Bureau of the Census, Pittsburg, Kans. 66762.

In accordance with the rule making provisions of Administrative Procedure 5 U.S.C. section 553, it has been found that notice and hearing on this schedule of fees and postponement of the effective date thereof is impracticable and unnecessary for the reason that title 13 U.S.C. requires recovery of the costs.

§ 50.5 **Fee structure for age search and citizenship information.**

| Types of Service: | Fee |
|---|---|
| Searches in regular turn of not more than two censuses for one person and one transcript of the most appropriate record | $5.00 |
| Priority searches of not more than two censuses for one person and one transcript of the most appropriate record | 6.00 |
| Each additional copy of census transcript | 1.00 |

Dated: August 2, 1971.

GEORGE H. BROWN,
*Director, Bureau of the Census.*

[FR Doc.71–11616 Filed 8–11–71;8:45 am]

# Title 26—INTERNAL REVENUE

**Chapter I—Internal Revenue Service, Department of the Treasury**

SUBCHAPTER F—PROCEDURE AND ADMINISTRATION

[T.D. 7139]

PART 301—PROCEDURE AND ADMINISTRATION

**Liens and Levies Upon Interests in Certain Lands Held in Trust by the United States for Noncompetent Indians**

In order to provide revised rules regarding liens and levies upon interests in

Attachment N - page 1 of 2

certain lands held in trust by the United States for noncompetent Indians, the Regulations on Procedure and Administration (26 CFR Part 301) under sections 6321 and 6331 of the Internal Revenue Code of 1954 are amended as follows:

PARAGRAPH 1. Section 301.6321-1 is revised to read as follows:

§ 301.6321-1  Lien for taxes.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, tangible or intangible, belonging to such person. The lien attaches to all property and rights to property belonging to such person at any time during the period of the lien, including any property or rights to property acquired by such person after the lien arises. Solely for purposes of sections 6321 and 6331, any interest in restricted land held in trust by the United States for an individual noncompetent Indian (and not for a tribe) shall not be deemed to be property, or a right to property, belonging to such Indian. For the special lien for estate and gift taxes, see section 6324 and § 301.6324-1.

PAR. 2. Paragraph (a) of § 301.6331-1 is amended by adding, immediately after subparagraph (4), a new subparagraph (5) which reads as follows:

§ 301.6331-1  Levy and distraint.

(a) *Authority to levy* * * *

(5) *Noncompetent Indians.* Solely for purposes of sections 6321 and 6331, any interest in restricted land held in trust by the United States for an individual noncompetent Indian (and not for a tribe) shall not be deemed to be property, or a right to property, belonging to such Indian.

\* \* \* \* \*

Because this Treasury decision is of a clarifying nature, it is found that it is unnecessary to issue it with notice and public procedure thereon under subsection (b) of section 553 of title 5 of the United States Code or subject to the effective date limitation of subsection (d) of that section.

(Sec. 7805, Internal Revenue Code of 1954, 68A Stat. 917; 26 U.S.C. 7805)

[SEAL] RANDOLPH W. THROWER,
*Commissioner of Internal Revenue.*

Approved: August 6, 1971.

JOHN S. NOLAN,
*Acting Assistant Secretary of the Treasury.*

[FR Doc.71-11664 Filed 8-11-71;8:50 am]

# Title 41—PUBLIC CONTRACTS AND PROPERTY MANAGEMENT

## Chapter 5A—Federal Supply Service, General Services Administration

### PROCEDURES FOR FEDERAL SUPPLY SCHEDULES, CATALOGS, AND PRICELISTS

Chapter 5A of Title 41 is amended as follows:

### PART 5A-16—PROCUREMENT FORMS

The table of contents for Part 5A-16 is amended to delete §§ 5A-16.950-1308 (FL), 5A-16.950-1325(FL), and 5A-16.950-2139.

### PART 5A-73—FEDERAL SUPPLY SCHEDULE PROGRAM

Part 5A-73 is amended to delete Subpart 5A-73.2 in its entirety and the table of contents for Part 5A-73 is amended to add the following new and revised entries:

Sec.
5A-73.120   Catalogs and pricelists.
5A-73.120-1   Scope of section.
5A-73.120-2   Coverage of commodity data in Federal Supply Schedules.
5A-73.120-3   Approval and distribution of catalogs and pricelists.
5A-73.120-4   Clause used in solicitations when contemplating award based on catalogs or pricelists.
5A-73.120-5   Clause used in Schedules when contract award based on catalogs or pricelists.
5A-73.120-6   Criteria for catalogs and pricelists.
5A-73.120-7   Postaward procedures (except for FSC 74 Part VI) to be followed by contracting officer.
5A-73.127   Distribution of Federal Supply Schedules, catalogs, and pricelists.

### Subpart 5A-73.1—Production and Maintenance

Section 5A-73.107-8 is revised as follows:

§ 5A-73.107-8  Notifying agencies of renewals.

Agencies shall be notified of the renewal period and any other modifications of the contracts by issuance of Federal Supply Schedule amendments (see § 5A-73.125). GSA Form 1797 shall be used as provided in § 5A-73.105. Quantities of each such amendment needed for distribution to agencies shall be determined in accordance with the provisions of GSA Order FSS 1860.4, FSS Publications Mailing List System.

Section 5A-73.120 is revised and §§ 5A-73.120-1 through 5A-73.120-7 and § 5A-73.127 are added as follows:

§ 5A-73.120  Catalogs and pricelists.

§ 5A-73.120-1  Scope of section.

The provisions of this § 5A-73.120 apply to solicitations and resulting contracts and Schedules issued by the ADP Procurement Division, the Procurement Operations Division, and the regional procurement divisions which require the use of contractor catalogs or pricelists.

§ 5A-73.120-2  Coverage of commodity data in Federal Supply Schedules.

A combination of factors, such as class of item, extent of potential usage and industry practice, dictate the manner in which a commodity is presented in a Federal Supply Schedule. A Schedule either includes sufficient item data to permit procurement action or shows the notation "list" alongside the name of each contractor. When the notation "list" appears, it indicates that item information must be obtained from the manufacturer's catalog and pricelist. Since contractor's catalogs and pricelists are an integral part of some Schedules, their format, content, timeliness, and method of distribution require control and monitoring action.

§ 5A-73.120-3  Approval and distribution of catalogs and pricelists.

The procurement activity issuing a Schedule is also responsible for the approval of the contractor's catalogs and pricelists and furnishing mailing lists for their distribution.

§ 5A-73.120-4  Clause used in solicitations when contemplating award based on catalogs and pricelists.

(a) Except for FSC 74 Part VI (see (b) below), the following clause shall be included in all solicitations for offers (and resulting contracts) which contemplate awards based on catalogs or pricelists.

CATALOGS AND/OR PRICELISTS

(a) *Submission with offer.* (1) Two copies of the offeror's current published (dated or otherwise identified) commercial descriptive catalogs and/or pricelists must accompany the offer. Commercial catalogs and/or pricelists shall be those catalogs and/or pricelists which show "established catalog or market prices", as defined in the Special Provision of the solicitation titled "Basis for Price Negotiation". Special catalogs or pricelists printed for the purpose of this offer and showing only net prices to the Government, or reference to previous submissions, are not acceptable.

(2) In the event an offer covers more than one Special Item Number, offeror shall identify in the catalogs or pricelists, by each item, the Special Item Number under which the catalog or model number is being offered. All other items shall be marked "excluded", lined out, and initialed by the offeror.

(3) Foreign items. (See paragraph 7 of page 2, SF 33.) Offeror to list each foreign item offered indicating item and/or catalog number and page number of catalog.

Attachment N - page 2 of 2